LAKESHORE LAW CENTER
Jeffrey Wilens, Esq. (State Bar No. 120371)
18340 Yorba Linda Blvd., Suite 107-610
Yorba Linda, CA 92886
714-854-7205
714-854-7206 (fax)
jeff@lakeshorelaw.org

THE SPENCER LAW FIRM
Jeffrey P. Spencer, Esq. (State Bar No. 182440)
903 Calle Amanecer, Suite 220
San Clemente, CA 92673
949-240-8595
949-240-8515 (fax)
jps@spencerlaw.net

Attorneys for Defendants and Cross-Complainants
Delbert Daily, Sharanjeet Paul and Retha Walker

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange
10/17/2016 at 08:00:00 AM
Clerk of the Superior Court
By Marc Samela, Deputy Clerk

## ORANGE COUNTY SUPERIOR COURT, STATE OF CALIFORNIA

### 700 Civic Center Drive West, Santa Ana, California 92702

| | |
|---|---|
| VIP PDL SERVICE, LLC, d/b/a VIP LOAN SHOP; SCS PROCESSING, LLC; FAST EFNDS, a/k/a/ FastEfunds.COM; RARE MOON MEDIA, LLC; ENCOMPASS CONSULTING GROUP, LLC; E-FINANCE CALL CENTER SUPPORT, LLC; TOTAL ACCOUNT RECOVERY, LLC; JEREMY D. SHAFFER; JOSHUA L. MITCHEM; STEVEN MITCHEM; AND DUSTIN L. DERNIER,<br><br>Plaintiffs,<br><br>v.<br><br>AMERICAN ARBITRATION ASSOCIATION, JOHN W. GARMAN, DELBERT DAILY; SHARANJEET | Case No. 30-2016-00878131-CU-MC-CJC<br>Assigned for all Purposes to:<br>Hon. Frederick P. Aguirre<br>Dept. C23<br>Complaint filed September 29, 2016<br><br>CLASS ACTION<br><br>**CROSS-COMPLAINT BY DEFENDANTS DELBERT DAILY, SHARANJEET PAUL, AND RETHA WALKER**<br>**1. Violation of California Deferred Deposit Transactions Law (Financial Code § 23000 et. seq.)**<br>**2. Violation of Racketeer Influenced and Corrupt Organization Act of 1970 (RICO) 18 U.S.C. § 1961**<br>**3. Violation of Unfair Competition Law (Business and Professions Code § 17200 et. seq.)**<br>**4. Violation of Finance Lenders' Law** |

| | |
|---|---|
| PAUL; RETHA WALKER and, Does 1-100, inclusive,<br><br>　　　　　Defendants. | **(Business and Professions Code § 22100 et. seq.)** |
| DELBERT DAILY, SHARANJEET PAUL, and RETHA WALKER, on behalf of themselves and all persons similarly situated,<br><br>　　　　　Cross-Complainants,<br><br>　　　　　v.<br><br>VIP PDL SERVICES, LLC, d/b/a VIP LOAN SHOP; SCS PROCESSING, LLC; FAST EFNDS, a/k/a/ FastEfunds.COM; RARE MOON MEDIA, LLC; ENCOMPASS CONSULTING GROUP, LLC; E-FINANCE CALL CENTER SUPPORT, LLC; TOTAL ACCOUNT RECOVERY, LLC; JEREMY D. SHAFFER; JOSHUA L. MITCHEM; STEVEN MITCHEM; AND DUSTIN L. DERNIER, and Roes 1 through 100,<br><br>　　　　　Cross-Defendants. | |

Cross-Complainants allege as follows:

**PARTIES**

1. Cross-Complaints DELBERT DAILY, SHARANJEET PAUL, and RETHA WALKER, individuals, bring this cross-complaint on behalf of themselves and on behalf of a class of similarly situated persons pursuant to Code of Civil Procedure § 382. Cross-Complainants are residents of the State of California and competent adults.

2. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant VIP PDL Services, LLC, mistakenly named as VIP PDL Service, LLC in the Complaint, is now, and at all times mentioned in this Cross-Complaint was, a corporation supposedly based in Charlestown, Nevis, West Indies and doing business in the County of Orange, State of California, and throughout the State of

California and United States. It has not designated a principle place of business in California.

3. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant SCS PROCESSING, LLC, is now, and at all times mentioned in this Cross-Complaint was, a corporation supposedly based in Charlestown, Nevis, West Indies and doing business in the County of Orange, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

4. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant FAST EFNDS, is now, and at all times mentioned in this Cross-Complaint was, a corporation supposedly based in Charlestown, Nevis, West Indies and doing business in the County of Orange, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

5. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant RARE MOON MEDIA, LLC is now, and at all times mentioned in this Cross-Complaint was, a business of unknown form based in Lenexa, Kansas and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

6. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant ENCOMPASS CONSULTING GROUP, LLC is now, and at all times mentioned in this Cross-Complaint was, a business of unknown form based in Lenexa, Kansas and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

7. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant E-FINANCE CALL CENTER SUPPORT, LLC is now, and at all times

mentioned in this Cross-Complaint was, a business of unknown form based in Lenexa, Kansas and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

8. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant TOTAL ACCOUNT RECOVERY, LLC is now, and at all times mentioned in this Cross-Complaint was, a business of unknown form based in Lenexa, Kansas and doing business in the County of Alameda, State of California, and throughout the State of California and United States. It has not designated a principle place of business in California.

9. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant JEREMY D. SHAFFER is now, and at all times mentioned in this Cross-Complaint was, an individual residing in the State of Kansas.

10. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant JOSHUA L. MITCHEM is now, and at all times mentioned in this Cross-Complaint was, an individual residing in the State of Kansas.

11. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant STEVEN MITCHEM is now, and at all times mentioned in this Cross-Complaint was, an individual residing in the United States Virgin Islands.

12. Cross-Complainants are informed and believe, and thereupon allege, that Cross-Defendant DUSTIN DERNIER is now, and at all times mentioned in this Cross-Complaint was, an individual residing in the State of Kansas.

13. Cross-Complainants do not know the true names or capacities of the Cross-Defendants sued herein as ROES 1 through 100 inclusive, and therefore sues these Cross-Defendants by such fictitious names. Cross-Complainants will amend this complaint to allege their true names and capacities when ascertained. Cross-Complainants are informed and believe, and thereon allege, that each of these fictitiously named Cross-Defendants is responsible in some manner for the

occurrences herein alleged, and that Cross-Complainants' damages as herein alleged were proximately caused by those Cross-Defendants. Each reference in this complaint to "Cross-Defendant" or "Cross-Defendants" or to a specifically named Cross-Defendant refers also to all Cross-Defendants sued under fictitious names.

14. Cross-Complainants are informed and believe, and thereon allege, that at all times herein mentioned each of the Cross-Defendants, including all Cross-Defendants sued under fictitious names, and each of the persons who are not parties to this action but are identified by name or otherwise throughout this complaint, was the alter ego of each of the remaining Cross-Defendants, was the successor in interest or predecessor in interest, and was the agent and employee of each of the remaining Cross-Defendants and in doing the things herein alleged was acting within the course and scope of this agency and employment.

## **CLASS ALLEGATIONS**

15. Cross-Complainants are members of a class of persons, the members of which are similarly situated to each other member of that class. The class is defined as follows:

> All California residents who obtained a "payday loan" from RARE MOON LENDERS on or after October 2, 2011 <u>or</u> on an earlier date and who have already filed an arbitration case or lawsuit that tolled their respective statutes of limitations.

16. Cross-Complainants are informed and believe, and thereupon allege, that the class Cross-Complainants represent includes at least 1,000 persons who received illegal payday loans from Cross-Defendants during the class period.

17. The identity of the members of the class is ascertainable from Cross-Defendants' own business records or those of their agents.

18. The Cross-Complainants and Class Members' claims against Cross-Defendants involve questions of law or fact common to the class that are substantially similar and predominate over questions affecting individual Class Members in that all Class Members signed substantially similar loan agreements and received substantially similar loans, that were all illegal for the same reason.

5
CROSS-COMPLAINT BY DAILY, PAUL, WALKER

19. The claims of Cross-Complainants are typical of the claims of the members of the Class.

20. Cross-Complainants can fairly and adequately represent the interests of the Class.

**FIRST CAUSE OF ACTION FOR VIOLATION OF THE CALIFORNIA DEFERRED DEPOSIT TRANSACTION LAW (FINANCIAL CODE § 23005) BY MAKING, OFFERING, ARRANGING OR ASSISTING IN THE ORIGINATION OF PAYDAY LOANS WITHOUT A LICENSE AGAINST ALL CROSS-DEFENDANTS**

21. Cross-Complainants incorporate in this cause of action the allegations contained in paragraphs 1 through 20, inclusive.

22. During the class period, Cross-Defendants Jeremy D. Shaffer, Joshua L. Mitchem, Steven Mitchem, Dustin Dernier and certain Roe Cross-Defendants owned and controlled various companies involved in the making of illegal "payday loans" to California residents, including the actual lenders, referred to in this Cross-Complaint as the "RARE MOON LENDERS" or simply the "LENDERS," as well as support companies.

23. The RARE MOON LENDERS included VIP PDL Services, LLC aka VIP Loan Shop, SCS Processing, LLC aka Everest Cash Advance, Action PDL Services, LLC aka Action Payday, BD PDL Services, LLC aka Bottom Dollar Payday, Integrity PDL Services, LLC aka Integrity Payday Loans aka IPL Today, My Quick Funds, Fast Efunds (aka Fast EFNDS).

24. The support companies included Rare Moon Media, LLC, Encompass Consulting Group, LLC, E-Finance Call Center Support, LLC, and Total Recovery Solutions, LLC.

25. The following companies were also lenders or support companies: MB Marketing, LLC and IEG, LLC.

26. On February 3, 2011, Fast EFNDS made a loan to Cross-Complainant Daily and subsequently took at least $805 from his bank account to pay itself back.

27. On December 27, 2011, SCS Processing made a loan to Cross-Complainant Paul and subsequently took at least $597.50 from her bank account to pay itself back.
28. On February 3, 2011, VIP Loan Shop made a loan to Cross-Complainant Walker and subsequently took at least $390 from her bank account to pay itself back.
29. During the class period, LENDERS made similar loans to more than 20,000 California residents and took more than $1,000,000 from their bank accounts.
30. Financial Code § 23000, et. seq., the California Deferred Deposit Transaction Law (CDDTL), regulates the making of Deferred Deposit Transactions, more commonly known as "payday loans."
31. In a payday loan, the borrower receives a cash advance of a specified amount secured by a check (or electronic draft) to repay a larger amount of money in a short period of time.
32. Payday loans made to California residents by companies located in California or elsewhere are legal under certain circumstances although the industry is heavily regulated.
33. Financial Code § 23001 (a) defines a "Deferred Deposit Transaction" as a "transaction whereby a person defers depositing a customer's personal check until a specific date, pursuant to a written agreement for a fee or other charge, as provided in Section 23035." There is no requirement that the "personal check" be a "paper check" and commonly the borrower provides an entirely electronic version of a check or other form of authorization as security for the loan and the actual repayment is obtained by the lender by electronically withdrawing funds from the borrower's bank account.
34. The loans made to Cross-Complainants and the class members qualified as "deferred deposit transactions."
35. Financial Code § 23005 provides that "**no person shall** offer, originate, or make a deferred deposit transaction, arrange a deferred deposit transaction for a deferred deposit originator, act as an agent for a deferred deposit originator, or **assist a**

**deferred deposit originator in the origination of a deferred deposit transaction** without first obtaining a license from the commissioner and complying with the provisions of this division."

36. A "Deferred Deposit Originator" is "a person who offers, originates, or makes a deferred deposit transaction." (Financial Code § 23001 (f).)

37. Financial Code § 23035 authorizes **licensed** payday lenders to make payday loans that meet certain requirements, one of which is a cap on finance charges that is much greater than California's usury law permits (10% APR). For example, California law permits a $45 finance charge on a $255 loan that must be repaid within 31 days (and no additional finance charges are allowed).

38. None of the Cross-Defendants and none of the LENDERS were ever licensed by the State of California when the loans were made to the Cross-Complainants and class members.

39. In fact, even after the State of California made formal findings that the LENDERS were illegally offering payday loans to California residents, and issued desist and refrain orders against the LENDERS, directing them to stop making loans to California residents, Cross-Defendants continued to offer and make the loans.

40. The loans made by Cross-Complainants and class members also violated the restrictions on the amount financed, the finance charge and other restrictions.

41. Cross-Defendants Jeremy D. Shaffer, Joshua L. Mitchem, Steven Mitchem, and Dustin Dernier assisted the LENDERS in originating the loans in that these Cross-Defendants owned and controlled the entities that made the loans, made all decisions pertaining to day to day operations of the LENDERS, received all of the revenue generated by the lending operations, purchased the leads for potential borrowers and marketed the loans on the Internet, provided or obtained the funding to make the loans and controlled the bank accounts used by the LENDERS to make the loans, owned and used the loan processing software and controlled the servers used to process the loan applications, and dealt with all customer service issues

regarding borrowers.

42. The LENDERS named in the various loan agreements were "dummy" companies set up in a foreign country by the Cross-Defendants but controlled from the United States by them.

43. Financial Code § 23060 (a) provides "If any amount other than, or in excess of, the charges or fees permitted by this division is willfully charged, contracted for, or received, a deferred deposit transaction contract shall be void, and no person shall have any right to collect or receive the principal amount provided in the deferred deposit transaction, any charges, or fees in connection with the transaction."

44. Financial Code § 23060 (b) provides "If any provision of this division is willfully violated in the making or collection of a deferred deposit transaction, the deferred deposit transaction contract shall be void, and no person shall have any right to collect or receive any amount provided in the deferred deposit transaction, any charges, or fees in connection with the transaction."

45. Moreover, pursuant to Financial Code § 23065, the knowing and willful violation of any provision of the CDDTL by a lender is punishable as a criminal offense carrying up to one year in and payment of a $10,000 fine.

46. As a result of the aforementioned willful violations of provisions of the CDDTL, loan agreements between Cross-Complainants or the class members and the LENDERS were void as a matter of law and LENDERS had no right collect or receive any payments from the borrowers, whether said payments were for principal, interest or fees.

47. Additionally, pursuant to Financial Code § 23064, Cross-Complainants and the class members are entitled to recover from the Cross-Defendants up to three times the damages actually incurred but in no event less that the amount paid by them to the LENDERS.

48. Further, pursuant to Financial Code § 23064, upon a determination that Cross-Defendants' violations were willful, the Court may award punitive damages in

9
CROSS-COMPLAINT BY DAILY, PAUL, WALKER

addition to the amounts set forth above.

49. Further, pursuant to Financial Code § 23064, the Court should order Cross-Defendants to make restitution and disgorge all money obtained by any of the Cross-Defendants in connection with these illegal transactions and shall further enjoin Cross-Defendants from offering, making, arranging or assisting in the origination of the payday loans.

## SECOND CAUSE OF ACTION FOR VIOLATIONS OF RICO, 18 U.S.C. § 1962 (c), OPERATION OF AN ENTERPRISE THROUGH RACKETEERING ACTIVITY OR THROUGH COLLECTION OF UNLAWFUL DEBT AGAINST ALL CROSS-DEFENDANTS

50. Cross-Complainants incorporate in this cause of action the allegations contained in paragraphs 1 through 49, inclusive.

51. Between 2009 and 2014 Cross-Defendants (and other persons not named as Cross-Defendants herein) were "RICO" PERSONS and were organized and associated with each other in an unnamed entity constituting an "association in fact" that constituted a RICO Enterprise as that term is defined in 18 U.S.C. § 1961 (4).

52. This Enterprise had a distinct division of labor and was and is organized and maintained by and through a consensual hierarchy of partners, managers, directors, officers, supervisors, and/or representatives from all RICO PERSONS and other persons/entities that formulated and implemented policies relative to the advertising and marketing of services to the general public. It continued as a unit, with a core membership, over a substantial period of time and was an ongoing organization established for an economic motive. The Enterprise remains viable and active at the time of filing of this Claim.

53. Other members of the Enterprise included Selling Source, LLC, Partner Weekly, LLC and Money Mutual, LLC, three companies which solicited California residents to take out the payday loans that were referred to LENDERS. Cross-Defendants and these other members were associated together for the common purpose of marketing

services to the general public for their mutual profit.

54. This Enterprise is and was separate and distinct from the RICO persons and the pattern of racketeering activity described in the Cross-Complaint in that the RICO persons also engaged in conduct unrelated to the racketeering activity. For example, RICO persons also promoted payday loans made by licensed lenders that complied with the applicable law.

55. The aforementioned Enterprise engaged in or affected interstate commerce by using international and interstate telephone networks and Internet, international and interstate telecommunication lines and the United States Mail to advertise and market payday loans, to originate and execute payday loan agreements, to operate the loan processing software from servers in other countries, to distribute funds and collect payments from persons obtaining these loans, and to engage in debt collection efforts with respect to these loans.

56. Cross-Defendants, acting through the aforementioned Enterprise, and during the relevant period and continuing, engaged in the collection of unlawful debt within the meaning of 18 USC § 1961 (6) in that the debt incurred by Cross-Complainants and more than 20,000 other California residents was unenforceable under California law because of laws relating to usury including California Constitution, Article 15, Section 1, the California Deferred Deposit Transactions Law and the Finance Lenders Law. The annual percentage rate charged by the LENDERS was more than twice the enforceable rate (10%) under California law. In every instance, the APR on the payday loans obtained by Cross-Complainants and many thousands of other California residents was more than 100%.

57. As a proximate result of Respondents' violations of RICO, Cross-Complainants suffered damages and/or injuries to their interests in business and/or property through the payment of sums of money as previously alleged.

58. Cross-Defendants' conduct was intentional, malicious and intended to harm Cross-Complainants and the class. Consequently, Cross-Complainants and the class are

entitled to recover an award of exemplary and punitive damages. As alleged previously, the conduct was malicious because it continued even after the State of California found that the loans were illegal and directed LENDERS to stop making the loans.

## THIRD CAUSE OF ACTION VIOLATION OF THE UNFAIR COMPETITION LAW AGAINST ALL CROSS-DEFENDANTS

59. Cross-Complainants incorporate in this cause of action the allegations contained in paragraphs 1 through 58, inclusive.

60. The Unfair Competition Law prohibits any person from engaging in unfair competition as that term is defined in Business and Professions Code § 17200, which includes any "unlawful, unfair or fraudulent business act or practice," "unfair, deceptive, untrue or misleading advertising," and any act prohibited by Chapter 1 (commencing with section 17500) of Part 3 of Division 7 of the Business and Professions Code.

61. Between 2009 and 2016, Cross-Defendants violated various sections of the Financial Code and RICO as set forth above, and as set forth in the Fourth Claim, which constituted an unlawful business practice.

62. As a proximate result of the violation of the UCL as set forth above, Cross-Complainants suffered injury in fact and sustained monetary loss (hundreds of dollars) according to proof.

63. Pursuant to Business and Professions Code § 17203 and § 17204, Cross-Complainants are empowered to compel Cross-Defendants to restore to Cross-Complainants the money or property they acquired as a result of any act which constitutes unfair competition.

64. The conduct of Cross-Defendants will continue to harm the general public unless it is enjoined.

## FOURTH CAUSE OF ACTION FOR VIOLATION OF THE FINANCE LENDERS LAW AGAINST ALL CROSS-DEFENDANTS

65. Cross-Complainants incorporate in this cause of action the allegations contained in paragraphs 1 through 64, inclusive.
66. Although Cross-Complainants have alleged above that the loans were subject to the CDDTL because the transactions qualified as a "deferred deposit transaction," in the event the Court rules the loans were not "deferred deposit transactions," then this claim (and part of the third claim) is an alternative theory of liability.
67. Financial Code § 22000, et. seq., the California Finance Lenders Law (FLL), regulates the making of loans that are not otherwise regulated.
68. During the relevant time frame, Cross-Defendants were in the business of making consumer loans and therefore qualified as "finance lenders" pursuant to Financial Code § 22009. Cross-Defendants Shaffer, Joshua Mitchem, Steven Mitchem, Dustin Dernier and certain Roe Cross-Defendants provided all or virtually all of the funds used to make the loans and received all or virtually all the profit from the loans. Cross-Defendants Shaffer, Joshua Mitchem, Steven Mitchem, and Dustin Dernier a were not employees of LENDERS.
69. Financial Code § 22203 defines a "consumer loan" as a loan "the proceeds of which are intended by the borrower for use primarily for personal, family, or household purposes." Cross-Complainants' loans were made for personal, family and household purposes. In any event, any loan for less than $5,000 is always deemed a consumer loan regardless of its purpose pursuant to Financial Code § 22204 and all of the loans made to the class were for less than $5,000.
70. Financial Code § 22303 sets the maximum amounts that may be imposed for charges on consumer loans. The term "charges" includes "the aggregate interest, fees, bonuses, commissions, brokerage, discounts, expenses, and other forms of costs charged, contracted for, or received by a licensee or any other person in connection with the investigating, arranging, negotiating, procuring, guaranteeing, making, servicing, collecting, and enforcing of a loan or forbearance of money, credit, goods, or things in action, or any other service rendered." (Financial Code § 22200.) The

term "finance charges" will be used in this claim to refer to what § 22303 calls "charges."

71. Pursuant to Financial Code § 22303, the maximum that can be legally imposed as finance charges depends on the amount of the loan. This law does not apply to loans of more than $2,500. The first $250 of principal has a maximum monthly finance charge of 2.5% or an APR of 36%. The next $675 of principal has maximum monthly finance charges of 2%, the next $749 of principal has maximum monthly finance charges of 1.5% and the remaining portion up to $899 has a maximum monthly finance charge of 1%.

72. The actual APR for the loan obtained by Cross-Complainants and the class members was more than ten times higher than the maximum 36% allowed under the foregoing law.

73. In addition, Financial Code § 22100 (a) provides "No person shall engage in the business of a finance lender or broker without obtaining a license from the commissioner." As indicated above, Cross-Defendants and LENDERS did not have a license to make payday loans (deferred deposition transactions). They did not have a license to act as a finance lender either.

74. Hence, Cross-Defendants willfully violated Financial Code § 22303 and § 22100.

75. Financial Code § 22750 provides:

> (a) If any amount other than, or in excess of, the charges permitted by this division is willfully charged, contracted for, or received, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction.
>
> (b) If any provision of this division is willfully violated in the making or collection of a loan, whether by a licensee or by an unlicensed person subject to this division, the contract of loan is void, and no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction.

76. Cross-Defendants violated both subdivisions (a) and (b). As a result, the loans made

to Cross-Complainants and the class members during the relevant time frame were void as a matter of law and "no person has any right to collect or receive any principal, charges, or recompense in connection with the transaction."

## REQUEST FOR JURY TRIAL

WHEREFORE, Cross-Complainants request trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Cross-Complainants pray for judgment on all causes of action against Cross-Defendants as follows:

1. For an order certifying this matter as a class action;
2. For a declaration of the rights and liabilities of the parties including a declaration that the LENDERS' payday loans made with the Cross-Complainants and class members were illegal and that any debt arising from these transactions is void;
3. For preliminary and permanent injunctive relief pursuant to Financial Code § 23064 and Business and Professions Code § 17203 restraining and enjoining Cross-Defendants from continuing the acts of unlawful competition set forth above, requiring Cross-Defendants to take any acts needed to prevent further violations, and requiring Cross-Defendants to take affirmative measures to redress past wrongdoings, such as by correcting credit reports and cancelling debts;
4. For an order requiring Cross-Defendants to provide an accounting of all moneys which they may have received as a result of the acts and practices found to constitute unfair competition under Business and Professions Code § 17200;
5. For an order that Cross-Defendants identify, locate and make restitution to affected members of the general public, and specifically the members of the Class, and all additional orders necessary to accomplish this purpose, pursuant to Business and Professions Code § 17203;
6. For restitutionary and nonrestitutionary disgorgement of any money obtained by Cross-Defendants in connection with the promotion and making of illegal loans;

7. For distribution of any moneys recovered on behalf of members of the Class, via fluid recovery or cy pres recovery where necessary to prevent Defendant from retaining the benefits of their wrongful conduct as provided in <u>California</u> v. <u>Levi Strauss & Co</u>. (1986) 41 Cal.3d 460 and <u>People</u> v. <u>Thomas Shelton Powers, M.D. Inc</u>. (1992) 2 Cal.App.4th 330;

8. For compensatory damages on the first cause of action not to be less than the amount paid by Cross-Complainants and each class member and not to exceed three times any damages;

9. For compensatory damages, said sum to be trebled pursuant to 18 U.S.C. § 1964 (c), on the second cause of action;

10. For punitive or exemplary damages on the first and second causes of action;

11. For prejudgment interest on the sum of money awarded as damages or restitution;

12. For reasonable attorney's fees pursuant to Financial Code § 23064 and 18 U.S.C. § 1964 (c), pursuant to the Private Attorney General doctrine in Code of Civil Procedure § 1021.5, pursuant to the "common fund" doctrine, and pursuant to the "substantial benefit" doctrine.

13. For costs of suit incurred herein; and

14. For such other and further relief as the Court may deem proper.

DATED: October 17, 2016

                    Respectfully submitted,

                By     _/s/_Jeffrey Wilens_____

                    JEFFREY WILENS
                    Attorney for Cross-Complainants

| | |
|---|---|
| PARTY SERVED: | Plaintiffs and Cross-Defendants VIP PDL Service, LLC, D/B/A VIP Loan Shop; SCS Processing, LLC; Fast Efnds, A/K/A/ Fastefunds.Com; Rare Moon Media, LLC; Encompass Consulting Group, LLC; E-Finance Call Center Support, LLC; Total Account Recovery, LLC; Jeremy D. Shaffer; Joshua L. Mitchem; Steven Mitchem; and Dustin Dernier, through their attorney of record, Busby & Zappala LLP, Mr. Ralph A. Zappala, Esq., 251 Lafayette Circle, Suite 350, Lafayette, California 94549.<br>SERVED BY EMAIL TO:<br>rzappala@bzlawLLP.com |
| | Defendants and Cross-Complainants Delbert Daily, Sharanjeet Paul and Retha Walker through their counsel Lakeshore Law Center, Mr. Jeffrey Wilens, Esq., 18340 Yorba Linda Blvd., Suite 107-610, Yorba Linda, CA 92886 and Spencer Law Firm, Mr. Jeffrey P. Spencer, Esq., 903 Calle Amanecer, Suite 220, San Clemente, CA 92673. SERVED BY EMAIL TO:<br>jeff@lakeshorelaw.org<br>jps@spencerlaw.net |
| DOCUMENT SERVED: | Answer to Complaint; Cross-Complaint by Daily, Paul and Walker; Civil Case Cover Sheet—Plaintiffs VIP PDL Service, LLC, et. al. v. American Arbitration Association et. al., Orange County Superior Court Case No. 30-2016-00878131-CU-MC-CJC. |

DECLARATION OF ELECTRONIC SERVICE

I am a citizen of the United States and a resident of Orange County, State of California. I am over the age of 18 years and not a party to this action within. My business address is 18340 Yorba Linda Blvd., Suite 107-610, Yorba Linda, CA 92886.

On October 17, 2016, I served the foregoing document described by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.

I declare under penalty of perjury and under the laws of the State of California, that the foregoing is true and correct. Executed this 17th day of October 2016 at Yorba Linda, California.

Jeffrey Wilens