**EXHIBIT 18**

1   **LAKESHORE LAW CENTER**
2   **Jeffrey Wilens, Esq. (State Bar No. 120371)**
    **18340 Yorba Linda Blvd., Suite 107-610**
3   **Yorba Linda, CA 92886**
4   **714-854-7205**
    **714-854-7206 (fax)**
5   **jeff@lakeshorelaw.org**

6   **Attorneys for Plaintiff**
7
8       **ARBITRATION BEFORE THE AMERICAN ARBITRATION**

9                        **ASSOCIATION**

10  DELBERT DAILY CLAIM #2          ) Case No.  01-16-0000-4222
    SHARANJEET PAUL CLAIM #2,       ) Case No. 01-16-0000-4991
11  RETHA P. WALKER CLAIM #1,       ) Case No. 01-16-000-3815
                                    )
12            Claimants,            )
                                    )
13            v.                    )
                                    )
14                                  ) **CLAIMANTS' OPPOSITION TO**
    FSST Financial Services, LLC, dba ) **RESPONDENTS' MOTION TO**
15  VIP Loan Shop, et. al.,         ) **"CLOSE" THE ARBITRATION**
    et. al.,                        ) **CASES**
16                                  )
            Respondents.            )
17  _____

18  TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

19          Claimants Delbert Daily, Sharanjeet Paul and Retha P. Walker respectfully
20  submit these points and authorities and argument in opposition to Respondents' Motion
21  to Close the Arbitration Cases (styled as a Motion to Elect to Adjudicate Disputes in
22  Small Claims Court.)
23  DATED: June 2, 2016
24                          Respectfully submitted,
25
26              By  _Jeffrey Wilens_____
27                  JEFFREY WILENS
                    Attorney for Plaintiff
28
                                    1
    _____
    CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

<span style="color:red">**EXHIBIT 18**</span>

## STATEMENT OF CASE

Claimants received payday loans from Respondents pursuant to written loan agreements.  (See Respondents' Exhibits A-C.)  Originally, Claimants were members of putative class actions filed in state and federal court.  However, Respondents (or at least those who were parties to the court actions) obtained court orders compelling arbitration based on the same arbitration agreements found in Claimants' loan agreements.  (Wilens Declaration, ¶¶ 2-4; Exhibits 1 and 2.)  In light of those rulings, Claimants did not try to file their cases in the court system but instead complied with Respondents' election to enforce the arbitration clause in the loan agreements.

Now, Respondents have switched tactics and wish to block Claimants from pursuing their claims in arbitration.   Respondents have styled their request as an "election" to have the small claims courts of California adjudicate the dispute with Claimants.   But make no mistake, that is not the relief sought.   As stated in Respondents' conclusion: "In sum, these arbitration proceedings should be closed so that these disputes may proceed in California's small claims court pursuant to Respondents' election."

## POINTS AND AUTHORITIES

## ARGUMENT

**I.    CLAIMANTS ARE NOT REQUIRED AND CANNOT BE REQUIRED BY THE ARBITRATION AGREEMENTS OR AAA RULES TO PURSUE THESE CLAIMS IN SMALL CLAIMS COURT WHERE THEY WOULD NOT BE REPRESENTED BY LEGAL COUNSEL**

Respondents are asking this Arbitrator to <u>force</u> Claimants to file cases in small claims court.  The request is unprecedented, is not supported by either the arbitration agreements or AAA policy, and any order granting this relief would violate Claimants' rights to due process.  Therefore, the request must be rejected for at least four reasons.  First, the arbitration agreements do not give Respondents the right to force Claimants to file cases in small claims court, they only give either side the option to choose to file in small claims court.  Respondents could have filed cases in small claims court but have

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

chosen not to.  Claimants do not desire to litigate these cases in small claims court.

Second, the current AAA rules should not apply to these arbitration agreements which long predated them.  Even if the current rules did apply, they are vaguely drafted but construed properly cannot be read to permit consumers to be forced to waive their right to legal counsel and pursue the cases in small claims court at the election of the business.  Such a reading would violate the AAA Due Process statement.

Third, even if either the arbitration agreements or the AAA rules could be construed to allow a business to force a consumer out of arbitration and into small claims court, that would violate the consumer's right to due process and therefore would be unconscionable and unenforceable as it would be against public policy.  No court has upheld an arbitration agreement that stripped a claimant of the right to be represented by counsel so no court would uphold a contract provision or arbitration rule that did the same thing.

Fourth, for a number of different reasons, the small claims court would not have jurisdiction over or be a practical forum for resolution of these claims.

Before turning to these arguments, a short summary of the California small claims court system will be provided.

## A.   SMALL CLAIMS COURT IS A VOLUNTARY ALTERNATIVE FORUM FOR PLAINTIFFS TO ADJUDICATE SMALL DOLLAR DISPUTES.

A small claims court case is initiated by filing a complaint.  (Code of Civil Procedure § 116.320 (a).) The small claims courts have jurisdiction for money disputes of up to $10,000 if the plaintiff is a natural person, but said person can only file up to two cases per year if the value exceeds $2,500.  (C.C.P. § 116.220, § 116.221.)  Small claims courts cannot award an injunction or other equitable relief unless another statute expressly confers that power on the small claims court.  (C.C.P. § 116.220 (a) (5).)

With two exceptions, only persons in this state can be served a small claims case.  The exceptions, which are not applicable here, are for residents of other states who own

real property and the claim relates to that property or who were involved in a car accident in this state. (C.C.P. § 116.340 (e), (f), (g).)

With narrow exceptions "no attorney may take part in the conduct or defense of a small claims action." However, an attorney can provide "advice to a party" either "before or after the commencement of the action." Also, an attorney can represent a party in a small claims appeal which is a trial de novo. The other exceptions—for attorneys who individually or whose partnership or professional corporation is a party, or for attorneys who are witnesses, or for post-judgment collection efforts—are not relevant to this motion. (C.C.P. § 116.530.) While in C.C.P. § 116.540 the Legislature authorized various categories of persons to represent other persons (such as employees, managers and spouses), it expressly reaffirmed that an attorney is not authorized to participate in a small claims action except as permitted in § 116.530. (§ 116.540 (g).)

A plaintiff has no right to appeal a small claims case judgment unless there was a cross-complaint and a judgment against him. Only a defendant can appeal a small claims court judgment against it. (C.C.P. § 116.710.) The appeal is a new trial before a different judge but is otherwise subject to the same informal nature as the small claim trial except attorneys can represent the parties. (C.C.P. § 116.770.) In fact, if the appeal was frivolous, the court can award attorney's fees. (C.C.P. § 116.790.)

Because of the informal nature of small claims court proceedings and the lack of constitutional rights such as the right to a jury trial, the right to be represented by an attorney, and the unequal right to appeal (only the defendant can appeal not the plaintiff), the small claims court system has been subjected to constitutional challenges. Those challenges were only defeated because small claims court is a voluntary forum in which plaintiffs can file their disputes or they are free to file in the regular courts. This point is addressed in detail under Argument heading D.

**B.  THE ARBITRATION AGREEMENTS PERMIT EITHER SIDE TO FILE A CASE IN SMALL CLAIMS COURT; THEY DO NOT PERMIT ONE SIDE TO FORCE THE OTHER SIDE WHO HAS FILED A CASE IN ARBITRATION TO FILE**

3

**THAT CASE IN SMALL CLAIMS COURT.**

The Parties agree that the arbitration agreements state:

1)  all parties "shall retain the right to seek adjudication in a small claims tribunal for disputes within the scope of such tribunal's jurisdiction."

2)  If the dispute cannot be adjudicated within the jurisdictional limits of small claims court, then it must be resolved by binding arbitration.

3)  Any appeal of a judgment from a small claims tribunal must be resolved by binding arbitration.

None of the foregoing language gives Respondents the right to force Claimants to file small claims court actions.  It simply allows either side to "seek adjudication" in small claims court if the dispute is within the jurisdiction of that court.  The only way to "seek adjudication" in small claims court is by filing a case as the Plaintiff or responding to a case as a defendant.  If Respondents wanted to go to small claims court, they could have filed small claims cases in timely fashion against those consumers who still owed money or for declaratory relief (if that is available) against those claiming the loans are illegal.  But Respondents have not filed any small claims actions.

What Respondents are asserting is the right to force consumers who already filed arbitrations to dismiss their cases and refile them in small claims court.   There is nothing in the Arbitration Agreements that confer that right or power on Respondents.

Presumably Respondents have not filed in small claims court because they do not actually want to litigate in that court and this is motion is just a ploy to get rid of 100+ meritorious arbitration cases. Also, if Respondents did file cases in small claims court and won, even by default, Claimants could then "appeal" not to the court for trial de novo but right back here before the AAA.

Since no one has elected to file a case in small claims court, the paraphrased language from the arbitration agreements is not determinative of this motion.

Respondents cite <u>Jenkins</u> v. <u>First Am. Cash Advance of Ga., LLC</u> (11th Cir. 2005) 400 F.3d 868, 879, but the case is not helpful.  That case held an arbitration agreement

4

provision that preserved the right of the consumer or payday lender to seek adjudication in small claims court was not unconscionable and described how small claims court might be an effective forum for the consumer.  This holding in no way suggested or supported the idea that a business can force a consumer to either abandon a claim or file it in small claims court against his will.  To the contrary, the <u>Jenkins</u>, <u>supra</u>, court emphasized the purpose of preserving the small claims option is to "benefit, not injure, consumers."  (<u>Id</u>.)  Respondents' interpretation of the agreement injures and does not benefit consumers.

**C.   THE CURRENT AAA RULES ABOUT SMALL CLAIMS COURT SHOULD NOT APPLY BUT EVEN IF THEY DO, THEY CANNOT BE CONSTRUED AS REQUIRING CLAIMANTS TO WAIVE THEIR RIGHT TO BE REPRESENTED BY LEGAL COUNSEL AS WOULD RESULTS IF THEY WERE FORCED TO LITIGATE IN SMALL CLAIMS COURT.**

Respondents point to AAA Rule 9 which currently provides:

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

(a) The parties may take their claims to small claims court without first filing with the AAA.

(b) After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

(c) After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.  (Wilens Declaration, ¶ 5; Exhibit 3.)

Respondents are invoking paragraph (c) not paragraph (b) since an arbitrator has been appointed.  Therefore, closing the case is <u>not</u> required by Rule 9.  Based on the due

1   process concerns discussed below, the Arbitrator should rule these cases must be
2   decided in arbitration not small claims court.

3          The above reason should suffice, but there are additional concerns with applying
4   Rule 9 to close these cases.

5          First, all of these loans were obtained in 2011.  The current version of Rule 9 was
6   not implemented until September 2014, three years later.  At the time Claimants signed
7   the arbitration agreements, the applicable rules enacted in 2005 stated in relevant part:

8      • Claimants are not prohibited from seeking relief in a small claims court for
9        disputes or claims within the scope of its jurisdiction, even in consumer
10       arbitration cases filed by the business.  (Wilens Declaration, ¶ 6; Exhibit 4, p. 4.)

11     • Parties can still take their claims to a small claims court.  (Exhibit 4, p. 8.)

12  In other words, the rules in effect when Claimants took out the loans and agreed to the
13  arbitration agreements, stated that either side could file an arbitration case, but only the
14  consumers (and not the lenders) could file small claims court cases after the business
15  files for arbitration.

16         Respondents claim that even before Rule 9 was created in 2014, there was a long-
17  standing policy of favoring adjudication through small claims court.  That is not true.
18  There may have been a long-standing policy allowing <u>consumers</u> to seek relief in small
19  claims court even after a business files for arbitration but there was no long-standing
20  policy allowing a business to nullify a consumer's election to arbitrate and require the
21  consumer to seek relief only in small claims court.

22         Respondents also claim that by agreeing to follow the rules of the AAA, Claimants
23  necessarily agreed to follow whatever rules the AAA created in the future.  Respondents
24  do not cite any authority for that proposition.  The case they do cite, <u>Zenelaj</u> v.
25  <u>Handybook Inc</u>. (N.D.Cal. 2015) 82 F. Supp. 3d 968, 973, does not address the question
26  whether some dramatic change in AAA rules after the arbitration agreement was signed
27  would be binding on the consumer.

28         To the extent Rule 9 was intended to permit businesses to force consumers who

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

already filed arbitration cases to go to small claims court, which is very doubtful, that would be such a dramatic change from what they agreed to that it would be fundamentally unfair to impose it on these Claimants.

Second, Rule 9 should not be read as creating such a dramatic change in procedure. Rule 9 should be read in conjunction with the AAA Consumer Due Process Protocol Statement of Principles, which make it clear Rule 9 was intended to protect consumer rights and not to strip them of due process. (Wilens Declaration, ¶ 7; Exhibit 5.) Those Principles make it clear that fundamental fairness requires that <u>consumers</u> be given the option of seeking relief small claims court even after arbitration was commenced by the business, but there was no similar concern that justifies permitting businesses to squelch arbitrations once started by the consumers and requiring consumers to restart the process in small claims court against their will. The relevant Principles state:

- Consumer ADR Agreements should make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction. (Exhibit 5, p. 2.) However, the Reporter's Comments on this Principle recognizes it is intended to protect the rights of the consume. The Comments state: "The Advisory Committee concluded that access to small claims tribunals is an important right of Consumers which should not be waived by a pre-dispute ADR Agreement." (Exhibit 5, pp. 16-17.)

- "Consumers should be given: . . . notice of the option to make use of applicable small claims court procedures as an alternative to binding arbitration in appropriate cases. . . ." (Exhibit 5, p. 3.)

- "Consumers should be provided with (or have prompt access to) written information to explain the process. This should include general information describing each ADR process used and its distinctive features, including: . . . the availability of alternatives to ADR, including small claims court." (Exhibit 5, p. 10.)

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

- Concerns about the location of the arbitration can be obviated if consumers "have the "alternative of pursuing relief in a small claims court." (Exhibit 5, p. 21.)
- Both sides to an arbitration should have the right to be represented by counsel. (Exhibit 5, pp. 23-24.)

Third, what if the AAA Rule said "no lawyers are allowed in arbitration." Such a rule would also violate due process by denying claimant's the option to be represented by counsel.

Hence, while Respondents argue the intent behind Rule 9 was to allow a business to force a consumer who has already elected to proceed in arbitration pursuant to an arbitration agreement drafted by the business to go to small claims court, such a rule would be contrary to the sentiments expressed in the AAA's Consumer Due Process Protocol.

**D.   AN ORDER THAT CLAIMANTS MUST FILE THESE CASES IN SMALL CLAIMS COURT WHERE THEY ARE NOT PERMITTED TO BE REPRESENTED BY COUNSEL WOULD VIOLATE THEIR RIGHT TO DUE PROCESS.**

As explained in Argument Section A, small claims court is intended to be a voluntary option for plaintiffs who are willing to waive various rights and advantages in exchange for the advantages of proceeding in small claims court.   There is no mechanism by which an existing lawsuit in limited or unlimited jurisdiction courts can be relegated to small claims court.   It is only the voluntary nature that avoids due process challenges by plaintiffs to the small claims court laws.    The leading case is <u>Prudential Ins</u>. <u>Co</u>. v. <u>Small Claims Court</u> (1946) 76 Cal.App.2d 379.   Rejecting a due process challenge based on the lack of legal representation, the court explained:

> It is urged that depriving a litigant of the right of counsel is a violation of due process. There can be little doubt but that in both civil and criminal cases the right to a hearing includes the right to appear by counsel, and that the arbitrary refusal of such right constitutes a deprivation of due process. [citation omitted] But that does not mean that the Legislature cannot create a small claims court where informal hearings may be held without the assistance of

8

counsel, as long as the right to appear by counsel is guaranteed in a real sense somewhere in the proceeding. **It is obvious that the plaintiff cannot object, although he has no right of appeal, because he has elected to commence the action in the small claims court. If he desires an attorney he can sue, even on these small claims, in the justices or municipal courts.** The defendant has no legal cause for complaint because if he is dissatisfied with the judgment of the small claims court he has a right of appeal to the superior court where he is entitled to a trial de novo. (Los Angeles Bond etc. Co. v. Superior Court, 1 Cal.App.2d 634 [37 P.2d 159].) In that court he and the plaintiff can, of course, appear by counsel. This satisfies the due process requirement. (emphasis added) (Prudential Ins. Co. v. Small Claims Court (1946) 76 Cal.App.2d 379, 381-382 (emphasis added).)

As the Supreme Court explained in Superior Wheeler Cake Corp. v. Superior Court in & for L.A. (1928) 203 Cal. 384, 387:

The **plaintiff**, in other words, **comes under the yoke of this system voluntarily, but the defendant comes thereunder only by the strong arm of the law. The parties, therefore, do not enter the forum upon equal terms. If the plaintiff does not feel that he will be benefited by the procedure, he has the alternative of entering the regular jurisdiction of the justice's court,** where the right of appeal is equal and reciprocal. Having this unmistakable choice in the premises, we fail to find discrimination within the meaning of any of said constitutional provisions. The advantage voluntarily accepted must be held a complete compensation for the loss of the right of appeal. (emphasis added)

More recent court decisions follow the foregoing line of reasoning.  For example, in Cook v. Superior Court of San Mateo County (1969) 274 Cal.App.2d 675, 677-678, the court observed "A small claims court plaintiff, taking advantage of the speedy, inexpensive procedures and other benefits of that court, accepts all of its attending disadvantages such as the denial of the right to an attorney or to an appeal."  Normally a party which files a counterclaim is functionally the "plaintiff" and forfeits the right to appeal, but when the counterclaim is mandatory or abandoned, the counterclaimant

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

1  retains the right to appeal "since 'the strong arm of the law,' rather than the party's
2  voluntary election, motivates the party in filing these 'mandatory' counterclaims, the
3  counterclaimant should retain his right to appeal." (Skaff v. Small Claims Court for Los
4  Angeles Judicial Dist. (1968) 68 Cal.2d 76, 79, fn. 3.) To similar effect, in Pitzen v.
5  Superior Court (2004) 120 Cal.App.4th 1374, 1379, the court stated: "A small claims
6  court plaintiff, taking advantage of the speedy, inexpensive procedures and other
7  benefits of that court, accepts all of its attending disadvantages such as the denial of the
8  right to an attorney or to an appeal."  (See e.g., Crouchman v. Superior Court (1988) 45
9  Cal.3d 1167, 1171, fn. 3; Brooks v. Small Claims Court (1973) 8 Cal.3d 661, 665; Mendoza
10 v. Small Claims Court (1958) 49 Cal.2d 668, 673; Fallis v. Department of Motor Vehicles
11 (1968) 264 Cal.App.2d 373, 383.)

12      Claimants had the option of seeking relief in small claims court, but elected to
13 proceed in arbitration so they could be represented by legal counsel.  If Respondents
14 obtain the relief they seek, Claimants will be forced enter the small claims court system
15 against their will and involuntarily where they will forfeit their constitutional right to be
16 represented by counsel.

17      The question then is whether a waiver of the constitutional right to counsel (and
18 other rights) can be established here.  The waiver of constitutional rights is not to be
19 inferred.  Generally speaking, it has been held that waiver of a federally guaranteed
20 constitutional right is a federal question controlled by federal law.  Contractual waiver of
21 constitutional rights must be voluntary, knowing, and intelligent, and must be
22 established by clear and compelling evidence.  Courts will indulge in every reasonable
23 presumption against waiver.  (Erie Telecomms. v. Erie (3d Cir. 1988) 853 F.2d 1084,
24 1094-1095.)   For example, a contractual waiver of the right to a jury trial is only
25 enforceable if it is "clearly apparent in the contract and its language must be
26 unambiguous and unequivocal, leaving no room for doubt as to the intention of the
27 parties." (Badie v. Bank of America (1998) 67 Cal.App.4th 779, 804.)  Sometimes, when
28 a contract contains an express provision waiving the judicial forum, it is understood this

necessarily entails a waiver of the right to jury trial.  (<u>Id</u>.)  Of course, that reasoning would not apply to a waiver of right to counsel, since waiving jury trial and proceeding in arbitration do not necessarily require a waiver of the right to be represented by legal counsel.

Respondents insist the waiver of this constitutional right can be established based on Claimants' agreement that either side could file a small claims court action and that AAA rules could control.  "Complainants cannot claim a due process violation because they contractually agreed to adjudication in small claims court both in the Agreement and by selecting AAA as arbitrator and agreeing to abide by AAA's rules including R-9." (Motion, p. 10.)  However, as pointed out previously, Claimants only agreed either party could file a case in small claims court in lieu of commencing arbitration and neither party has done so.  Since Claimants did not file in small claims court, they did not waive any constitutional rights that would result from such a filing.

There is absolutely nothing in the arbitration agreement that mentions any waiver of due process rights or any waiver of the right to be represented by counsel.  <u>To the contrary</u>, the arbitration agreement contemplates consumers will be represented by counsel.  Both paragraphs (g) and (h) refer to consumers' right to recover attorney's fees if they prevailed in arbitration. The arbitration agreements contain some waivers of constitutional rights in paragraph (c).  In all capital letters, consumers are told they are waiving their right to "trial by jury" and waiving their right to have a court other than small claims court resolve their dispute.  There is no reference to any waiver of the right to be represented by counsel.

Similarly, an express (or "clear"), intelligent, voluntary and knowing waiver of the right to counsel cannot be established by a reference to unspecified AAA rules, especially a rule that did not exist when the arbitration agreement was signed.  Suppose the AAA in 2014 enacted a new rule prohibiting claimants from being represented by counsel. How could a 2011 contract agreeing that an arbitration would be subject to AAA Rules constitute a waiver of the right to counsel under those circumstances?  Yet that is the

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

result the Respondents urge, by claiming the Claimants can be forced into small claims court depriving them of the right to representation by counsel.

Additionally, Respondents cite two cases which do nothing to advance their arguments.  Respondents cite O. G. Sansone Co. v. Department of Transportation (1976) 55 Cal.App.3d 434, 463, which dealt with the constitutionality of statutes requiring contractors on public contracts to pay prevailing wage even though private contractors are not similarly treated.  Obviously, that case has nothing to do with the waiver of the constitutional right to be represented by counsel.

The other case cited by Respondents, an Oklahoma Court of Appeal case, is completely off point and also does not aid Respondents in the slightest.  That case is James v. Zachritz 2006 OK CIV APP 46, ¶ 3 [134 P.3d 926, 927].  In that case, a consumer filed a small claims case against a contractor, who filed a motion to transfer the case to arbitration pursuant to an arbitration agreement, which was denied.  The appellate court affirmed noting the arbitration agreement gave the consumer the right to pursue small claims court instead of arbitration.  (Id. at ¶ 4.)  Nothing in this decision suggested a business could force a consumer, who already filed a case in arbitration, to pursue relief only in the small claims court.

Finally, Respondents claim there is no real loss of the right to counsel because even though Claimants cannot be represented by counsel in the small claims court, they can be represented in the appeal which must be arbitrated.  This is a fallacy.  If Claimants are forced by the AAA to file the small claims court actions, they will be the plaintiff and therefore will have no right to appeal.  Respondents have no incentive and no intention to file in small claims court.

### E. THE SMALL CLAIMS COURT WOULD NOT HAVE JURISDICTION OVER RESPONDENTS, COULD NOT PROVIDE ALL REQUESTED RELIEF AND WOULD NOT BE A VIABLE FORUM FOR THE COMPLICATED CLAIMS.

First, as explained above, since Respondents are located in other states and countries, a California small claims court would not have jurisdiction over them.

Respondent cite <u>Miller</u> v. <u>Mun. Court of City of Los Angeles</u> (1943) 22 Cal.2d 818, 851 which discuss subject matter jurisdiction of small claims courts.  That case is not on point.  The issue is personal jurisdiction and the small claims court laws limit that to California residents with two exceptions not applicable here.

Second, a small claims courts also lacks the power to grant all the relief sought.  Claimants seek injunctive relief (see Prayer for Relief, ¶ 2.)  As explained previously, small claims court cannot grant injunctive relief unless there is a statute that expressly gives that power to small claims courts.  While Financial Code § 23064 and Business and Professions Code § 17203 give a Superior Court power to grant junctions, they do not expressly extend that to small claims courts. Even a limited jurisdiction court (formerly known as Municipal Court) cannot issue a final and permanent injunction. (<u>St. James Church of Christ Holiness</u> v. <u>Superior Court of Los Angeles County</u> (1955) 135 Cal.App.2d 352, 362.)

Respondents downplay this deficiency claiming that equitable relief would be unavailable because a monetary remedy would suffice.  The two cited statutes allow for injunctive relief in addition to any monetary relief.   It is premature to determine whether the request for injunctive relief is meritorious.

Third, as a practical matter, a small claims court would not be a viable forum for the complicated RICO claims being raised since they require evidence of multiple racketeering acts.  Respondents note that state courts have concurrent jurisdiction over RICO claims.  That is true but no court ever held a state <u>small claims court</u> had concurrent jurisdiction.  RICO allows for recovery of treble or punitive damages (18 USC section 1964) but small claims courts are limited to recovery of no more than $10,000.

Finally, there are 100 pending arbitration cases based on these payday loans.  As the Arbitrator knows, all but three cases were stayed pending the Arbitrator's determination on this threshold issue.  Left to their own devices, few if any of the consumers are sophisticated enough to file individual small claims cases relying on complicated laws such as the state payday loan law and RICO.

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

1    Citing <u>City</u> <u>and</u> <u>County</u> <u>of</u> <u>San</u> <u>Francisco</u> v. <u>Small</u> <u>Claims</u> <u>Court</u> (1983) 141

2    Cal.App.3d 470, 475, Respondents argue that the mere fact a case maybe "relatively

3    complex compared to many matters heard in small claims court" is not a good reason to

4    throw the cases out.  However, in that case it was the plaintiffs who brought the cases

5    and presumably felt they were in a position to effectively bring them in small claims

6    court.  In the instant cases, the Claimants do not believe small claims court would be

7    adequate.

8    Respondents suggest counsel could help them file if he cannot represent those

9    100+ consumers, but that is absurd.  The consumers are poor, which is why they took

10   out payday loans.  They don't have the money to pay counsel out of pocket and there

11   would be no way for counsel to recover his fees in the small claims court since no legal

12   representation is permitted.  Granting this motion is tantamount to giving the

13   consumers no effective recourse.

14                             **<u>CONCLUSION</u>**

15   For the above stated reasons, Claimants respectfully urge the Arbitrator to deny

16   the motion to close the arbitration cases.

17   DATED: June 2, 2016

18                      Respectfully submitted,

19

20             By

21                      JEFFREY WILENS
                        Attorney for Plaintiff

22

23

24

25

26

27

28

---

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

**<u>DECLARATION OF JEFFREY WILENS</u>**

I, JEFFREY WILENS, hereby declare:

1.  I am an attorney of record for Claimants in this matter.  I could and would competently testify to the below stated facts of my own personal knowledge if called as a witness.

2.  Originally, Claimants were members of putative class actions filed in state and federal court by my office.

3.  However, Respondents (or at least those who were parties to the court actions) obtained court orders compelling arbitration based on the same arbitration agreements found in Claimants' loan agreements.

4.  True and correct copies of the state and federal court orders are attached hereto as Exhibits 1 and 2 incorporated thereby.

5.  The current version of Rule 9 was not implemented until September 2014, three years after the arbitration agreements were signed.  A true and correct copy of the September 2014 Rules is attached hereto as Exhibit 3 and incorporated thereby.

6.  At the time Claimants signed the arbitration agreements, the applicable rules had been enacted in 2005.  A true and correct copy of those 2005 Rules is attached hereto as Exhibit 4 and incorporated thereby.

7.  A true and correct copy of the AAA Consumer Due Process Protocol Statement of Principles is attached hereto as Exhibit 5 and incorporated thereby.

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

      Executed on May 31, 2016 at Yorba Linda, California.

By     _Jeffrey Wilens_

JEFFREY WILENS
Attorney for Plaintiff

1

CLAIMANTS' OPPOSITION TO MOTION TO CLOSE THE ARBITRATION CASES

1
**BUSBY & ZAPPALA, LLP**
RALPH A. ZAPPALA, SB# 102052
  E-Mail: rzappala@bzlawllp.com
2
251 Lafayette Circle
Suite 350
3
Lafayette, California 94549
Telephone: (925) 299-9600
4

5
**WALLACE SAUNDERS**
Paul M. Croker, *Pro Hac Vice*
  E-Mail: pcroker@wallacesaunders.com
6
10111 West 87th Street
Overland Park, Kansas 66212
7
Telephone: 913.888.1000
Facsimile: 913.888.1065
8

9
Attorneys for Defendants,
RARE MOON MEDIA, LLC, JEREMY SHAFFER,
BRAD LEVENE, LINDSEY COKER, JOSH MITCHEM
10
(also sued herein as Does No. 11, 14, 15, 16, 17,
respectively)
11

SUPERIOR COURT OF THE STATE OF CALIFORNIA
12

COUNTY OF ALAMEDA
13

14
DINAH PHAM, PAULA BERNAL and
MARY F. BAILEY, on behalf of themselves
15
and all persons similarly situated,

| | |
|---|---|
| CASE NO. RG12652919 |
| [Assigned for All Purposes to The Hon. Wynne Carvill, Dept. 21] |

16
            Plaintiffs,

**NOTICE OF ENTRY OF ORDER GRANTING PETITION TO COMPEL ARBITRATION**

17
    vs.

18
JPMORGAN CHASE BANK, N.A.,
WELLS FARGO BANK, N.A.,
19
MONEYMUTUAL,
EFFECTIVE MARKETING SOLUTIONS,
20
LLC,
MONTEL BRIAN ANTHONY WILLIAMS,
21
AARON SHOAF,
CASH YES,
22
GATEWAY HOLDINGS GROUP LLC,
HORIZON OPPORTUNITIES GROUP, LLC,
23
SCS PROCESSING, LLC
PAYDAY VALET,
24
VIP PDL SERVICES, LLC, and
Does 1 through 100 inclusive,
25

26
            Defendants.

Judge:  Hon. Wynne Carvill
Date:   November 7, 2014
Time:   8:30 a.m.
Dept.:  21
**Reservation No. R-1552785**

Action Filed:  10/22/12
FAC Date:      11/2/12
Trial Date:    None Set

27

28

1

NOTICE OF ENTRY OF ORDER GRANTING PETITION TO COMPEL ARBITRATION

1013627y8 v.1

**EXHIBIT 1: STATE COURT ARBITRATION ORDER**

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

    NOTICE IS HEREBY GIVEN that the Court granted the Petition of Specially Appearing Defendants Rate Moon Media, LLC, Jeremy Shaffer, Brad Levine, Lindsey Coker and Josh Mitchem ("Rare Moon Defendants") to Compel Arbitration.

    The Court ruled that the Petition to Compel Arbitration of the claims of plaintiffs Pham and Bailey against the Rate Moon Defendants is GRANTED, and the class and representative claims of Pham and Bailey against the Rare Moon Defendants are DISMISSED.  The individual claims of Pham and Bailey against the Rare Moon Defendants are STAYED, pending completion of the arbitration process.  The order, however, including the stay and the dismissal of class and representative claims, has no effect on the claims of Bernal, however, as set forth in the Rare Moon Defendants' Motion to Compel Arbitration and declarations in support, Bernal has not asserted a claim against a lender for whom Rare Moon Media, LLC provides any service and, therefore, Bernal has not asserted a claim against the Rare Moon Defendants.

    A copy of the Court's Order is attached hereto and marked Exhibit "A".

DATED:  November 25, 2014

BUSBY & ZAPPALA, LLP

By: _____
    RALPH A. ZAPPALA

PAUL CROKER  KS #21627
E-Mail:  pcroker@wallacesaunders.com
WALLACE SAUNDERS
10111 W. 87th Street
Overland Park, Kansas  66212
Telephone:  913.888.1000
Facsimile:  913.888.1065
**Admitted Pro Hac Vice**

Attorneys for Defendants, RARE MOON MEDIA, LLC, JEREMY SHAFFER, BRAD LEVENE, LINDSEY COKER, and JOSH MITCHEM

NOTICE OF ENTRY OF ORDER GRANTING PETITION TO COMPEL ARBITRATION

101362798 v.1

EXHIBIT 1: STATE COURT ARBITRATION ORDER

Exhibit A

EXHIBIT 1: STATE COURT ARBITRATION ORDER

Lakeshore Law Center                    Moneymutual
Attn:  Wilens, Jeffrey
18340 Yorba Linda Blvd
Suite 107-610
Yorba Linda, CA  92886____

---

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| Pham | |
|---|---|
| Plaintiff/Petitioner(s) | No. <u>RG12652919</u> |
| VS. | Order |
| | Petition to Compel Arbitration (Motion) |
| JPMorgan Chase Bank, N.A. | Granted |
| Defendant/Respondent(s) | |
| (Abbreviated Title) | |

The Petition to Compel Arbitration (Motion) filed for Josh Mitchem and Lindsey Coker and Brad Levene and Jeremy Shaffer and Rare Moon Media, LLC was set for hearing on 11/07/2014 at 08:30 AM in Department 21 before the Honorable Wynne Carvill.  The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The Petition of specially appearing defendants Rare Moon Media, LLC, Jeremy Shaffer, Brad Levine, Lindsey Coker and Josh Mitchem ("Rare Moon Defendants") To Compel Arbitration ("Petition") is ruled on as follows:

BACKGROUND:

The currently operative Second Amended Complaint in this case was filed on June 11, 2014 ("SAC") by plaintiffs Dinah Pham, Paula Bernal and Mary F. Bailey, on behalf of themselves and all persons similarly situated ("Plaintiffs"). Plaintiffs allege in the Complaint that they entered into Deferred Deposit Transaction ("DDT") agreements, commonly known as "payday loans," with one of more lenders during the applicable limitations period (defined by Plaintiffs as on or after October 22, 2008), and that these payday loan transactions were in violation of California Financial Code sections ("FC") 23000, et seq. ("DDT Law"). The SAC includes three causes of action, (1) Violation of [DDT Law], (2) Violation of Unfair Competition Law, Business and Professions Code sections 17200, et seq. ("UCL") - Unlawful Act, and (3) Violation of [UCL] - Fraud.

Several groups of defendants are named in the Complaint. The first group includes Cash Yes, Gateway Holdings Group, LLC, Horizon Opportunities Group, LLC, SCS Processing, LLC, Payday Valet, and VIP PDL Services, LLC, collectively defined as "UNLICENSED LENDER Defendants." None of the UNLICENSED LENDER Defendants have appeared. In fact, no proofs of service have been filed as to any of the UNLICENSED LENDER Defendants.

The second group of defendants includes Money Mutual, LLC ("Money Mutual") and Montel Brian Anthony Williams ("Williams"), both of whom have been in the case since the very beginning, and Selling Source, LLC, London Bay Capital, LLC, Partner Weekly, LLC, TSS Acquisition Company, LLC, Glenn McKay, Brian Rauch and John Hashman (collectively, "Money Mutual Defendants").

---

Order

EXHIBIT 1: STATE COURT ARBITRATION ORDER

The third group of defendants includes Rare Moon Media, LLC, Jeremy Shaffer, Brad Levene, Lindsey Coker and Josh Mitchem ("Rare Moon Defendants").

The fourth group of defendants includes Cane Bay Partners VI, LLC, Cane Bay Partners VI, LLLP, ISG International, M. Mark High Ltd., Interactive Services Group, David A. Johnson, and Sarah Reardon ("Cane Bay Defendants").

All of the Defendants are implicated in Plaintiffs' 1st and 2nd causes of action. The claims against the Money Mutual Defendants, the Rare Moon Defendants and the Cane Bay Defendants are based on allegations that they assisted one or more of the UNLICENSED LENDER Defendants in the origination of payday loans, even though neither the lenders nor any of the Defendants had the required license from the State of California, in violation of Financial Code section 23005. (SAC, paragraph 65.) Only the Money Mutual Defendants are implicated in the 3rd cause of action.

The Rare Moon Defendants and the Cane Bay Defendants have been resisting submitting to the personal jurisdiction of the court since being served some months ago, and the court has allowed Plaintiffs to take jurisdictional discovery. The original motions to quash that were filed last spring, however, were dropped in anticipation of new motions being filed. (See Case Management Order dated August 13, 2014.)

PETITION:

The Rare Moon Defendants ("RMDs") now move to compel arbitration under the arbitration clause contained in the Consumer Loan and Arbitration Agreement ("Loan Agreement") executed electronically by plaintiff Dinah Pham ("Pham") for each of 6 different loans and by plaintiff Mary F. Bailey ("Bailey") for one loan. Copies of these seven loan agreements have been submitted under cover of the Declaration of David Odell, president of the company that "provides information technology services regarding the servers utilized with respect to the businesses of [the two lenders from whom Pham and Bailey obtained their loan]."

RMDs assert that the subject arbitration provisions are enforceable by the non-signatory RMDs because (a) they are alleged to be "agents" of the lenders, (b) they are third party beneficiaries, and (c) they are entitled to rely on the doctrine of equitable estoppel.

The court notes that RMDs purport to request the relief sought by this Petition "without waiving their objection to lack of personal jurisdiction." (Memorandum in support, page 2, fn.2.) The court does not intend this observation as a ruling on whether or not a petition to compel arbitration constitutes a general appearance for personal jurisdiction purposes.

OPPOSITION:

In opposition, Plaintiffs first point out that RMDs have not submitted a Loan Agreement signed by plaintiff Paula Bernal ("Bernal"), so Bernal cannot be compelled to arbitrate anything.

Plaintiffs then raise four arguments in opposition. First, Plaintiffs argue that RMDs did not demand arbitration, and Plaintiffs did not refuse to arbitrate, before the Petition was filed, which warrants denial of the Petition. (Citing Mansouri v. Sup. Ct. (2010) 181 Cal.App.4th 633, 641 ["Mansouri"].)

Second, Plaintiffs have submitted evidentiary objections to the Odell declaration, and argue that RMDs have not proven the existence of the arbitration agreements.

Third, Plaintiffs argue that RMDs have waived any right to compel arbitration by virtue of the delays caused by their challenges to both subject matter jurisdiction (removal to federal court) and personal jurisdiction.

Fourth, Plaintiffs argue that RMDs do not have standing to invoke the arbitration provisions in the Loan Agreements. They are not "related third parties," they have not submitted proof that they are "agents," and the equitable estoppel doctrine does not apply.

DISCUSSION:

---

EXHIBIT 1: STATE COURT ARBITRATION ORDER

As much as Plaintiffs would like to avoid the validity of this observation, some of the issues raised herein bear a striking similarity to those considered by the court in another case involving payday lending with which counsel for Plaintiffs is intimately familiar, Colbert v. SFS, Inc., case no. RG12657429 ("Colbert"), Order dated January 6, 2014, and the arguments advanced by RMDs here lead the court to similar conclusions.

First, the court agrees with RMDs that CCP section 1281.2 does not impose a threshold requirement of informal demand and refusal where, as here, the party to be bound to arbitrate has already filed a lawsuit. Mansouri is distinguishable on this basis.

Second, Plaintiff's evidentiary objections to the Odell declaration are OVERRULED. The subject Loan Agreements have been submitted in admissible form. Accordingly, RMDs have established that Pham and Bailey are bound by enforceable arbitration agreements.

Third, as correctly argued by RMDs, jurisdictional challenges are threshold matters that do not touch the merits of a case and constitute neither unreasonable delay nor improper engagement of the litigation process. Plaintiffs have not otherwise shown prejudice sufficient to warrant a finding of waiver. (St. Agnes Med. Ctr. v. PacifiCare of Cal. (2003) 31 Cal.4th 1187, 1203.)

Fourth, the court concludes that RMDs do have standing to assert the arbitration provisions in the Loan Agreements. Although RMDs' reliance on the doctrine of judicial estoppel is misplaced since Plaintiffs' claims in this case are based on obligations defined by statute rather than the obligations defined by the terms of the Loan Agreements, RMDs clearly fall within the definition of "related third parties." This is especially true when this definition is read together with language defining the scope of the arbitration provision, "the words 'dispute' and 'disputes' are given the broadest possible meaning, and include, without limitation ... all claims, disputes or controversies arising from or relating directly or indirectly to the singing of this Agreement ..." (Loan Agreement, paragraph 5(b).) Furthermore, the SAC includes "agency" allegations (SAC, paragraph 32), and Plaintiffs' argument that RMDs must present evidence of their agency relationship before they can invoke the arbitration provision is neither supported by the authorities cited nor well taken.

Finally, the court does not necessarily agree with RMDs' assertion that the language in the arbitration provision qualifies as the sort of "delegation provision" discussed and applied by the U.S. Supreme Court in Rent-A-Center, West, Inc. v. Jackson (2010) 561 U.S. 63, 68-69, and notes that Plaintiffs, who have raised no unconscionability arguments as applied to the Loan Agreement as a whole or to the arbitration provision itself, have not mentioned the delegation provision at all in their opposition. While there is currently a split of authority on whether questions regarding class or representative arbitrations should be addressed by the court or the arbitrator when the applicable arbitration provision does NOT include express waiver language (see, Sandquist v. Lebo Automotive, Inc. (2014) 228 Cal.App.4th 65 [arbitrator decides class arbitrability]; but see, Network Capital Funding Corporation v. Papke (2014) 230 Cal.App.4th 503 [court decides class arbitrability]), given the clear and comprehensive language waiving class and representative actions included in the arbitration provision at issue here, it is not clear to the court what purpose would be served by waiting for the arbitrator to rule on this issue. The waiver here is clearly enforceable. (AT&T Mobility LLC v. Concepcion (2011) 131 S.Ct. 1740.)

RULING:

The Petition to Compel Arbitration of the claims of plaintiffs Pham and Bailey against the Rare Moon Defendants is GRANTED, and the class and representative claims of Pham and Bailey against the Rare Moon Defendants are DISMISSED. The individual claims of Pham and Bailey against the Rare Moon Defendants are STAYED, pending completion of the arbitration process.

This order, however, including the stay and the dismissal of class and representative claims, has no effect on the claims of Bernal.

Dated: 11/07/2014

_Wy - S. Cervil_
Facsimile

Judge Wynne Carvill

---

Order

---

EXHIBIT 1: STATE COURT ARBITRATION ORDER

| SHORT TITLE: Pham VS JPMorgan Chase Bank, N.A. | CASE NUMBER: RG12652919 |
|---|---|

ADDITIONAL ADDRESSEES

Sideman & Bancroft LLP
Attn:  Putterman, Donald J.
580 California St.
16th fl
San Francisco, CA   94104____

Akin Gump Strauss Hauer & Field LLP
Attn:  Steer, Reginald D
580 California Street
15th Floor
San Francisco, CA   94104-1036

Kirkland & Ellis LLP
Attn:  McKane, Mark E
555 California Street, Ste 2700
San Francisco, CA   94104-1501

Order

EXHIBIT 1: STATE COURT ARBITRATION ORDER

**PROOF OF SERVICE BY MAIL**

I declare that:  I am employed in the County of Contra Costa, State of California; I am over the age of 18 years and not a party to the within entitled action; my business address is 251 Lafayette Circle, Suite 350, Lafayette, California 94549.

On November 26, 2014 I served the within: **NOTICE OF ENTRY OF ORDER GRANTING PETITION TO  COMPEL ARBITRATION on the** interested parties in said action by placing a true copy thereof in a sealed envelope addressed as follows:

| | |
|---|---|
| Jeffrey P. Spencer, Esq.<br>THE SPENCER LAW FIRM<br>903 Calle Amanecer, Suite 220<br>San Clemente, CA  92673<br>Tel:  (949) 240-8595<br>Fax: (949) 240-8515<br>jps@spencerlaw.net<br>**Attorneys for Plaintiffs** | Jeffrey N. Wilens, Esq.<br>LAKESHORE LAW CENTER<br>18340 Yorba Linda Blvd., Suite 107-640<br>Yorba Linda, CA 92886<br>Tel: (714) 854-7205<br>Fax: (714) 854-7206<br>jeff@lakeshorelaw.org<br>**Attorneys for Plaintiffs** |
| Donald J. Putterman, Esq.<br>Michalle Landry, Esq.<br>Melanie King, Esq.<br>PUTTERMAN LOGAN LLP<br>2175 North California Blvd., Suite 805<br>Walnut Creek, CA  94596<br>dputterman@plglawyers.com<br>mlandry@phglawyers.com<br>mking@plglawyers.com<br>**Attorneys for Defendants MoneyMutual, LLC, Montel Williams, Selling Source, LLC, Glenn McKay, London Bay Capital LLC, TSS Acquisition Company, LLC, Partner Weekly LLC** | Reginald D. Steer, Esq.<br>Ashley B. Vinson, Esq.<br>Danielle Crockett, Esq.<br>AKIN GUMP STRAUSS HAUER $ FELD LLP<br>580 California Street, Suite 1500<br>San Francisco, CA  94104<br>rsteer@akingump.com<br>dcrockett@akingump.com<br>avinson@akingump.com<br>**Attorneys for Defendants M. Mark High, Ltd., ISG International, Can Bay Partners VI, LLP, Cane Bay Partners VI, LLC, and Interactive Services Group** |
| Paul M. Croker, Esq.<br>WALLACE SAUNDERS<br>10111 West 87th Street<br>Overland Park, Kansas 66212<br>Tel: (913) 752-55676<br>Fax: (913) 888-1065<br>pcroker@wallacesaunders.com<br>dpress@wallacesaunders.com<br>sbowling@wallacesaunders.com<br>**Attorneys for Defendant Rate Moon Media, LLC** | |

EXHIBIT 1: STATE COURT ARBITRATION ORDER

I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for mailing at the Lafayette post office, Lafayette, California.  I am readily familiar with the practice of processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on November 26, 2014, at Lafayette, California.

Jackie Dahlgard

EXHIBIT 1: STATE COURT ARBITRATION ORDER

1

2

3

4

5 **NOT FOR PUBLICATION**

6 IN THE UNITED STATES DISTRICT COURT

7

8 FOR THE NORTHERN DISTRICT OF CALIFORNIA

9 SEAN L GILBERT, et al.,

10            Plaintiffs,

No. C 13-01171 JSW

11    v.

**ORDER GRANTING RENEWED**
**MOTION TO COMPEL**
**ARBITRATION BY RARE MOON**

12 BANK OF AMERICA, et al.,

**DEFENDANTS AND DISMISSING**
**CLAIMS IN FAVOR OF**

13            Defendants.

**ARBITRATION**

14

**(Docket No. 136)**

15 _____/

16         This matter comes before the Court upon consideration of the renewed motion to compel

17 arbitration filed by Defendants Rare Moon Media, LLC, Jeremy Shaffer, Brad Levene, Lindsey

18 Coker, and Josh Mitchem (collectively "Rare Moon Defendants"). The Court has considered

19 the parties' papers, relevant legal authority, the record in this case, and the parties' arguments at

20 the hearing on this motion. The Court HEREBY GRANTS the Rare Moon Defendants' motion.

21                                      **BACKGROUND**

22         Plaintiffs Sean Gilbert ("Gilbert"), Keeya Malone ("Malone"), and Charmaine B.

23 Aquino ("Aquino") (collectively "Plaintiffs") obtained "payday loans," which they contend

24 were illegal because: (1) the lenders charged fees that exceed the fees permitted under

25 California's Deferred Deposit Transaction Law (the "DDTL"); and (2) the lenders were not

26 licensed under the DDTL to make such loans. (First Amended Complaint ("FAC") ¶¶ 46, 48-

27 49, 53-59.) The Court shall refer to these entities as the "Unlicensed Lenders."

28         Plaintiffs have not sued the Unlicensed Lenders. Rather, and in brief, they allege that

the

**United States District Court**
For the Northern District of California

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

**United States District Court**
For the Northern District of California

1  Rare Moon Defendants were not licensed under the DDTL but assisted the Unlicensed Lenders

2  in various ways in the origination of the payday loans. (*See, e.g.,* FAC ¶¶ 60-118.) Plaintiffs

3  bring a civil RICO claim and bring claims for alleged violations of the DDTL and California's

4  Unfair Competition Law.

5        According to the Rare Moon Defendants, when the Plaintiffs obtained loans from the

6  Unlicensed Lenders, they also agreed to arbitrate any claims that arose out of those agreements.

7  The Rare Moon Defendants submit four documents entitled "Consumer Loan and Arbitration

8  Agreement" (hereinafter "Loan Agreement"). (*See* Declaration of David Odell ("Odell Decl."),

9  ¶ 9; Mot., Exs. 1-4.)[1] Those Loan Agreements contain a provision entitled "Arbitration

10  Agreement and Waiver of Jury Trial" (the "Arbitration Clause"), which provides, in part, that:

11      For purposes of this Agreement, the words "dispute" and "disputes" are given the
    broadest possible meaning and include, without limitation, (I) all claims, disputes,
12  or controversies arising from or relating directly or indirectly to the signing of this
    Agreement, the validity and scope of this Agreement and any claim or attempt to
13  set aside the Agreement, (ii) all federal or state law claims, disputes or
    controversies arising from or relating directly or indirectly to this Agreement, the
14  information you gave us before entering into the Agreement, including the
    Customer Application, and/or any past agreement or agreements between you and
15  us; (iii) all counterclaims, cross-claims and third-party claims; (iv) all common
    law claims based upon contract, tort, fraud, or other intentional torts; (v) all
16  claims based upon a violation of any state or federal constitution, statute, or
    regulation; (vi) all claims asserted by us against you, including claims for money
17  damages to collect any sum we claim you owe us; (vii) *all claims asserted by you
    individually against us and/or any of our employees, agents, directors, officers,*
18  *shareholders, governors, managers, members, parent company, or affiliated
    entities (hereinafter collectively referred to as "related third parties")*; (ix) all
19  claims asserted by you as a private attorney general, as a representative and
    member of a class of persons, or in any other representative capacity, against us
20  and/or related third parties (hereinafter referred to as "Representative Claims");
    and/or (x) all claims arising from or relating directly or indirectly to the disclosure
21  by us or related third parties of any non-public personal information about you.

22      By entering into this Agreement: (I) YOU ARE WAIVING YOUR RIGHT TO
    HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED
23  AGAINST US OR RELATED THIRD PARTIES; (ii) YOU ARE WAIVING
    YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS
24  TRIBUNAL RESOLVE ANY DISPUTES ALLEGED AGAINST US OR
    RELATED THIRD PARTIES; and (iii) YOU ARE WAIVING YOUR RIGHT
25  TO SERVE AS A REPRESENTATIVE, A PRIVATE ATTORNEY GENERAL,
    OR IN ANY OTHER REPRESENTATIVE CAPACITY, AND/OR TO
26  PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS IN ANY
    LAWSUIT FILED AGAINST US AND/OR RELATED THIRD PARTIES.

27

28      [1]     The Odell Declaration is attached as Exhibit 5 to the Rare Moon Defendants'
    motion.

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

1    Except as provided in Paragraph 5(I) below, all disputes, including any
     Representative Claims, against us and/or related third parties, shall be resolved by
2    binding arbitration only on an individual basis with you.  THEREFORE, THE
     ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS,
3    THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A
     REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY
4    OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE
     ARBITRATION.
5

6    (*See, e.g.,* Mot., Ex. 1, Loan Agreement, ¶¶ 5(b)-(d) (emphasis in italics added, capitalization as

7    in original).)

8        Two of these Loan Agreements are purported to have been signed by Gilbert: one with

9    VIP PDL Services, LLC on December 12, 2012, and one with Action PDL Services, LLC, on

10   November 16, 2012.  (Mot., Exs. 1-2.)  One is purported to have been signed by Aquino with

11   VIP PDL Services, LLC on February 11, 2013.  (*Id.*, Ex. 3.)  The final Loan Agreement is

12   purported to have been signed by Malone with Bottom Dollar Payday on November 29, 2012.

13   (*Id.*, Ex. 4.)  It is undisputed that the Rare Moon Defendants did not sign any of these Loan

14   Agreements.

15       The Court shall address additional facts as necessary in the remainder of this Order.

16                                    **ANALYSIS**

17   **A.    Legal Standards Applicable to Motions to Compel Arbitration.**

18       Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid,

19   irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the

20   revocation of any contract."  9 U.S.C. § 2.  The FAA represents the "liberal federal policy

21   favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues

22   should be resolved in favor of arbitration."  *Moses H. Cone Memorial Hospital v. Mercury*

23   *Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

24       Under the FAA, "once [the Court] is satisfied that an agreement for arbitration has been

25   made and has not been honored," and the dispute falls within the scope of that agreement, the

26   Court must order arbitration.  *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395,

27   400 (1967).  The "central purpose of the [FAA is] to ensure that private agreements to arbitrate

28   are enforced according to their terms."  *Mastrobuono v. Shearson Lehman Hutton. Inc.*, 514

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

Case 3:16-cv-02064-DQC-JCC Document 26-1 Filed 12/03/16 Page 30 of 130 Page ID
Case 4:15-cv-01171-JSW Document 100 Filed 03/12/15 Page 4 of 30
#:575

United States District Court
For the Northern District of California

1    U.S. 52, 53-54 (1995).  The "preeminent concern of Congress in passing the [FAA] was to

2    enforce private agreements into which parties had entered, a concern which requires that

3    [courts] rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp. v. Soler*

4    *Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625-26 (1985) (quotations omitted).

5         Notwithstanding the liberal policy favoring arbitration, by entering into an arbitration

6    agreement, two parties are entering into a contract.  *Volt Information Sciences, Inc. v. Board of*

7    *Trustees of Leland Stanford Junior University*, 489 U.S. 468, 479 (1989) (noting that arbitration

8    "is a matter of consent, not coercion.").  Thus, as with any contract an arbitration agreement is

9    "subject to all defenses to enforcement that apply to contracts generally."  *Ingle v. Circuit City*

10   *Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003).

11   **B.     The Rare Moon Defendants Have Met Their Burden to Show A Valid Arbitration
         Agreement Exists.**

12

13        The first issue the Court must resolve is whether the Plaintiffs entered into a valid

14   arbitration agreement.  *Prima Paint*, 385 U.S. at 400.[2]

15        **1.     The Rare Moon Defendants Have Shown Plaintiffs Agreed to Arbitration.**

16        In order to authenticate the Loan Agreements that contain the Arbitration Clauses, the

17   Rare Moon Defendants rely on a declaration from David Odell, who is the President of Summit

18   Computer Solutions, Inc.  (Mot., Ex. 5, Declaration of David Odell ("Odell Decl."), ¶ 2.)

19   Plaintiffs object to the Odell Declaration on the basis that he cannot, and has not, authenticated

20   the Loan Agreements.  "To satisfy the requirement of authenticating or identifying an item of

21   evidence, the proponent must produce evidence sufficient to support a finding that the item is

22   what the proponent claims it is."  Fed. R. Evid. 901(a).

23        Mr. Odell attests that his company "provides information technology services regarding

24   the servers utilized with respect to the businesses of" VIP PDL Services, LLC, Action PDL

25   Services, LLC and BD PDL Services.COM, LLC (collectively the "Lenders"), and that each of

26   these Lenders use loan management software for each of the loans covered by the Loan

27

28        [2]     Plaintiffs do not contest that the claims at issue would fall within the scope of
     the Arbitration Agreement.

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

Case 8:16-cv-02064-DOC-JCG   Document 26-1   Filed 12/03/16   Page 31 of 130   Page ID
#:576
Case 4:15-cv-01171-JSW   Document 100   Filed 03/12/15   Page 5 of 30

1   Agreements.  Mr. Odell further attests that he is familiar with how that software functions and

2   with the Lenders' "ordinary course of business in handling and preserving ... electronic loan

3   agreements."  (Odell Decl., ¶¶ 4-5.)  Finally, after describing how the loan management

4   software functions, Mr. Odell attests that each of the Loan Agreements attached to the Rare

5   Moon Defendants' motion was maintained on the servers utilized by the Lenders.  (*Id.*, ¶¶ 6-

6   13.)

7          The Court OVERRULES Plaintiffs' objections, and it finds that Mr. Odell's declaration

8   is sufficient to establish that the Loan Agreements are what they purport to be.[3]  Further,

9   Gilbert, Aquino and Malone do not deny that they signed the Loan Agreements submitted by

10  the Rare Moon Defendants.  Accordingly, the Court concludes that the Rare Moon Defendants

11  have met their burden to show that Gilbert, Aquino and Malone entered into Loan Agreements

12  that contain an Arbitration Clause.

13          **2.      The Rare Moon Defendants Have Met Their Burden to Show the**
            **Arbitration Clauses are Valid.**

14

15          The parties did not address the issue of unconscionability in the moving papers or the

16  opposition brief and assumed that this issue was a matter for the arbitrator to resolve.  However,

17  the Rare Moon Defendants switched course in their reply brief.  Accordingly, the Court heard

18  argument on this issue at the hearing.[4]  Unconscionability remains a basic contract defense that

19  may be used to invalidate arbitration provisions.  *AT & T Mobility LLC v. Concepcion*, – U.S. –,

20  131 S. Ct. 1740, 1746 (2011).  "The party opposing arbitration has the burden of proving the

21  arbitration provision is unconscionable."  *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1171

22  (S.D. Cal. 2011) (quotation omitted).

23  _____

24        [3]      The Court also has considered Mr. Odell's deposition testimony, which
      Plaintiffs submitted with their opposition brief, and it does not alter the Court's ruling.

25        [4]      The parties suggested that the Arbitration Clause delegated issues of validity
26  to the arbitrator.  Based on the Court's review of the Loan Agreements, it is not clear that the
      term "Agreement" was intended to apply solely to the Arbitration clause, rather than the
27  Loan Agreement as a whole.  Thus, the Court concludes the parties did not clearly and
      unmistakably delegate the issue of whether the Arbitration Clause is valid to the arbitrator.
28  *See Rent-A-Center West., Inc. v. Jackson*, 561 U.S. 63, 69 n.1 (2010); *see also id.* (noting
      that "underlying contract itself is an arbitration agreement," rather than an arbitration
      agreement contained within a contract unrelated to arbitration).

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

*United States District Court*
For the Northern District of California

Case 3:16-cv-02064-DOC-JCG Document 26-1 Filed 12/03/16 Page 32 of 130 Page ID
Case 4:15-cv-01171-JSW Document 16 Filed 03/12/15 Page 6 of 30
#:577

United States District Court
For the Northern District of California

1    At the hearing, Plaintiffs re-argued points raised in their objections to Mr. Odell's

2    declaration, *i.e.* that it is not clear what was presented to them when they entered into the Loan

3    Agreements.  The Court has concluded that the Rare Moon Defendants have properly

4    authenticated the Loan Agreements.  Further, as noted, Plaintiffs have not denied that they

5    signed the Loan Agreements.  They also have not presented evidence to suggest that, when they

6    signed the Loan Agreements, they did not contain Arbitration Clauses or that the terms of those

7    clauses differed from what has been presented to the Court.  Apart from these arguments,

8    Plaintiffs did not raise any challenge to the validity of the Arbitration Clause.

9    Accordingly, the Court concludes that the Rare Moon Defendants have met their burden

10   to show that Arbitration Clauses are valid, and Plaintiffs have not met their burden to show the

11   Arbitration Clauses are unconscionable or are otherwise invalid.

12   **C.    The Rare Moon Defendants Are Entitled to Enforce the Arbitration Clauses.**

13   Having determined that a valid agreement to arbitrate exists, the Court must consider

14   whether the Rare Moon Defendants are entitled to enforce the Arbitration Clauses.[5]  Although

15   they are not signatories, the Rare Moon Defendants "'may invoke arbitration under the FAA if

16   the relevant state contract law allows the litigant to enforce the agreement.'"  *Murphy v.*

17   *DirectTV, Inc.,* 724 F.3d 1218, 1229 (9th Cir. 2013).  Under California law, a third-party may

18   invoke an arbitration agreement as an agent, a third-party beneficiary, or pursuant to principles

19   of equitable estoppel.[6]  *Id.* at 1229-34.  The Rare Moon Defendants rely on all three theories.

20   Because the Court finds that the Rare Moon Defendants can invoke the Arbitration Clauses as

21   third-party beneficiaries, it does not address their alternative arguments.

22

23   ──────────────

24   [5]    The Rare Moon Defendants also argued that the parties agreed to delegate this
     issue to the arbitrator.  For the reasons set forth above with respect to the issue of
25   unconscionability, the Court concludes that the parties did not clearly and unmistakably
     delegate this issue to the arbitrator.

26   [6]    The Loan Agreements contain a governing law provision, which states that it
     "shall be governed by the law of Nevis [West Indies], without regard to its choice of law rule
27   except that the arbitration provisions will be governed by the FAA."  (*See, e.g.,* Mot., Ex. 1,
     Loan Agreement, ¶ 7.)   However, neither the Rare Moon Defendants nor the Plaintiffs argue
28   that any law but California law should be applied to determine whether the Rare Moon
     Defendants can enforce the Arbitration Clause.

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

Case 8:16-cv-02064-DOC-JCG  Document 26-1  Filed 12/03/16  Page 33 of 130  Page ID
#:578
Case 4:15-cv-01171-JSW  Document 106  Filed 03/12/15  Page 7 of 30

1    The Rare Moon Defendants argue that they fall within the definition of "Related Third

2    Parties."  "A third party may only assert rights under a contract if the parties to the agreement

3    intended the contract to benefit the third party[.]"  *Murphy*, 724 F.3d at 1234.  The term

4    "Related Third Parties" is defined as "employees, agents, directors, officers, shareholders,

5    governors, managers, members, parent company, or affiliated entities."  (Mot., Ex. 1, Loan

6    Agreement, ¶ 5(b).)  Again, the Rare Moon Defendants rely solely on the allegations in the FAC

7    and the terms of the Loan Agreements to support their argument.

8    The Loan Agreements use the term "affiliated" as an adjective to modify the noun

9    "entities."  The plain meaning of the term "affiliated" is to be "closely associated with another

10   typically in a dependent or subordinate position. *Webster's New Collegiate Dictionary* at 20

11   (1979).  However, when read in context, the phrase seems to imply a more formal business

12   relationship between the Unlicensed Lenders and non-signatories to the Loan Agreements, *i.e.* a

13   relationship beyond a client-vendor.

14   Although the Rare Moon Defendants rely solely on the allegations in the FAC, there is

15   evidence in the record to support the existence of an affiliation between the Rare Moon

16   Defendants and the Unlicensed Lenders.  Specifically, when Plaintiffs submitted their

17   opposition to the Rare Moon Defendants' motion to dismiss for lack of personal jurisdiction, or

18   in the alternative, to compel arbitration, Plaintiffs submitted marketing contracts between

19   defendant Partner Weekly and VIP PDL Services, Inc.  (*See* Docket No. 106-8, Declaration of

20   Jeffrey Wilens, ¶ 3, Ex. 2.)  Based on the information contained in those marketing contracts,

21   the Court is satisfied that the Rare Moon Defendants would fall within the definition of Related

22   Third Parties and, therefore, are entitled to enforce the Arbitration Clauses.

23   **D.    The Court Shall Enforce the Class Action Waiver.**

24   The Rare Moon Defendants also ask the Court to enforce the class action waiver.

25   Although the Plaintiffs argue that the arbitrator should make this decision, the Court has

26   concluded that the Arbitration Clause does not contain a clear delegation provision.  However,

27   the terms of the Arbitration Clause do clearly and unmistakably waive the right to pursue class

28   arbitration.  The "central purpose of the [FAA is] to ensure that private agreements to arbitrate

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

United States District Court
For the Northern District of California

1   are enforced according to their terms." *Mastrobuono*, 514 U.S. at 53-54.  Accordingly, the

2   Court shall enforce the class action waiver and shall require Plaintiffs to arbitrate the claims

3   relating to the Loan Agreements attached to the Rare Moon Defendants' motion on an

4   individual basis.

5   **E.      The Court Dismisses the Claims Against the Rare Moon Defendants.**

6          The Rare Moon Defendants also ask the Court to dismiss the claims Plaintiffs assert

7   against them and, in the alternative, ask for a stay pending arbitration.  Once a court has

8   determined that it will compel arbitration, the FAA provides for a stay of the action.  9 U.S.C. §

9   3.  The Ninth Circuit has held, however, that Section 3 "does not preclude summary judgment

10  when all claims are barred by an arbitration clause," and, thus, does not limit a court's authority

11  to dismiss, rather than stay a case.  *See Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638

12  (9th Cir. 1988).

13         This case has not yet been certified as a class action.  Kimberly Bilbrew also is a named

14  plaintiff.  However, the Rare Moon Defendants did not submit a loan agreement that contained

15  an arbitration provision as to Ms. Bilbrew.  At the hearing, the Court inquired whether she

16  would have any claims against the Rare Moon Defendants.  Plaintiffs conceded that she would

17  not, in light of the Court's ruling on the question of jurisdiction under the Civil RICO statutes,

18  that there was insufficient evidence to support a nationwide RICO conspiracy.  Therefore, the

19  only Plaintiffs with claims against the Rare Moon Defendants are Gilbert, Malone, and Aquino.

20  Although Gilbert and Aquino have claims against other named defendants, they have not shown

21  they have other claims against the Rare Moon Defendants that would not be subject to

22  arbitration.

23         Accordingly, because all of the claims against the Rare Moon Defendants are subject to

24  arbitration, the Court exercises its discretion to dismiss the Rare Moon Defendants from this

25  case, rather than stay the matter pending arbitration.

26                                        **CONCLUSION**

27         For the foregoing reasons, the Court GRANTS the Rare Moon Defendant's motion to

28  compel arbitration, and it DISMISSES all claims against them without prejudice to Gilbert,

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

1  Aquino, and Malone pursuing those claims by way of individual arbitrations pursuant to the

2  terms of the Arbitration Clauses.

3          The Court shall not enter a partial judgment in favor of the Rare Moon Defendants at

4  this time.  However, the Court shall revisit that issue once it has resolved the motion to dismiss

5  for lack of personal jurisdiction filed by the Cane Bay Defendants.

6          **IT IS SO ORDERED.**

7  Dated: January 12, 2015                                    _____

8                                                                          JEFFREY S. WHITE
                                                                           UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

EXHIBIT 2: FEDERAL COURT ARBITRATION ORDER

# Consumer Arbitration Rules



AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/consumer**

Rules Amended and Effective September 1, 2014

Cost of Arbitration Effective January 1, 2016

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Table of Contents

Consumer Arbitration Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    About the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    The AAA's Consumer Arbitration Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Availability of Mediation through Mediation.org . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Administrative Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Arbitrator's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    Notification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8


Filing a Case and Initial AAA Administrative Steps . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    R-1. Applicability (When the AAA Applies These Rules) . . . . . . . . . . . . . . . . . . . . . . . . . 9

    R-2. Starting Arbitration under an Arbitration Agreement in a Contract . . . . . . . . . . . . 11

    R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause . . . . . . . . . . . . 13

    R-4. AAA Administrative Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    R-5. Neutral Arbitrator's Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    R-6. Depositing Neutral Arbitrator's Compensation with the AAA. . . . . . . . . . . . . . . . . 14

    R-7. Expenses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    R-8. Changes of Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    R-9. Small Claims Option for the Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    R-10. Administrative Conference with the AAA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    R-11. Fixing of Locale (the city, county, state, territory and/or country where the
          arbitration will take place) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    R-12. Business Notification and Publicly-Accessible Consumer Clause Registry . . . . . . 16

    R-13. AAA and Delegation of Duties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    R-14. Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17


Appointing the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    R-15. National Roster of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    R-16. Appointment from National Roster . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    R-17. Number of Arbitrators . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    R-18. Disclosure. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

    R-19. Disqualification of Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

    R-20. Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

EXHIBIT 3: 2014 AAA ARBITRATION RULES

Pre-Hearing Preparation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    R-21. Preliminary Management Hearing with the Arbitrator . . . . . . . . . . . . . . . . . . . . . . .20

    R-22. Exchange of Information between the Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    R-23. Enforcement Powers of the Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .20

    R-24. Written Motions (except for Dispositive Motions—see R-33) . . . . . . . . . . . . . . .21

    R-25. Representation of a Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

    R-26. Setting the Date, Time, and Place (the physical site of the hearing within the
          designated locale) of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

    R-27. Written Record of Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

    R-28. Interpreters. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22

    R-29. Documents-Only Procedure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23


Hearing Procedures. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

    R-30. Attendance at Hearings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

    R-31. Oaths . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

    R-32. Conduct of Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24

    R-33. Dispositive Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

    R-34. Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

    R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence 25

    R-36. Inspection or Investigation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25

    R-37. Interim Measures (a preliminary decision made by the arbitrator involving part
          or all of the issue(s) in dispute in the arbitration) . . . . . . . . . . . . . . . . . . . . . . . . . . .26

    R-38. Postponements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .26

    R-39. Arbitration in the Absence of a Party or Representative . . . . . . . . . . . . . . . . . . . .26


Conclusion of the Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

    R-40. Closing of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

    R-41. Reopening of Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

    R-42. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

    R-43. Form of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .27

    R-44. Scope of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

    R-45. Award upon Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

    R-46. Delivery of Award to Parties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28

    R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors. . . . . .29

EXHIBIT 3: 2014 AAA ARBITRATION RULES

Post Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30

   R-48. Release of Documents for Judicial Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . .30

   R-49. Applications to Court and Exclusion of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . .30


General Procedural Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

   R-50. Waiver of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

   R-51. Extensions of Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .31

   R-52. Serving of Notice and AAA and Arbitrator Communications . . . . . . . . . . . . . . . .31

   R-53. Interpretation and Application of Rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

   R-54. Remedies for Nonpayment. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

   R-55. Declining or Ceasing Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32


Costs of Arbitration (including AAA Administrative Fees) . . . . . . . . . . . . . . . . . . . . . .33

   (i) Filing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

   (ii) Neutral Arbitrator's Compensation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34

   (iii) Refund Schedule . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

   (iv) Hearing Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

   (v) Hearing Room Rental. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

   (vi) Abeyance Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

   (vii) Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35

   (viii) Consumer Clause Review and Registry Fee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36


Procedures for the Resolution of Disputes through Document Submission . . . . .37

   D-1. Applicability. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

   D-2. Preliminary Management Hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

   D-3. Removal from the Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .37

   D-4. Time of Award . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .38

EXHIBIT 3: 2014 AAA ARBITRATION RULES

Glossary of Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

   Administrator. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

   ADR Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

   ADR Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

   ADR Program. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

   Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .39

   Arbitration Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

   Arbitrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

   Case Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

   Claimant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .40

   Demand for Arbitration (also referred to as "Demand"). . . . . . . . . . . . . . . . . . . . . . . . . .40

   Documents-Only Arbitration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

   Independent ADR Institution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

   In-Person Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

   Mediation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

   Neutral . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

   Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .41

   Parties. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

   Opposing Party . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

   Respondent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

   Telephone Hearing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .42

EXHIBIT 3: 2014 AAA ARBITRATION RULES

# Consumer Arbitration Rules

## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court.

The American Arbitration Association® ("AAA®," "the Association") applies the *Consumer Arbitration Rules* ("Rules") to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA has the discretion to apply or not to apply the *Consumer Arbitration Rule*, and the parties are able to bring any disputes concerning the application or non-application of the Rules to the attention of the arbitrator. Consumers and businesses are permitted to seek relief in a small claims court for disputes or claims within the scope of the small claims court's jurisdiction. These Rules were drafted and designed to be consistent with the minimum due process principles of the *Consumer Due Process Protocol*.

## About the AAA

The administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, preliminary decisions about where hearings might take place, and handling the fees associated with the arbitration. As administrator, however, the AAA does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the AAA's role is only administrative, the AAA cannot overrule or change an arbitrator's decisions or rulings. The administrator will comply with any court orders issued from litigation involving the parties to the dispute.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

The American Arbitration Association, founded in 1926, is a neutral, independent, and private not-for-profit organization. We offer a broad range of conflict management services to businesses, organizations, and individuals. We also provide education, training, and publications focused on methods for settling disputes out of court.

## The Arbitrator

Except where the parties to a case reach their own settlement, the arbitrator will make the final, binding decision called the Award on the dispute and render it in writing. The Arbitrator makes all the procedural decisions on a case not made by the Administrator or not decided jointly by the parties. The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law or laws that apply to the case.

Arbitrators are neutral and independent decision makers who are not employees of the AAA. Once appointed to a case, an arbitrator may not be removed by one party without the other party's consent or unless the Administrator determines an arbitrator should be removed and replaced by another arbitrator chosen by the Administrator in a manner described in these Rules.

## The AAA's Consumer Arbitration Rules

The AAA has developed the *Consumer Arbitration Rules* for consumers and businesses that want to have their disagreements resolved through arbitration.

## Availability of Mediation through Mediation.org

Mediation in consumer disputes is also available to help parties resolve their disputes. Parties interested in participating in mediation may find a mediator through **www.mediation.org.**

## Administrative Fees

The Association charges a fee for its services under these Rules. A fee schedule is included at the end of these Rules in the Costs of Arbitration section.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Arbitrator's Fees

Arbitrators are paid for the time they spend resolving disputes. The business makes deposits as outlined in the fee schedule in the Costs of Arbitration section of these Rules. Unused deposits are refunded at the end of the case.

## Notification

A business intending to incorporate these Rules or to refer to the dispute resolution services of the AAA in a consumer alternative dispute resolution ("ADR") plan should, at least 30 days prior to the planned effective date of the program,

• notify the Association of its intention to do so, and

• provide the Association with a copy of the consumer dispute resolution plan.

If a business does not comply with this requirement, the Association reserves the right to withhold its administrative services. For more information, please see R-12 below.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Filing a Case and Initial AAA Administrative Steps

### R-1. Applicability (When the AAA Applies These Rules)

**(a)** The parties shall have made these *Consumer Arbitration Rules* ("Rules") a part of their arbitration agreement whenever they have provided for arbitration by the American Arbitration Association ("AAA"), and

   **1)** have specified that these *Consumer Arbitration Rules* shall apply;

   **2)** have specified that the *Supplementary Procedures for Consumer-Related Disputes* shall apply, which have been amended and renamed the *Consumer Arbitration Rules*;

   **3)** the arbitration agreement is contained within a consumer agreement, as defined below, that does not specify a particular set of rules; or

   **4)** the arbitration agreement is contained within a consumer agreement, as defined below, that specifies a particular set of rules other than the *Consumer Arbitration Rules.*

When parties have provided for the AAA's rules or AAA administration as part of their consumer agreement, they shall be deemed to have agreed that the application of the AAA's rules and AAA administration of the consumer arbitration shall be an essential term of their consumer agreement.

The AAA defines a consumer agreement as an agreement between an individual consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use.

Examples of contracts that typically meet the criteria for application of these Rules, if the contract is for personal or household goods or services and has an arbitration provision, include, but are not limited to the following:

- Credit card agreements
- Telecommunications (cell phone, ISP, cable TV) agreements
- Leases (residential, automobile)
- Automobile and manufactured home purchase contracts
- Finance agreements (car loans, mortgages, bank accounts)
- Home inspection contracts
- Pest control services

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

- Moving and storage contracts

- Warranties (home, automobile, product)

- Legal funding

- Health and fitness club membership agreements

- Travel services

- Insurance policies

- Private school enrollment agreements

Examples of contracts that typically do not meet the criteria for application of these Rules, should the contract contain an arbitration provision, include, but are not limited to the following:

- Home construction and remodeling contracts

- Real estate purchase and sale agreements

- Condominium or homeowner association by-laws

- Business insurance policies (including crop insurance)

- Commercial loan and lease agreements

- Commercial guaranty agreements

**(b)** When parties agree to arbitrate under these Rules, or when they provide for arbitration by the AAA and an arbitration is initiated under these Rules, they thereby authorize the AAA to administer the arbitration. The authority and duties of the AAA are prescribed in the agreement of the parties and in these Rules and may be carried out through such of the AAA's representatives as it may direct. The AAA may, in its discretion, assign the administration of an arbitration to any of its offices. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

**(c)** The consumer and the business may agree to change these Rules. If they agree to change the Rules, they must agree in writing. If the consumer and the business want to change these Rules after the appointment of the arbitrator, any changes may be made only with the approval of the arbitrator.

**(d)** The AAA administers consumer disputes that meet the due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules.* The AAA will accept cases after the AAA reviews the parties' arbitration agreement and if the AAA determines the agreement substantially and materially complies with the due process standards of these Rules and the *Consumer Due Process Protocol.* Should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

**(e)** The AAA has the initial authority to apply or not to apply the *Consumer Arbitration Rules.* If either the consumer or the business disagrees with the AAA's decision, the objecting party must submit the objection by the due date for filing an answer to the demand for arbitration. If an objection is filed, the arbitrator shall have the authority to make the final decision on which AAA rules will apply.

**(f)** If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 30 days to permit the party to obtain a stay of arbitration from the court.

**(g)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by the submission of documents only/desk arbitration (see R-29 and the *Procedures for the Resolution of Disputes through Document Submission* below). Any party, however, may ask for a hearing. The arbitrator also may decide that a hearing is necessary.

## R-2. Starting Arbitration under an Arbitration Agreement in a Contract

**(a)** Arbitration filed under an arbitration agreement naming the AAA shall be started in the following manner:

**(1)** The party who starts the arbitration (referred to as the "claimant" throughout the arbitration) must contact, in writing, the party that the case is filed against (referred to as the "respondent" throughout the arbitration) that it wishes to arbitrate a dispute. This written contact is referred to as the Demand for Arbitration ("Demand"). The Demand must do the following:

- Briefly explain the dispute

- List the names and addresses of the consumer and the business, and, if known, the names of any representatives of the consumer and the business

- Specify the amount of money in dispute, if applicable

- Identify the requested location for the hearing if an in-person hearing is requested

- State what the claimant wants

**(2)** The claimant must also send one copy of the Demand to the AAA at the same time the demand is sent to the respondent. When sending a Demand to the AAA, the claimant must also send the following:

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee; the amount of the filing fee can be found in the Costs of Arbitration section at the end of these Rules.

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

**(3)** If the arbitration is pursuant to a court order, the claimant must send one copy of the Demand to the AAA at the same time the Demand is sent to the respondent. When sending a demand to the AAA, the claimant must also send the following:

- A copy of the court order

- A copy of the arbitration agreement contained in the contract and/or agreement and/or purchase document

- The proper filing fee

The filing fee must be paid before a matter is considered properly filed. If the court order directs that a specific party is responsible for the filing fee, it is the responsibility of the filing party either to make such payment to the AAA and seek reimbursement as directed in the court order or to make other such arrangements so that the filing fee is submitted to the AAA with the Demand.

The claimant may file by mail. The mailing address of the AAA's Case Filing Services is:

American Arbitration Association
Case Filing Services
1101 Laurel Oak Road, Suite 100
Voorhees, NJ 08043

Or, the claimant may file online using AAA WebFile: **https://www.adr.org**

Or, the claimant may file at any of the AAA's offices.

**(b)** The AAA will send a written notice letting the consumer and the business know the Demand for Arbitration has been received.

**(c)** The respondent may submit a written response to the Demand, known as an "answer," which describes how the respondent responds to the claimant's claim. The answer must be sent to the AAA within 14 calendar days after the date the AAA notifies the parties that the Demand for Arbitration was received and all filing requirements were met. The answer must be

- in writing,

- sent to the AAA, and

- sent to the claimant at the same time.

**(d)** The respondent may also file a counterclaim, which is the respondent filing a Demand against the claimant. If the respondent has a counterclaim, the counterclaim must briefly explain the dispute, specify the amount of money involved, and state what the respondent wants.

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

American Arbitration Association

**(e)** If no answer is filed within 14 calendar days, the AAA will assume that the respondent does not agree with the claim filed by the claimant. The case will move forward after 14 days regardless of whether an answer is filed.

**(f)** When sending a Demand or an answer, the consumer and the business are encouraged to provide enough details to make the dispute clear to the arbitrator.

## R-3. Agreement to Arbitrate When There is No AAA Arbitration Clause

If the consumer and business do not have an arbitration agreement or their arbitration agreement does not name the AAA, the parties may agree to have the AAA arbitrate their dispute. To start the arbitration, the parties must send the AAA a submission agreement, which is an agreement to arbitrate their case with the AAA, signed by the consumer and the business (email communications between all parties to a dispute reflecting an agreement to arbitrate also is acceptable). The submission agreement must

- be in writing (electronic communication is acceptable);
- be signed by both parties;
- briefly explain the dispute;
- list the names and addresses of the consumer and the business;
- specify the amount of money involved;
- specify the requested location for the hearing if an in-person hearing is requested; and
- state the solution sought.

The parties should send one copy of the submission agreement to the AAA. They must also send the proper filing fees. A fee schedule can be found in the Costs of Arbitration section at the end of these Rules.

## R-4. AAA Administrative Fees

As a not-for-profit organization, the AAA charges fees to compensate it for the cost of providing administrative services. The fee schedule in effect when the case is filed shall apply for all fees charged during the administration of the case. The AAA may, in the event of the consumer's extreme hardship, defer or reduce the consumer's administrative fees.

AAA fees shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

## R-5. Neutral Arbitrator's Compensation

**(a)** Arbitrators serving under these Rules shall be compensated at a rate established by the AAA.

**(b)** Any arrangement for the compensation of an arbitrator shall be made through the AAA and not directly between the parties and the arbitrator.

**(c)** Arbitrator compensation shall be paid in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-6. Depositing Neutral Arbitrator's Compensation with the AAA

The AAA may require the parties to deposit in advance of any hearings such sums of money as it decides are necessary to cover the expense of the arbitration, including the arbitrator's fee, and shall render an accounting to the parties and return any unused money at the conclusion of the case.

## R-7. Expenses

Unless otherwise agreed by the parties or as provided under applicable law, the expenses of witnesses for either side shall be borne by the party producing such witnesses.

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne in accordance with the Costs of Arbitration section found at the end of these Rules.

## R-8. Changes of Claim

Once a Demand has been filed, any new claims or counterclaims, or changes to the claim or counterclaim, must be made in writing and sent to the AAA. The party making the new or different claim or counterclaim shall send a copy to the opposing party. As with the original Demand or counterclaim, a party shall have 14 calendar days from the date the AAA notifies the parties it received the new or different claim or counterclaim to file an answering statement with the AAA.

If an arbitrator has already been appointed, a new or different claim or counter-claim may only be considered if the arbitrator allows it.

EXHIBIT 3: 2014 AAA ARBITRATION RULES American Arbitration Association

## R-9. Small Claims Option for the Parties

If a party's claim is within the jurisdiction of a small claims court, either party may choose to take the claim to that court instead of arbitration as follows:

**(a)** The parties may take their claims to small claims court without first filing with the AAA.

**(b)** After a case is filed with the AAA, but before the arbitrator is formally appointed to the case by the AAA, a party can send a written notice to the opposing party and the AAA that it wants the case decided by a small claims court. After receiving this notice, the AAA will administratively close the case.

**(c)** After the arbitrator is appointed, if a party wants to take the case to small claims court and notifies the opposing party and the AAA, it is up to the arbitrator to determine if the case should be decided in arbitration or if the arbitration case should be closed and the dispute decided in small claims court.

## R-10. Administrative Conference with the AAA

At the request of any party or if the AAA should so decide, the AAA may have a telephone conference with the parties and/or their representatives. The conference may address issues such as arbitrator selection, the possibility of a mediated settlement, exchange of information before the hearing, timing of the hearing, the type of hearing that will be held, and other administrative matters.

## R-11. Fixing of Locale (the city, county, state, territory and/or country where the arbitration will take place)

If an in-person hearing is to be held and if the parties do not agree to the locale where the hearing is to be held, the AAA initially will determine the locale of the arbitration. If a party does not agree with the AAA's decision, that party can ask the arbitrator, once appointed, to make a final determination. The locale determination will be made after considering the positions of the parties, the circumstances of the parties and the dispute, and the *Consumer Due Process Protocol*.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

R-12. Business Notification and Publicly-Accessible Consumer Clause Registry

Beginning September 1, 2014, a business that provides for or intends to provide for these Rules or another set of AAA Rules in a consumer contract (as defined in R-1) should

1.  notify the AAA of the existence of such a consumer contract or of its intention to do so at least 30 days before the planned effective date of the contract.

2.  provide the AAA a copy of the arbitration agreement.

Upon receiving the arbitration agreement, the AAA will review the agreement for material compliance with due process standards contained in the *Consumer Due Process Protocol* and the *Consumer Arbitration Rules* (see Rule 1(d)). There is a nonrefundable fee to conduct this initial review and maintain a publicly-available clause registry, which is detailed in the Costs of Arbitration section found at the end of these Rules. Any subsequent changes, additions, deletions, or amendments to a currently-registered arbitration agreement must be resubmitted for review and a review fee will be assessed at that time. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement where the business fails to pay the review fee.

If a business does not submit its arbitration agreement for review and a consumer arbitration then is filed with the AAA, the AAA will conduct an expedited review at that time. Along with any other filing fees that are owed for that case, the business also will be responsible for paying the nonrefundable review and Registry fee (including any fee for expedited review at the time of filing) for this initial review, which is detailed in the Costs of Arbitration section found at the end of these Rules. The AAA will decline to administer consumer arbitrations arising out of that arbitration agreement if the business declines to pay the review and Registry fee.

After the AAA reviews the submitted consumer clause, receives the annual consumer registry fee, and determines it will administer consumer-related disputes filed pursuant to the consumer clause, the business will be included on the publicly-accessible Consumer Clause Registry. This Consumer Clause Registry maintained by the AAA will contain the name of the business, the address, and the consumer arbitration clause, along with any related documents as deemed necessary by the AAA. The AAA's review of a consumer arbitration clause and determination whether or not to administer arbitrations pursuant to

EXHIBIT 3: 2014 AAA ARBITRATION RULES

that clause is only an administrative determination by the AAA and cannot be relied upon or construed as a legal opinion or advice regarding the enforceability of the arbitration clause. Consumer arbitration agreements may be registered at: **www.adr.org/consumerclauseregistry** or via email at **consumerreview@adr.org.**

For more information concerning the Consumer Clause Registry, please visit the AAA's website at **www.adr.org/consumerclauseregistry.**

The Registry fee to initially review a business's agreement and maintain the clause registry list is a yearly, non-refundable fee for the business's arbitration agreement. Any different arbitration agreements submitted by the same business or its subsidiaries must be submitted for review and are subject to the current review fee.

If the AAA declines to administer a case due to the business's non-compliance with this notification requirement, the parties may choose to submit their dispute to the appropriate court.

## R-13. AAA and Delegation of Duties

When the consumer and the business agree to arbitrate under these Rules or other AAA rules, or when they provide for arbitration by the AAA and an arbitration is filed under these Rules, the parties also agree that the AAA will administer the arbitration. The AAA's administrative duties are set forth in the parties' arbitration agreement and in these Rules. The AAA will have the final decision on which office and which AAA staff members will administer the case. Arbitrations administered under these Rules shall only be administered by the AAA or by an individual or organization authorized by the AAA to do so.

## R-14. Jurisdiction

**(a)** The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.

**(b)** The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

**(c)** A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Appointing the Arbitrator

### R-15. National Roster of Arbitrators

The AAA maintains a National Roster of Arbitrators ("National Roster") and shall appoint arbitrators from this National Roster to resolve the parties' dispute(s).

### R-16. Appointment from National Roster

(a) If the parties have not appointed an arbitrator and have not agreed to a process for appointing the arbitrator, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint an arbitrator from the National Roster.

(b) If the parties' arbitration agreement provides for three or more arbitrators and they have not appointed the arbitrators and have not agreed to a process for appointing the arbitrators, immediately after the filing of the submission agreement or the answer, or after the deadline for filing the answer, the AAA will administratively appoint the arbitrators from the National Roster. The AAA will appoint the chairperson.

(c) Arbitrator(s) serving under these Rules will be neutral and must meet the standards of R-19 with respect to being impartial and independent.

### R-17. Number of Arbitrators

If the arbitration agreement does not specify the number of arbitrators and the parties do not agree on the number, the dispute shall be heard and decided by one arbitrator.

### R-18. Disclosure

(a) Any person appointed or to be appointed as an arbitrator, as well as the parties and their representatives, must provide information to the AAA of any circumstances likely to raise justifiable doubt as to whether the arbitrator can remain impartial or independent. This disclosure of information would include

(1) any bias;

(2) any financial interest in the result of the arbitration;

(3) any personal interest in the result of the arbitration; or

(4) any past or present relationship with the parties or their representatives.

Such obligation to provide disclosure information remains in effect throughout the arbitration. A failure on the part of a party or a representative to comply with the

EXHIBIT 3: 2014 AAA ARBITRATION RULES American Arbitration Association

requirements of this rule may result in the waiver of the right to object to an arbitrator in accordance with Rule R-50.

**(b)** If the AAA receives such information from the arbitrator or another source, the AAA will communicate the information to the parties. If the AAA decides it is appropriate, it will also communicate the information to the arbitrator and others.

**(c)** In order to encourage disclosure by arbitrators, disclosing such information does not mean that the arbitrator considers the disclosed information will likely affect his or her ability to be impartial or independent.

## R-19. Disqualification of Arbitrator

**(a)** Any arbitrator shall be impartial and independent and shall perform his or her duties carefully and in good faith. The AAA may disqualify an arbitrator who shows

**(1)** partiality or lack of independence;

**(2)** inability or refusal to perform his or her duties with diligence and in good faith; or

**(3)** any grounds for disqualification provided by applicable law.

**(b)** If a party objects to the continued service of an arbitrator, or if the AAA should so decide to raise the issue of whether the arbitrator should continue on the case, the AAA will decide if the arbitrator should be disqualified.  After gathering the opinions of the parties, the AAA will decide and that decision shall be final and conclusive.

## R-20. Vacancies

If for any reason an arbitrator cannot or is unwilling to perform the duties of the office, the AAA may declare the office vacant. Any vacancies shall be filled based on the original procedures used to appoint the arbitrator. If a substitute arbitrator is appointed, the substitute arbitrator will decide if it is necessary to repeat all or part of any prior ruling or hearing.

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Pre-Hearing Preparation

### R-21. Preliminary Management Hearing with the Arbitrator

(a) If any party asks for, or if the AAA or the arbitrator decides to hold one, the arbitrator will schedule a preliminary management hearing with the parties and/or their representatives as soon as possible. The preliminary management hearing will be conducted by telephone unless the arbitrator decides an in-person preliminary management hearing is necessary.

(b) During the preliminary management hearing, the parties and the arbitrator should discuss the future conduct of the case, including clarification of issues and claims, scheduling of the hearings, and any other preliminary matters.

(c) The arbitrator shall promptly issue written orders that state the arbitrator's decisions made during or as a result of the preliminary management hearing. The arbitrator may also conduct additional preliminary management hearings if the need arises.

### R-22. Exchange of Information between the Parties

(a) If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct

   1) specific documents and other information to be shared between the consumer and business, and

   2) that the consumer and business identify the witnesses, if any, they plan to have testify at the hearing.

(b) Any exhibits the parties plan to submit at the hearing need to be shared between the parties at least five business days before the hearing, unless the arbitrator sets a different exchange date.

(c) No other exchange of information beyond what is provided for in section (a) above is contemplated under these Rules, unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process.

(d) The arbitrator has authority to resolve any disputes between the parties about exchanging information.

### R-23. Enforcement Powers of the Arbitrator

The arbitrator may issue any orders necessary to enforce the provisions of rules R-21 and R-22 and to otherwise achieve a fair, efficient, and economical resolution of the case, including, but not limited to:

(a) an order setting the conditions for any exchange or production of confidential documents and information, and the admission of confidential evidence at the hearing in order to preserve such confidentiality;

EXHIBIT 3: 2014 AAA ARBITRATION RULES American Arbitration Association

(b) to the extent the exchange of information takes place pursuant to R-22, imposing reasonable search limitations for electronic and other documents if the parties are unable to agree;

(c) allocating costs of producing documentation, including electronically-stored documentation;

(d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance; and

(e) issuing any other enforcement orders that the arbitrator is empowered to issue under applicable law.

## R-24. Written Motions (except for Dispositive Motions—see R-33)

The arbitrator may consider a party's request to file a written motion (except for Dispositive Motions— see R-33) only after the parties and the arbitrator conduct a conference call to attempt to resolve the issue that gives rise to the proposed motion. Only after the parties and the arbitrator hold the call may the arbitrator consider a party's request to file a written motion. The arbitrator has the sole discretion to allow or deny the filing of a written motion and his or her decision is final.

## R-25. Representation of a Party

Any party may participate in the arbitration without representation, or may be represented by counsel or other authorized representative, unless such choice is prohibited by applicable law. A party intending to be represented shall give the opposing party and the AAA the name, address, and contact information of the representative at least three business days before the hearing where that representative will first appear in the case. It will be considered proper notice if a representative files the arbitration demand or answer or responds for a party during the course of the arbitration.

While parties do not need an attorney to participate in arbitration, arbitration is a final, legally-binding process that may impact a party's rights. As such, parties may want to consider consulting an attorney.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

### R-26. Setting the Date, Time, and Place (the physical site of the hearing within the designated locale) of Hearing

The arbitrator will set the date, time, and place for each hearing within the locale as determined in R-11. A hearing may be by telephone or in person. For their part, the parties commit to

(1)  respond promptly to the arbitrator when he or she asks what dates the parties are available to have the hearings;

(2)  cooperate in the scheduling of the hearing on the earliest possible date; and

(3)  follow the hearing schedule set up by the arbitrator.

The AAA will send a notice of the hearing to the parties at least 10 days before the hearing date, unless the parties agree to a different time frame.

### R-27. Written Record of Hearing

(a)  If a party wants a written record of the hearing, that party must make such arrangement directly with a stenographer (court reporter) and notify the opposing parties, the AAA, and the arbitrator of these arrangements at least three business days before the hearing. The party or parties who request the written record shall pay the cost of the service.

(b)  No other type of recording will be allowed unless the parties agree or the arbitrator directs a different form of recording.

(c)  The arbitrator may resolve disputes between the parties over who will pay the costs of the written record or other type of recording.

(d)  The parties can agree or the arbitrator may decide that the transcript (written record) is the official record of the hearing. If it is the official record of the hearing, the transcript must be given to the arbitrator and made available to all the parties so that it can be reviewed. The date, time, and place of the inspection will be decided by the arbitrator.

### R-28. Interpreters

If a party wants an interpreter present for any part of the process, that party must make arrangements directly with the interpreter and shall pay for the costs of the service.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## R-29. Documents-Only Procedure

Disputes may be resolved by submission of documents and without in-person or telephonic hearings. For cases being decided by the submission of documents only, the *Procedures for the Resolution of Disputes through Document Submission* (found at the end of these Rules) shall supplement these Rules. These Procedures will apply where no disclosed claims or counterclaims exceed $25,000 (see R-1(g)), unless any party requests an in-person or telephonic hearing or the arbitrator decides that a hearing is necessary.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

Rules Amended and Effective September 1, 2014. Cost of Arbitration Effective January 1, 2016.   CONSUMER ARBITRATION RULES   **23**

## Hearing Procedures

### R-30. Attendance at Hearings

The arbitrator and the AAA will keep information about the arbitration private except to the extent that a law provides that such information shall be shared or made public. The parties and their representatives in the arbitration are entitled to attend the hearings. The arbitrator will determine any disputes over whether a non-party may attend the hearing.

### R-31. Oaths

Before starting the hearing, each arbitrator may take an oath of office and, if required by law, shall do so. If the arbitrator determines that witnesses shall testify under oath, then the arbitrator will direct the oath be given by a duly-qualified person.

### R-32. Conduct of Proceedings

**(a)** The claimant must present evidence to support its claim. The respondent must then present evidence to support its defense. Witnesses for each party also must answer questions from the arbitrator and the opposing party. The arbitrator may change this procedure, as long as each party has the right to be heard and is given a fair opportunity to present its case.

**(b)** When the arbitrator decides it is appropriate, the arbitrator may also allow the parties to present evidence in alternative ways, including web conferencing, Internet communication, and telephonic conferences. All procedures must provide the parties with a full and equal opportunity to present any evidence that the arbitrator decides is material and relevant to deciding the dispute. If the alternative ways to present evidence involve witnesses, those ways may include that the witness submit to direct and cross-examination questioning.

**(c)** The arbitrator will use his or her discretion to resolve the dispute as quickly as possible and may direct the parties to present the evidence in a certain order, or may split the proceedings into multiple parts and direct the parties in the presentation of evidence.

**(d)** The hearing generally will not exceed one day. However, if a party shows good cause, the arbitrator may schedule additional hearings within seven calendar days after the initial day of hearing.

**(e)** The parties may agree in writing to waive oral hearings.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## R-33. Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

## R-34. Evidence

**(a)** The parties may offer relevant and material evidence and must produce any evidence the arbitrator decides is necessary to understand and decide the dispute. Following the legal rules of evidence shall not be necessary. All evidence should be taken in the presence of the arbitrator and all of the parties, unless any of the parties is absent, in default, or has waived the right to be present.

**(b)** The arbitrator shall determine what evidence will be admitted, what evidence is relevant, and what evidence is material to the case. The arbitrator may also exclude evidence that the arbitrator decides is cumulative or not relevant.

**(c)** The arbitrator shall consider applicable principles of legal privilege, such as those that involve the confidentiality of communications between a lawyer and a client.

**(d)** An arbitrator or other person authorized by law to subpoena witnesses or documents may do so on the request of any party or on the arbitrator's own determination. If a party requests the arbitrator sign a subpoena, that party shall copy the request to the other parties in the arbitration at the same time it is provided to the arbitrator.

## R-35. Evidence by Affidavit and Post-Hearing Filing of Documents or Other Evidence

**(a)** The arbitrator may receive and consider the evidence of witnesses by declaration or affidavit rather than in-person testimony but will give this evidence only such credence as the arbitrator decides is appropriate. The arbitrator will consider any objection to such evidence made by the opposing party.

**(b)** If the parties agree or the arbitrator decides that documents or other evidence need to be submitted to the arbitrator after the hearing, those documents or other evidence will be filed with the AAA so that they can be sent to the arbitrator. All parties will be given the opportunity to review and respond to these documents or other evidence.

## R-36. Inspection or Investigation

An arbitrator finding it necessary to inspect property or conduct an investigation in connection with the arbitration will request that the AAA inform the parties. The arbitrator will set the date and time of the inspection and investigation, and

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

the AAA will notify the parties. Any party who would like to be present at the inspection or investigation may attend. If one or all parties are not present at the inspection or investigation, the arbitrator will make an oral or written report to the parties and allow them an opportunity to comment.

### R-37. Interim Measures (a preliminary decision made by the arbitrator involving part or all of the issue(s) in dispute in the arbitration)

**(a)** The arbitrator may grant whatever interim measures he or she decides are necessary, including granting an injunction and ordering that property be protected.

**(b)** Such interim measures may take the form of an interim award, and the arbitrator may require a security payment for the costs of such measures.

**(c)** When making a decision on an interim measure, the arbitrator may grant any remedy, relief, or outcome that the parties could have received in court.

**(d)** A party to an arbitration agreement under these Rules may instead file in state or federal court for interim relief. Applying to the court for this type of relief, including temporary restraining orders, is consistent with the agreement to arbitrate and will not be considered a waiver of the right to arbitrate.

### R-38. Postponements

The arbitrator may postpone any hearing

**(a)** if requested by a party, and the party shows good cause for the postponement;

**(b)** if all parties agree to a postponement;

**(c)** on his or her own decision.

### R-39. Arbitration in the Absence of a Party or Representative

The arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator. An award cannot be made only because of the default of a party. The arbitrator shall require the party who participates in the hearing to submit the evidence needed by the arbitrator to make an award.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Conclusion of the Hearing

### R-40. Closing of Hearing

The arbitrator must specifically ask all parties whether they have any further proofs to offer or witnesses to be heard. When the arbitrator receives negative replies or he or she is satisfied that the record is complete, the arbitrator will declare the hearing closed.

If briefs or other written documentation are to be filed by the parties, the hearing shall be declared closed as of the final date set by the arbitrator. Absent agreement of the parties, the time that the arbitrator has to make the award begins upon the closing of the hearing. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-41. Reopening of Hearing

If a party requests, or if the arbitrator decides to do so, the hearing may be reopened at any time before the award is made. If reopening the hearing would prevent the making of the award within the specific time agreed on by the parties in the contract(s) out of which the controversy has arisen, the matter may not be reopened unless the parties agree on an extension of time. If the arbitrator reopens the hearing, he or she shall have 30 days from the closing of the reopened hearing within which to make an award.

### R-42. Time of Award

The award shall be issued promptly by the arbitrator and, unless the parties agree differently or the law indicates a different time frame, no later than 30 calendar days from the date the hearing is closed, or, if the case is a documents-only procedure, 14 calendar days from the date the arbitrator set for his or her receipt of the final statements and proofs. The AAA may extend the time limit for the rendering of the award only in unusual and extreme circumstances.

### R-43. Form of Award

**(a)**  Any award shall be in writing and executed in the form and manner required by law.

**(b)**  The award shall provide the concise written reasons for the decision unless the parties all agree otherwise. Any disagreements over the form of the award shall be decided by the arbitrator.

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

**(c)** The AAA may choose to publish an award rendered under these Rules; however, the names of the parties and witnesses will be removed from awards that are published, unless a party agrees in writing to have its name included in the award.

## R-44. Scope of Award

**(a)** The arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

**(b)** In addition to a final award, the arbitrator may make other decisions, including interim, interlocutory, or partial rulings, orders, and awards. In any interim, interlocutory, or partial award, the arbitrator may assess and divide up the fees, expenses, and compensation related to such award as the arbitrator decides is appropriate, subject to the provisions and limitations contained in the Costs of Arbitration section.

**(c)** The arbitrator may also allocate compensation, expenses as defined in sections (v) and (vii) of the Costs of Arbitration section, and administrative fees (which include Filing and Hearing Fees) to any party upon the arbitrator's determination that the party's claim or counterclaim was filed for purposes of harassment or is patently frivolous.

**(d)** In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-4, R-5, and R-7 in favor of any party, subject to the provisions and limitations contained in the Costs of Arbitration section.

## R-45. Award upon Settlement

If the parties settle their dispute at any point during the arbitration and at the parties' request, the arbitrator may lay out the terms of the settlement in a "consent award" (an award drafted and signed by the arbitrator that reflects the settlement terms of the parties). A consent award must include a division of the arbitration costs, including administrative fees and expenses as well as arbitrator fees and expenses. Consent awards will not be made available to the public per Rule 43(c) unless the parties agree otherwise.

## R-46. Delivery of Award to Parties

Parties shall accept as notice and delivery of the award the placing of the award or a true copy thereof in the mail addressed to the parties or their representatives at the last known addresses, personal or electronic service of the award, or the filing of the award in any other manner that is permitted by law.

EXHIBIT 3: 2014 AAA ARBITRATION RULES   American Arbitration Association

R-47. Modification of Award for Clerical, Typographical, or Mathematical Errors

**(a)** Within 20 days after the award is transmitted, any party, upon notice to the opposing parties, may contact the AAA and request that the arbitrator correct any clerical, typographical, or mathematical errors in the award. The arbitrator has no power to re-determine the merits of any claim already decided.

**(b)** The opposing parties shall be given 10 days to respond to the request. The arbitrator shall make a decision on the request within 20 days after the AAA transmits the request and any responses to the arbitrator.

**(c)** If applicable law provides a different procedural time frame, that procedure shall be followed.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Post Hearing

### R-48. Release of Documents for Judicial Proceedings

The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, except for records determined by the AAA to be privileged or confidential. The party will have to pay a fee for this service.

### R-49. Applications to Court and Exclusion of Liability

**(a)** No court or judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

**(b)** Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

**(c)** Parties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

**(d)** Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA, AAA employees, nor any arbitrator shall be liable to any party in any action for damages or injunctive relief for any act or omission in connection with any arbitration under these rules.

**(e)** Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or any AAA employee as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA, and AAA employees are not competent to and may not testify as witnesses in any such proceeding.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## General Procedural Rules

### R-50. Waiver of Rules

If a party knows that any of these Rules have not been followed, it must object in writing before proceeding with arbitration or it will lose its right to object that the rule has not been followed.

### R-51. Extensions of Time

The parties may agree to change any period of time provided for in the Rules, except that any such modification that negatively affects the efficient resolution of the dispute is subject to review and approval by the arbitrator. The AAA or the arbitrator may for good cause extend any period of time in these Rules, except as set forth in R-42. The AAA will notify the parties of any extension.

### R-52. Serving of Notice and AAA and Arbitrator Communications

(a) Any papers or notices necessary for the initiation or continuation of an arbitration under these Rules, or for the entry of judgment on any award made under these Rules, may be served on a party by mail or email addressed to the party or its representative at the last-known address or by personal service, in or outside the state where the arbitration is to be held, provided that reasonable opportunity to be heard with regard to the dispute is or has been granted to the party.

(b) The AAA, the arbitrator, and the parties also may use overnight delivery, electronic facsimile transmission (fax), or electronic mail (email) to give the notices required by these rules. Where all parties and the arbitrator agree, notices may be sent by other methods of communication.

(c) Unless directed differently by the AAA or by the arbitrator, any documents and all written communications submitted by any party to the AAA or to the arbitrator also shall be sent at the same time to all parties to the arbitration.

(d) A failure to provide the other parties with copies of communications made to the AAA or to the arbitrator may prevent the AAA or the arbitrator from acting on any requests or objections contained within those communications.

(e) A party and/or someone acting on behalf of a party cannot have any communications with an arbitrator or a potential arbitrator about the arbitration outside of the presence of the opposing party. All such communications shall be conducted through the AAA.

(f) The AAA may direct that any oral or written communications that are sent by a party or their representative shall be sent in a particular manner. The failure of a party or its representative to do so may result in the AAA's refusal to consider the issue raised in the communication.

## EXHIBIT 3: 2014 AAA ARBITRATION RULES

### R-53. Interpretation and Application of Rules

The arbitrator shall interpret and apply these Rules as they relate to the arbitrator's powers and duties. When there is more than one arbitrator and a difference arises among them concerning the meaning or application of these Rules, it shall be decided by a majority vote. If that is not possible, either an arbitrator or a party may refer the question to the AAA for final decision. All other Rules shall be interpreted and applied by the AAA.

### R-54. Remedies for Nonpayment

(a) If arbitrator compensation or administrative charges have not been paid in full, the AAA may inform the parties so that one of them may forward the required payment.

(b) Once the AAA informs the parties that payments have not been received, a party may request an order from the arbitrator directing what measures might be taken in light of a party's nonpayment.

Such measures may include limiting a party's ability to assert or pursue its claim. However, a party shall never be precluded from defending a claim or counterclaim. The arbitrator must provide the party opposing a request for relief with the opportunity to respond prior to making any determination. In the event that the arbitrator grants any request for relief that limits any party's participation in the arbitration, the arbitrator will require the party who is making a claim and who has made appropriate payments to submit the evidence required to make an award.

(c) Upon receipt of information from the AAA that full payments have not been received, the arbitrator, on the arbitrator's own initiative, may order the suspension of the arbitration. If no arbitrator has yet been appointed, the AAA may suspend the proceedings.

(d) If arbitrator compensation or AAA administrative fees remain unpaid after a determination to suspend an arbitration due to nonpayment, the arbitrator has the authority to terminate the proceedings. Such an order shall be in writing and signed by the arbitrator. The impact of the termination for nonpayment of the Consumer Clause Registry fee is the removal from the "Registered" section of the Registry.

### R-55. Declining or Ceasing Arbitration

The AAA in its sole discretion may decline to accept a Demand for Arbitration or stop the administration of an ongoing arbitration due to a party's improper conduct, including threatening or harassing behavior towards any AAA staff, an arbitrator, or a party or party's representative.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Costs of Arbitration (including AAA Administrative Fees)*

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on a rate established by the AAA as set forth below. If a Preliminary Management Hearing is held by the arbitrator, the arbitrator is entitled to one-half the arbitration compensation rate for a full hearing day or a documents-only hearing. Once evidentiary hearings are held, the arbitrator is entitled to the full-day rate of compensation. The business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in sections (v) and (vii) below, and administrative fees (which include Filing and Hearing Fees) are not subject to reallocation by the arbitrator(s) except as may be required by applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

*   *Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)*

| Party | Desk Arbitration | In-Person or Telephonic Hearing – Single Arbitrator | In-Person or Telephonic Hearing – Three Or More Arbitrators |
|---|---|---|---|
| Consumer | Filing Fee—$200 (nonrefundable) | Filing Fee—$200 (nonrefundable) | Filing Fee—$200 (nonrefundable) |
| Business | Filing Fee—$1,700<br><br>Arbitrator Compensation—$750 per case | Filing Fee—$1,700<br><br>Hearing Fee—$500<br><br>Arbitrator Compensation—$1,500 per hearing day | Filing Fee—$2,200<br><br>Hearing Fee—$500<br><br>Arbitrator Compensation—$1,500 per hearing day per arbitrator |

EXHIBIT 3: 2014 AAA ARBITRATION RULES

### (i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $1,700 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a case is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $2,200 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

There shall be no filing fee charged for a counterclaim.

The AAA reserves the right to assess additional administrative fees for services performed by the AAA beyond those provided for in these Rules and which may be required by the parties' agreement or stipulation.

### (ii) Neutral Arbitrator's Compensation

Arbitrators serving on a case with an in-person or telephonic hearing will receive compensation at a rate of **$1,500 per day.**

Arbitrators serving on a case with a desk arbitration/documents-only hearing will receive compensation at a rate of **$750 per case.**

The AAA reserves the right to raise the daily or per-case arbitrator compensation rate because of the complexity of the case or for processes and procedures beyond those provided for in these Rules and which may be required by the parties' requests, agreement, or stipulation (1) at the time of the AAA's initiation of the case; (2) upon the addition of a new party; (3) when a change of claim is made and, if necessary, approved by the arbitrator(s); (4) or if circumstances arise during the course of the case due to the complexity of issues and submissions by the parties.  Any determination by the AAA on compensation rates is in the sole discretion of the AAA and such decision is final and binding on the parties and arbitrator.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## (iii) Refund Schedule

Once the claimant has met the filing requirements, refunds to the business will be calculated as follows:

- if the case is settled or withdrawn within 30 calendar days, 50% of the filing fee will be refunded to the business.

However, no refund of the filing fee will be made once an arbitrator has been appointed and no refunds will be made on awarded cases. The date the claimant's filing requirements are met is the date used to calculate any refund of filing fees. If the matter is settled or withdrawn prior to receipt of filing fees from the business, the AAA will bill the business in accordance with this refund schedule.

## (iv) Hearing Fees

For telephonic hearings or in-person hearings held, an additional administrative fee of $500 is payable by the business.

There is no AAA hearing fee for the initial Administrative Conference (see R-10).

## (v) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains rental hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the business.

## (vi) Abeyance Fee

Parties on cases held as inactive for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the opposing party or parties may pay the entire fee on behalf of all parties, otherwise the matter will be administratively closed. All filing requirements, including payment of filing fees, must be met before a matter may be placed in abeyance.

## (vii) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

(viii) Consumer Clause Review and Registry Fee

Please note that all fees described below are **nonrefundable.**

For businesses submitting a clause, the cost of reviewing the clause and maintaining that clause on the Registry is $500.  A yearly Registry fee of $500 will be charged to maintain each clause on the Registry for each calendar year thereafter.

If the AAA receives a demand for consumer arbitration from an arbitration clause that was not previously submitted to the AAA for review and placement on the Registry, the business will incur an additional $250 fee to conduct an expedited review of the clause.

Any subsequent changes, additions, deletions, or amendments to currently registered arbitration agreement must be resubmitted for review and a review fee of $500 will assessed at that time.

EXHIBIT 3: 2014 AAA ARBITRATION RULES  American Arbitration Association

## Procedures for the Resolution of Disputes through Document Submission

### D-1. Applicability

**(a)** In any case, regardless of claim size, the parties may agree to waive in-person/telephonic hearings and resolve the dispute through submission of documents to one arbitrator. Such agreement should be confirmed in writing no later than the deadline for the filing of an answer.

**(b)** Where no disclosed claims or counterclaims exceed $25,000, the dispute shall be resolved by these Procedures, unless a party asks for a hearing or the arbitrator decides that a hearing is necessary.

**(c)** If one party makes a request to use the *Procedures for the Resolution of Disputes through Document Submission* (Procedures) and the opposing party is unresponsive, the arbitrator shall have the power to determine whether to proceed under the Procedures. If both parties seek to use the Procedures after the appointment of an arbitrator, the arbitrator must also consent to the process.

**(d)** When parties agree to these Procedures, the procedures in Sections D-1 through D-4 of these Rules shall supplement other portions of these rules which are not in conflict with the Procedures.

### D-2. Preliminary Management Hearing

Within 14 calendar days of confirmation of the arbitrator's appointment, the arbitrator shall convene a preliminary management hearing, via conference call, video conference, or internet, to establish a fair and equitable procedure for the submission of documents, and, if the arbitrator deems appropriate, a schedule for one or more telephonic or electronic conferences.

### D-3. Removal from the Procedures

**(a)** The arbitrator has the discretion to remove the case from the Procedures if the arbitrator determines that an in-person or telephonic hearing is necessary.

**(b)** If the parties agree to in-person or telephonic hearings after a previous agreement to proceed under the Procedures, the arbitrator shall conduct such hearings. If a party seeks to have in-person or telephonic hearings after agreeing to the Procedures, but there is not agreement among the parties to proceed with in-person or telephonic hearings, the arbitrator shall resolve the issue after the parties have been given the opportunity to provide their respective positions on the issue.

### D-4. Time of Award

(a) The arbitrator shall establish the date for either final written submissions or a final telephonic or electronic conference. Such date shall operate to close the hearing, and the time for the rendering of the award shall commence on that day as well.

(b) The arbitrator shall render the award within 14 calendar days from the date the hearing is closed.

(c) The award is subject to all other provisions of these Rules that pertain to awards.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Glossary of Terms

### Administrator

The Administrator's role is to manage the administrative aspects of the arbitration, such as the appointment of the arbitrator, to make preliminary decisions about where hearings might take place, and to handle the fees associated with the arbitration. As Administrator, however, the Administrator does not decide the merits of a case or make any rulings on issues such as what documents must be shared with each side. Because the Administrator's role is only administrative, the Administrator cannot overrule or change an arbitrator's decisions or rulings. The Administrator will comply with any court orders issued from litigation involving the parties to the dispute.

### ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute other than by court litigation. Mediation and Arbitration are the most widely used ADR processes.

### ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court.

Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award and the court's review of arbitration awards is limited.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Arbitration Agreement

An arbitration agreement is a contract between parties to settle their disputes by binding arbitration. It is typically found in the parties' contract in a section entitled "Arbitration" or "Dispute Resolution." It gives the parties information about how they are choosing to settle any disputes that they might have.

## Arbitrator

Arbitrators are neutral and independent decision makers who are not employees of the administrator. Except where the parties to a case reach their own settlement, the Arbitrator will make the final, binding decision on the dispute and render it in writing, called the Award. The Arbitrator makes all the procedural decisions on a case not made by the administrator or not decided jointly by the parties. The Arbitrator may grant any remedy, relief, or outcome that the parties could have received in court, including awards of attorney's fees and costs, in accordance with the law(s) that applies to the case.

Once appointed to a case, an Arbitrator may not be removed by one party without the other party's consent or unless the administrator determines an Arbitrator should be removed and replaced by another Arbitrator chosen by the administrator in a manner described in these Rules.

## Case Administrator

The Case Administrator is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Administrator is the parties' contact point for almost all aspects of the case outside of any hearings.

## Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

## Demand for Arbitration (also referred to as "Demand")

The written document created by the claimant that informs the respondent that it wishes to arbitrate a dispute. This document provides basic information about the dispute, the parties involved and what the claimant wants as a result of the arbitration.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

## Documents-Only Arbitration

In a Documents-Only Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No in-person or telephone hearing is held.

## Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

## In-Person Hearing

During an In-Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In-Person Hearing is not as formal as going to court.

## Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

## Neutral

A "Neutral" is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

## Party

The party is the person(s) or business that is involved in the dispute in the arbitration process. Usually, these are the people or businesses that have an arbitration agreement between them that specifies that a dispute should be resolved by arbitration.

EXHIBIT 3: 2014 AAA ARBITRATION RULES

### Parties

Parties are all the separate individuals, businesses, or organizations involved in the arbitration.

### Opposing Party

The opposing party is the other party that is on the opposite side of the arbitration from you. If you are the claimant, the Opposing Party is the respondent. If you are the respondent, the Opposing Party is the claimant. If you are the consumer, the Opposing Party is the business. If you are the business, the Opposing Party is the consumer.

### Respondent

The respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

### Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. They also present their evidence to the arbitrator during the call. Often this is done after the parties have sent in documents for the arbitrator to review.

*© 2016 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services. Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws. Please contact 800.778.7879 or websitemail@adr.org for additional information.*

EXHIBIT 3: 2014 AAA ARBITRATION RULES

AMERICAN ARBITRATION ASSOCIATION®

800.778.7879 | websitemail@adr.org | adr.org

EXHIBIT 3: 2014 AAA ARBITRATION RULES



# Consumer-Related Disputes

Supplementary Procedures

AMERICAN ARBITRATION ASSOCIATION®

Available online at **adr.org/consumer**

Rules Effective September 15, 2005.

Fees Effective March 1, 2013.

EXHIBIT 4: 2005 AAA ARBITRATION RULES

# Table of Contents

Consumer-Related Disputes Supplementary Procedures ............................................4

Introduction..........................................................................................................4

   About the AAA .........................................................................................................4

   The AAA's Consumer Rules ....................................................................................4

   Availability of Mediation .........................................................................................5

   Administrative Fees.................................................................................................5

   Arbitrator's Fees ....................................................................................................5


Glossary of Terms .................................................................................................5

   Claimant ................................................................................................................5

   Respondent............................................................................................................5

   ADR Process...........................................................................................................5

   Arbitration .............................................................................................................6

   Desk Arbitration ....................................................................................................6

   Telephone Hearing.................................................................................................6

   In Person Hearing..................................................................................................6

   Mediation...............................................................................................................6

   Neutral...................................................................................................................6

   Case Manager .......................................................................................................7

   ADR Agreement .....................................................................................................7

   ADR Program .........................................................................................................7

   Independent ADR Institution ..................................................................................7


Supplementary Procedures for the Resolution of Consumer-Related Disputes.....8

   C-1. Agreement of Parties and Applicability .........................................................8

   C-2. Initiation Under an Arbitration Agreement.....................................................8

   C-3. Initiation Under a Submission .....................................................................9

   C-4. Appointment of Arbitrator ...........................................................................9

   C-5. Proceedings on Documents ("Desk Arbitration") .......................................10

   C-6. Expedited Hearing Procedures...................................................................10

   C-7. The Award................................................................................................10

   C-8. Administrative Fees and Arbitrator Fees.....................................................11

## EXHIBIT 4: 2005 AAA ARBITRATION RULES

Costs of Arbitration (including AAA Administrative Fees)* ........................................12

  (i) Filing Fees................................................................................................................12

  (ii) Neutral Arbitrator's Compensation..................................................................13

  (iii) Refund Schedule ...............................................................................................13

  (iv) Hearing Fees......................................................................................................13

  (v) Hearing Room Rental ........................................................................................13

  (vi) Abeyance Fee ....................................................................................................13

  (vii) Expenses ..........................................................................................................14

EXHIBIT 4: 2005 AAA ARBITRATION RULES



# Consumer-Related
## Disputes Supplementary Procedures

## Introduction

Millions of consumer purchases take place each year. Occasionally, these transactions lead to disagreements between consumers and businesses. These disputes can be resolved by arbitration. Arbitration is usually faster and cheaper than going to court. The AAA® applies the Supplementary Procedures for Consumer-Related Disputes to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. Consumers are not prohibited from seeking relief in a small claims court for disputes or claims within the scope of its jurisdiction, even in consumer arbitration cases filed by the business.

## About the AAA

The American Arbitration Association® (AAA) is a not-for-profit, private organization. We offer a broad range of conflict management services to businesses, organizations and individuals. We also provide education, training and publications focused on ways of settling disputes out of court.

## The AAA's Consumer Rules

TThe AAA has developed the Supplementary Procedures for Consumer-Related Disputes for consumers and businesses that want to have their disagreements resolved by arbitrators. People throughout the world can make use of our services.

EXHIBIT 4: 2005 AAA ARBITRATION RULES

### Availability of Mediation

Mediation is also available to help parties resolve their disputes. Mediations are handled under AAA's Commercial Mediation Procedures.

### Administrative Fees

The Association charges a fee for its services under these rules. The costs to the consumer and business depend on the type of hearing and number of arbitrators used. A fee schedule is included at the end of this Supplement.

### Arbitrator's Fees

Arbitrators get paid for the time they spend resolving disputes. The arbitrator's fee depends on the type of proceeding that is used and the time it takes. The business makes deposits as outlined in the fee schedule at the end of this Supplement. Unused deposits are refunded at the end of the case.

## Glossary of Terms

### Claimant

A Claimant is the party who files the claim or starts the arbitration. Either the consumer or the business may be the Claimant.

### Respondent

A Respondent is the party against whom the claim is filed. If a Respondent states a claim in arbitration, it is called a counterclaim. Either the consumer or the business may be the Respondent.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method of resolving a dispute out of court. Mediation and Arbitration are the most widely used ADR processes.

EXHIBIT 4: 2005 AAA ARBITRATION RULES

### Arbitration

In arbitration, the parties submit disputes to an impartial person (the arbitrator) for a decision. Each party can present evidence to the arbitrator. Arbitrators do not have to follow the Rules of Evidence used in court. Arbitrators decide cases with written decisions or "awards." An award is usually binding on the parties. A court may enforce an arbitration award, but the court's review of arbitration awards is limited.

### Desk Arbitration

In a Desk Arbitration, the parties submit their arguments and evidence to the arbitrator in writing. The arbitrator then makes an award based only on the documents. No hearing is held.

### Telephone Hearing

In a Telephone Hearing, the parties have the opportunity to tell the arbitrator about their case during a conference call. Often this is done after the parties have sent in documents for the arbitrator to review. A Telephone Hearing can be easier than an In Person Hearing.

### In Person Hearing

During an In Person Hearing, the parties and the arbitrator meet in a conference room or office and the parties present their evidence in a process that is similar to going to court. However, an In Person Hearing is not as formal as going to court.

### Mediation

In Mediation, an impartial person (the mediator) helps the parties try to settle their dispute by reaching an agreement together. A mediator's role is to help the parties come to an agreement. A mediator does not arbitrate or decide the outcome.

### Neutral

A Neutral is a word that is used to describe someone who is a mediator, arbitrator, or other independent, impartial person selected to serve as the independent third party in an ADR process.

## EXHIBIT 4: 2005 AAA ARBITRATION RULES

### Case Manager

The Case Manager is the AAA's employee assigned to handle the administrative aspects of the case. He or she does not decide the case. He or she only manages the case's administrative steps, such as exchanging documents, matching schedules, and setting up hearings. The Case Manager is the parties' contact point for almost all aspects of the case outside of any hearings.

### ADR Agreement

An ADR Agreement is an agreement between a business and a consumer to submit disputes to mediation, arbitration, or other ADR processes.

### ADR Program

An ADR Program is any program or service set up or used by a business to resolve disputes out of court.

### Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR programs for consumers and businesses. The American Arbitration Association is an Independent ADR Institution.

EXHIBIT 4: 2005 AAA ARBITRATION RULES

# Supplementary Procedures for the Resolution of Consumer-Related Disputes

## C-1. Agreement of Parties and Applicability

**(a)** The Commercial Dispute Resolution Procedures and these Supplementary Procedures for Consumer-Related Disputes shall apply whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices. The product or service must be for personal or household use. The AAA will have the discretion to apply or not to apply the Supplementary Procedures and the parties will be able to bring any disputes concerning the application or non-application to the attention of the arbitrator. The AAA's most current rules will be used when the arbitration is started. If there is a difference between the Commercial Dispute Resolution Procedures and the Supplementary Procedures, the Supplementary Procedures will be used. The Commercial Dispute Resolution Procedures may be found on our Web site. They may also be obtained from the Case Manager.

**(b)** The Expedited Procedures will be used unless there are three arbitrators. In such cases, the Commercial Dispute Resolution Procedures shall apply.

**(c)** The AAA may substitute another set of rules, such as the Real Estate or the Wireless Industry Arbitration Rules, for the Commercial Dispute Resolution Procedures in some cases.

**(d)** Parties can still take their claims to a small claims court.

## C-2. Initiation Under an Arbitration Agreement

**(a)** The filing party (the "claimant") must notify the other party (the "respondent"), in writing, that it wishes to arbitrate a dispute. This notification is referred to as the "demand" for arbitration. The demand should:

' briefly explain the dispute,
' list the names and addresses of the consumer and the business,
' specify the amount of money involved,
' state what the claimant wants.

The claimant must also send two copies of the demand to the AAA at the time it sends the demand to the respondent. When sending a demand to the AAA, the claimant must attach a copy of the arbitration agreement from the consumer contract with the business. The claimant must also send the appropriate administrative fees and deposits. A fee schedule can be found in Section C-8 at the end of this Supplement.

# EXHIBIT 4: 2005 AAA ARBITRATION RULES

(b) The AAA shall confirm receipt of the demand to the parties.

(c) The respondent may answer the demand and may also file a counterclaim. The answer must be sent to the AAA within ten calendar days after the AAA acknowledges receipt of claimant's demand. The answer must:

' be in writing,

' be sent, in duplicate, to the AAA,

' be sent to the claimant at the same time.

' If the respondent has a counterclaim, it must state the nature of the counterclaim, the amount involved, and the remedy sought.

(d) If no answer is filed within the stated time, the AAA will assume that the respondent denies the claim.

(e) The respondent must also send the appropriate administrative fees and deposits. A fee schedule can be found in Section C-8 at the end of this Supplement. Payment is due ten calendar days after the AAA acknowledges receipt of claimant's demand.

## C-3. Initiation Under a Submission

Where no agreement to arbitrate exists in the contract between the consumer and the business, the parties may agree to arbitrate a dispute. To begin arbitration, the parties must send the AAA a submission agreement. The submission agreement must:

' be in writing,

' be signed by both parties,

' briefly explain the dispute,

' list the names and addresses of the consumer and the business,

' specify the amount of money involved,

' state the solution sought.

The parties should send two copies of the submission to the AAA. They must also send the administrative fees and deposits. A fee schedule can be found in Section C-8 at the end of this Supplement.

## C-4. Appointment of Arbitrator

Immediately after the filing of the submission or the answer, or after the deadline for filing the answer, the AAA will appoint an arbitrator. The parties will have seven calendar days from the time the AAA notifies them, to submit any factual objections to that arbitrator's service.

# EXHIBIT 4: 2005 AAA ARBITRATION RULES

C-5. Proceedings on Documents ("Desk Arbitration")

Where no claims or counterclaims exceed $10,000, the dispute shall be resolved by the submission of documents. Any party, however, may ask for a hearing. The arbitrator may also decide that a hearing is necessary.

The arbitrator will establish a fair process for submitting the documents. Documents must be sent to the AAA. These will be forwarded to the arbitrator.

## C-6. Expedited Hearing Procedures

A party may request that the arbitrator hold a hearing. This hearing may be by telephone or in person. The hearing may occur even if the other party does not attend. A request for a hearing should be made in writing within ten calendar days after the AAA acknowledges receipt of a claimant's demand for arbitration. Requests received after that date will be allowed at the discretion of the arbitrator.

In a case where any party's claim exceeds $10,000, the arbitrator will conduct a hearing unless the parties agree not to have one.

Any hearings will be conducted in accordance with the Expedited Procedures of the Commercial Dispute Resolution Procedures. These procedures may be found on our Web site. They may also be obtained from the Case Manager.

## C-7. The Award

(a) Unless the parties agree otherwise, the arbitrator must make his or her award within fourteen calendar days from the date of the closing of the hearing. For Desk Arbitrations, the arbitrator has fourteen calendar days from when the AAA sends the final documents to the arbitrator.

(b) Awards shall be in writing and shall be executed as required by law.

(c) In the award, the arbitrator should apply any identified pertinent contract terms, statutes, and legal precedents. The arbitrator may grant any remedy, relief or outcome that the parties could have received in court. The award shall be final and binding. The award is subject to review in accordance with applicable statutes governing arbitration awards.

## C-8. Administrative Fees and Arbitrator Fees

Administrative fees and arbitrator compensation deposits are due from the claimant at the time a case is filed. They are due from the respondent at the time the answer is due. The amounts paid by the consumer and the business are set forth below.

## Costs of Arbitration (including AAA Administrative Fees)*

Arbitrator compensation is not included as part of the administrative fees charged by the AAA. Arbitrator compensation is based on a rate established by the AAA set forth below. Once the Preliminary Hearing (see R-20 of the Commercial Arbitration Rules) is held by the arbitrator, the arbitrator is entitled to one half the arbitration compensation rate for a full hearing day/or a documents-only hearing. The business shall pay the arbitrator's compensation unless the consumer, post dispute, voluntarily elects to pay a portion of the arbitrator's compensation. Arbitrator compensation, expenses as defined in sections (v) and (vii) below, and administrative fees (which include Filing and Hearing Fees) are not subject to reallocation by the arbitrator(s) except pursuant to applicable law or upon the arbitrator's determination that a claim or counterclaim was filed for purposes of harassment or is patently frivolous.

> * Pursuant to Section 1284.3 of the California Code of Civil Procedure, consumers with a gross monthly income of less than 300% of the federal poverty guidelines are entitled to a waiver of arbitration fees and costs, exclusive of arbitrator fees. This law applies to all consumer agreements subject to the California Arbitration Act, and to all consumer arbitrations conducted in California. If you believe that you meet these requirements, you must submit to the AAA a declaration under oath regarding your monthly income and the number of persons in your household. Please contact the AAA at 1-800-778-7879, if you have any questions regarding the waiver of administrative fees. (Effective January 1, 2003)

### (i) Filing Fees

In cases before a single arbitrator, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a claim is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $1,500 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

In cases before three or more arbitrators, a nonrefundable filing fee capped in the amount of $200 is payable in full by the consumer when a claim is filed, unless the parties' agreement provides that the consumer pay less. A partially refundable fee in the amount of $2,000 is payable in full by the business, unless the parties' agreement provides that the business pay more. This fee is due from the business once the consumer has met the filing requirements.

There shall be no filing fee charged for a counterclaim.

## EXHIBIT 4: 2005 AAA ARBITRATION RULES

(ii) Neutral Arbitrator's Compensation

Arbitrators serving on a case with an in-person or telephonic hearing will receive compensation at a rate of **$1500 per day.**

Arbitrators serving on a case with a desk arbitration/documents-only hearing will receive compensation at a rate of **$750 per case.**

### (iii) Refund Schedule

Once the claimant has met the filing requirements, refunds to the business will be calculated as follows:

• if the case is settled or withdrawn within 30 calendar days, 50% of the filing fee will be refunded to the business.

However, no refund will be made once an arbitrator has been appointed and no refunds will be made on awarded cases. The date the claimant's filing requirements are met is the date used to calculate any refund of filing fees. If the matter is settled or withdrawn prior to receipt of filing fees from the business, the AAA will bill the business in accordance with this refund schedule.

### (iv) Hearing Fees

For telephonic hearings or in-person hearings held, an additional administrative fee of $500 is payable by the business.

There is no AAA hearing fee for the initial Administrative Conference (see R-9 of the Commercial Arbitration Rules).

### (v) Hearing Room Rental

The hearing fees described above do not cover the rental of hearing rooms. The AAA maintains rental hearing rooms in most offices for the convenience of the parties. Check with the administrator for availability and rates. Hearing room rental fees will be borne by the business.

### (vi) Abeyance Fee

Parties on cases held as inactive for one year will be assessed an annual abeyance fee of $300. If a party refuses to pay the assessed fee, the opposing party or parties may pay the entire fee on behalf of all parties, otherwise the

EXHIBIT 4: 2005 AAA ARBITRATION RULES

matter will be administratively closed. All filing requirements, including payment of filing fees, must be met before a matter may be placed in abeyance.

(vii) Expenses

All expenses of the arbitrator, including required travel and other expenses, and any AAA expenses, as well as the costs relating to proof and witnesses produced at the direction of the arbitrator, shall be borne by the business.

| PARTIES | DESK ARBITRATION | IN-PERSON OR TELEPHONIC HEARING – SINGLE ARBITRATOR | IN-PERSON OR TELEPHONIC HEARING – THREE OR MORE ARBITRATORS |
|---|---|---|---|
| Consumer | Filing Fee - $200 | Filing Fee - $200 | Filing Fee - $200 |
| Business | Filing Fee - $1500<br><br>Arbitrator Compensation - $750 per case | Filing Fee - $1500<br><br>Hearing Fee - $500<br><br>Arbitrator Compensation - $1500 per hearing day | Filing Fee - $2000<br><br>Hearing Fee - $500<br><br>Arbitrator Compensation - $1500 per hearing day per arbitrator |

EXHIBIT 4: 2005 AAA ARBITRATION RULES

Notes:

EXHIBIT 4: 2005 AAA ARBITRATION RULES

*©2013 American Arbitration Association®, Inc. All rights reserved. These rules are the copyrighted property of the*
*American Arbitration Association (AAA) and are intended to be used in conjunction with the AAA's administrative services.*
*Any unauthorized use or modification of these rules may violate copyright laws and other applicable laws.*
*Please contact 800.778.7879 or websitemail@adr.org for additional information.*

EXHIBIT 4: 2005 AAA ARBITRATION RULES



AMERICAN ARBITRATION ASSOCIATION®

# Consumer Due Process Protocol Statement of Principles

## National Consumer Disputes Advisory Committee

## Statement Of Principles

### Principle 1. Fundamentally-Fair Process

All parties are entitled to a fundamentally-fair ADR process. As embodiments of fundamental fairness, these Principles should be observed in structuring ADR Programs.

### Principle 2. Access to Information Regarding ADR Program

Providers of goods or services should undertake reasonable measures to provide Consumers with full and accurate information regarding Consumer ADR Programs. At the time the Consumer contracts for goods or services, such measures should include (1) clear and adequate notice regarding the ADR provisions, including a statement indicating whether participation in the ADR Program is mandatory or optional, and (2) reasonable means by which Consumers may obtain additional information regarding the ADR Program. After a dispute arises, Consumers should have access to all information necessary for effective participation in ADR.

### Principle 3. Independent and Impartial Neutral; Independent Administration

1. *Independent and Impartial Neutral.* All parties are entitled to a Neutral who is independent and impartial.

2. *Independent Administration.* If participation in mediation or arbitration is mandatory, the procedure should be administered by an Independent ADR Institution. Administrative services should include the maintenance of a panel of prospective Neutrals, facilitation of Neutral selection, collection and distribution of Neutral's fees and expenses, oversight and implementation of ADR rules and procedures, and monitoring of Neutral qualifications, performance, and adherence to pertinent rules, procedures and ethical standards.

3. *Standards for Neutrals.* The Independent ADR Institution should make reasonable efforts to ensure that Neutrals understand and conform to pertinent ADR rules, procedures and ethical standards.

4. *Selection of Neutrals.* The Consumer and Provider should have an equal voice in the selection of Neutrals in connection with a specific dispute.

5. *Disclosure and Disqualification.* Beginning at the time of appointment, Neutrals should be required to disclose to the Independent ADR Institution any circumstance likely to affect impartiality, including any bias or financial or personal interest which might affect the result of the ADR proceeding, or any past or present relationship or experience with the parties or their representatives, including past ADR experiences. The Independent ADR Institution should communicate any such information to the parties and other Neutrals, if any. Upon objection of a party to continued service of the Neutral, the Independent ADR Institution should determine whether the Neutral should be disqualified and should inform the parties of its decision. The disclosure obligation of the Neutral and procedure for disqualification should continue throughout the period of appointment.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL


AMERICAN ARBITRATION ASSOCIATION®

## Principle 4. Quality and Competence of Neutrals

All parties are entitled to competent, qualified Neutrals. Independent ADR Institutions are responsible for establishing and maintaining standards for Neutrals in ADR Programs they administer.

## Principle 5. Small Claims

Consumer ADR Agreements should make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction.

## Principle 6. Reasonable Cost

1. *Reasonable Cost.* Providers of goods and services should develop ADR programs which entail reasonable cost to Consumers based on the circumstances of the dispute, including, among other things, the size and nature of the claim, the nature of goods or services provided, and the ability of the Consumer to pay. In some cases, this may require the Provider to subsidize the process.
2. *Handling of Payment.* In the interest of ensuring fair and independent Neutrals, the making of fee arrangements and the payment of fees should be administered on a rational, equitable and consistent basis by the Independent ADR Institution.

## Principle 7. Reasonably Convenient Location

In the case of face-to-face proceedings, the proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, the determination should be made by the Independent ADR Institution or by the Neutral.

## Principle 8. Reasonable Time Limits

ADR proceedings should occur within a reasonable time, without undue delay. The rules governing ADR should establish specific reasonable time periods for each step in the ADR process and, where necessary, set forth default procedures in the event a party fails to participate in the process after reasonable notice.

## Principle 9. Right to Representation

All parties participating in processes in ADR Programs have the right, at their own expense, to be represented by a spokesperson of their own choosing. The ADR rules and procedures should so specify.

## Principle 10. Mediation

The use of mediation is strongly encouraged as an informal means of assisting parties in resolving their own disputes.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL

AMERICAN ARBITRATION ASSOCIATION®

### Principle 11. Agreements to Arbitrate

<mark>Consumers should be given:</mark>

**a.** clear and adequate notice of the arbitration provision and its consequences, including a statement of its mandatory or optional character;

**b.** reasonable access to information regarding the arbitration process, including basic distinctions between arbitration and court proceedings, related costs, and advice as to where they may obtain more complete information regarding arbitration procedures and arbitrator rosters;

**c.** <mark>notice of the option to make use of applicable small claims court procedures as an alternative to binding arbitration in appropriate cases; and,</mark>

**d.** a clear statement of the means by which the Consumer may exercise the option (if any) to submit disputes to arbitration or to court process.

### Principle 12. Arbitration Hearings

**1.** *Fundamentally-Fair Hearing.* All parties are entitled to a fundamentally-fair arbitration hearing. This requires adequate notice of hearings and an opportunity to be heard and to present relevant evidence to impartial decision-makers. In some cases, such as some small claims, the requirement of fundamental fairness may be met by hearings conducted by electronic or telephonic means or by a submission of documents. However, the Neutral should have discretionary authority to require a face-to-face hearing upon the request of a party.

**2.** *Confidentiality in Arbitration.* Consistent with general expectations of privacy in arbitration hearings, the arbitrator should make reasonable efforts to maintain the privacy of the hearing to the extent permitted by applicable law. The arbitrator should also carefully consider claims of privilege and confidentiality when addressing evidentiary issues.

### Principle 13. Access to Information

No party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute. Consumer ADR agreements which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration, bearing in mind the expedited nature of arbitration.

### Principle 14. Arbitral Remedies

The arbitrator should be empowered to grant whatever relief would be available in court under law or in equity.

### Principle 15. Arbitration Awards

**1.** *Final and Binding Award; Limited Scope of Review.* If provided in the agreement to arbitrate, the arbitrator's award should be final and binding, but subject to review in accordance with applicable statutes governing arbitration awards.

**2.** *Standards to Guide Arbitrator Decision-Making.* In making the award, the arbitrator should apply any identified, pertinent contract terms, statutes and legal precedents.

**3.** *Explanation of Award.* At the timely request of either party, the arbitrator should provide a brief written explanation of the basis for the award. To facilitate such requests, the arbitrator should discuss the matter with the parties prior to the arbitration hearing.

EXHIBIT 5: AAA CONSUMER DUE PROCESS PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

## Introduction: Genesis of the Advisory Committee

Recent years have seen a pronounced trend toward incorporation of out-of-court conflict resolution processes in standardized agreements presented to consumers of goods and services. Some of these processes (such as mediation and non-binding evaluation) involve third party intervention in settlement negotiations; others involve adjudication (binding arbitration). Such processes have the potential to be of significant value in making dispute resolution quicker, less costly, and more satisfying.[1]

Yet because consumer contracts often do not involve arm's length negotiation of terms, and frequently consist of boilerplate language presented on a take-it-or-leave it basis by suppliers of goods or services, there are legitimate concerns regarding the fairness of consumer conflict resolution mechanisms required by suppliers. This is particularly true in the realm of binding arbitration, where the courts are displaced by private adjudication systems. In such cases, consumers are often unaware of their procedural rights and obligations until the realities of out-of-court arbitration are revealed to them after disputes have arisen.[2] While the results may be entirely satisfactory, they may also fall short of consumers' reasonable expectations of fairness[3] and have a significant impact on consumers' substantive rights and remedies.[4]

The use of mediation and other forms of alternative dispute resolution (ADR) by various state and federal courts has also raised concerns regarding quality, effectiveness and fairness. The response has been a number of national, state and local initiatives to establish standards for the guidance and information of courts. Until now, however, there has been no comparable national effort in the private consumer sphere.

In the spring of 1997, the American Arbitration Association® (AAA®) announced the establishment of a National Consumer Disputes Advisory Committee. The stated mission of the Advisory Committee is:

> *To bring together a broad, diverse, representative national advisory committee to advise the American Arbitration Association in the development of standards and procedures for the equitable resolution of consumer disputes.*

---

1   See, *e.g.*, CPR Institute for Dispute Resolution, *ADR Cost Savings & Benefit Studies* (Catherine Cronin-Harris, ed. 1994) (summarizing some of the research findings on the relative advantages ADR may offer). See also, *e.g.*, *Madden v. Kaiser Foundation Hosp.*, 17 Cal. 3d 699, 711, 552 P.2d 1178, 1186 (1976) ("The speed and economy of arbitration, in contrast to the expense and delay of a jury trial, could prove helpful to all parties....")

2   The arbitration agreement may be included in the "fine print" in a brochure of terms and conditions inside a box of goods. See, *e.g.*, *Hill v. Gateway 2000, Inc.*, 105 F.3d 1147 (7th Cir. 1997) (Customers agreed to computer company's contract terms, including arbitration agreement, by failing to return merchandise within 30 days). See *Age of Compelled Arbitration*, 1997, Wis. L. Rev33, 40-53 (Offering a "cautionary tale" regarding employment arbitration agreement.)

3   See Mark E. Budnitz, *Arbitration of Disputes Between Consumers and Financial Institutions: A Serious Threat to Consumer Protection*, 10 Ohio St. J. On Disp. Res. 267 (1995) (discussing procedural limitations of arbitration in treating consumer disputes with banks and lenders); Schwartz, *supra* note 2 (discussing issues relating to adhesion contracts involving employees and consumers); Jean R. Sternlight, *Rethinking the Constitutionality of the Supreme Court's Preference for Binding Arbitration: A Fresh Assessment of Jury Trial, Separation of Powers, and Due Process Concerns*, 72 Tulane L. Rev. 1 (1997) (discussing due process concerns with binding arbitration under employment and consumer contracts). See, *e.g.*, *Engalla V. Permanente Med. Grp.,* 938 P.2d 903 (Cal. 1997) (medical group may not compel arbitration where it administers own arbitration program, fraudulently misrepresents speed of arbitrator selection process, and the forces delays); *Broemmer V. Abortion Serv. of Phoenix*, 840 P.2d 1013 (Az. 1992) (refusing to enforce agreement in "adhesion contract" where drafter inserted potentially self-serving term requiring sole arbitrator of medical malpractice claims to be licensed medical doctor).

4   See Schwartz, *supra* note 2, at 60-61 (discussing perceptions regarding relative damages awards in court and in arbitration), 64-66 (summarizing some statistics on arbitration awards). See also William W. Park, *When and Why Arbitration Matters*, in The Commercial Way to Justice 73, 75 (G.M. Beresfort Hartwell ed., 1997) (" Who interprets an…agreement will frequently be more significant than *what* the applicable law says about the agreement….").

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

In light of its stated mission, the Advisory Committee's recommendations are likely to have a direct impact on the development of rules, procedures and policies for the resolution of consumer disputes under the auspices of the AAA.

The Advisory Committee's recommendations may also have a significant impact in the broader realm of consumer ADR. A Statement of Principles which is perceived as a broadly-based consensus regarding minimum requirements for mediation and arbitration programs for consumers of goods and services may influence the evolution of consumer rules generally and the development of state and federal laws governing consumer arbitration agreements. The standards may affect the drafting of statutes and influence judicial opinions addressing the enforceability of arbitration agreements pursuant to existing state or federal law.[5]

## Scope of the Consumer Due Process Protocol

The *Consumer Due Process Protocol (Protocol)* was developed to address the wide range of consumer transactions those involving the purchase or lease of goods or services for personal, family or household use. These include, among other things, transactions involving: banking, credit cards, home loans and other financial services; health care services; brokerage services; home construction and improvements; insurance; communications; and the purchase and lease of motor vehicles and other personal property.

Across this broad spectrum of consumer transactions, the Protocol applies to all possible conflicts from small claims to complex disputes. In light of these realities, the Advisory Committee sought to develop principles which would establish clear benchmarks for conflict resolution processes involving consumers, while recognizing that a process appropriate in one context may be inappropriate in another. Therefore, the Protocol embodies flexible standards which permit consideration of specific circumstances.

In some cases, the AAA is developing or has developed special dispute resolution policies and procedures governing particular transactional systems. A recent example is its current initiative with respect to ADR in contracts for health care services. Where the general principles set forth in this Protocol conflict with more specific standards developed under the auspices of the AAA or some other independent organization with relatively broad participation by affected parties, the latter should govern.

There are other transactions that share many of the features of consumer transactions, such as those involving small businesses and individual employment contracts. While the Protocol was not developed for specific application to such other transactions, there may be circumstances in which the Protocol might be applied by analogy to ADR in those venues. The Principles articulated here are likely to have an impact on minimum standards of due process for other ADR systems involving persons of disparate bargaining power.

Each section of this document is devoted to treatment of a discrete topic concerning consumer ADR. It begins with a basic Principle that embodies the fundamental reasonable expectation of consumers as defined by the Advisory

---

5   See, *e.g., Cole v. Burns International Security Services*, 105 F.3d 1465 (D.C.Cir. 1997) (Citing Due Process Protocol for Employment Disputes). The consensus-based approach of the broadly constituted group reflects the "public interest" model espoused by Professor Speidel. See Richard E. Speidel, *Contract Theory and Securities Arbitration: Whither Consent?*, 62 Brook. L. Rev. 1335 (1996).

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



Committee. Each Principle is accompanied by Reporter's Comments that explain the rationale of the Advisory Committee in the context of other emerging standards. In addition, some Principles are supplemented by Practical Suggestions for putting the Principles into practice.

The specific mention of mediation and binding arbitration reflects the current emphasis on these processes in consumer conflict resolution. The Advisory Committee recognizes that a number of other approaches are being employed to resolve commercial and consumer disputes, and encourages their use in accordance with the spirit of the Protocol.

The signatories to this Protocol were designated by their respective organizations, but the Protocol reflects their personal views and should not be construed as representing the policy of the designating organizations. Although the following Principles reflect a remarkable degree of consensus, achieved during the course of several meetings of the entire Advisory Committee, subcommittee deliberations, exchanges of numerous memoranda and of five drafts of the Protocol, Advisory Committee members at times accepted compromise in the interest of arriving at a common ground. As was the case with the task force which developed the *Employment Due Process Protocol*, opinions regarding the appropriateness of binding pre-dispute arbitration agreements in consumer contracts were never fully reconciled. Like that group, however, the Advisory Committee was able to address standards for ADR processes within the given context.

## Glossary of Terms

### Consumer

Consumer refers to an individual who purchases or leases goods or services, or contracts to purchase or lease goods or services, intended primarily for personal, family or household use.

### Provider

Provider refers to a seller or lessor of goods or services to Consumers for personal, family or household use.

### ADR Process

An ADR (Alternative Dispute Resolution) Process is a method for out-of-court resolution of conflict through the intervention of third parties. Mediation and arbitration are two widely used ADR processes.

### Mediation

Mediation refers to a range of processes in which an impartial person helps parties to a dispute to communicate and to make voluntary, informed choices in an effort to resolve their dispute. A mediator, unlike an arbitrator, does not issue a decision regarding the merits of the dispute, but instead facilitates a dialogue between the parties with the view of helping them arrive at a mutually agreeable settlement.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL


AMERICAN ARBITRATION ASSOCIATION®

### Arbitration

Arbitration is a process in which parties submit disputes to a neutral third person or persons for a decision on the merits. Each party has an opportunity to present evidence to the arbitrator(s) in writing or through witnesses. Arbitration proceedings tend to be more informal than court proceedings and adherence to judicial rules of evidence is not usually required. Arbitrators decide cases by issuing written decisions or "awards." An award may or may not be binding on the parties, depending on the agreement to arbitrate. A "binding" arbitration award may be enforced as a court judgment under the terms of federal or state statutes, but judicial review of arbitration awards is limited.

### Neutral

A Neutral is a mediator, arbitrator, or other independent, impartial third party selected to intervene in a Consumer-Provider dispute.

### ADR Agreement

An ADR Agreement is an agreement between a Provider and a Consumer to submit disputes to mediation, arbitration, or other ADR Processes. As used in this Statement, the term includes provisions (sometimes incorporated by reference) in standard contracts furnished by Providers which signify the assent of the Consumer and Provider to such processes (although the assent may only be the "generalized assent" typically given by Consumers to standard terms).

### ADR Program

An ADR Program is any program or service established by or utilized by a Provider of goods and services for out-of-court resolution of Consumer disputes. The term includes ADR rules and procedures and implementation of administrative structures.

### Independent ADR Institution

An Independent ADR Institution is an organization that provides independent and impartial administration of ADR Programs for Consumers and Providers, including, but not limited to, development and administration of ADR policies and procedures and the training and appointment of Neutrals.

## Major Standards and Sources

The Reporter's Comments accompanying these Principles cite a number of existing standards and sources relied upon by the Advisory Committee. The more frequently cited standards and sources are set forth below by their full title as well as the abbreviated title that appears in the Comments.

American Arbitration Association, *Commercial Arbitration Rules,* July 1, 1996 (AAA Commercial Rules)

American Arbitration Association, *Construction Industry Dispute Resolution Procedures,* Oct. 15, 1997 (AAA Construction Procedures)

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL

AMERICAN ARBITRATION ASSOCIATION®

American Arbitration Association, *Wireless Industry Arbitration Rules,* July 15, 1997 (AAA Wireless Rules)

American Arbitration Association & American Bar Association, *Code of Ethics for Arbitrators in Commercial Disputes* (1977) (Code of Ethics for Arbitrators)

Center for Dispute Settlement, Institute of Judicial Admin., *Standards for Court-Connected Mediation Programs* (Standards for Court-Connected Programs)

Council of Better Business Bureaus, Inc., *Arbitration (Binding)* (BBB Arbitration Rules)

CPR-Georgetown Commission on Ethics and Standards in ADR Working Group on Provider Organizations, *Principles for ADR Provider Organizations* (Draft of April 4, 1998) (Principles for ADR Provider Organizations)

*Federal Arbitration Act*, 9 U.S.C. ''1-16 (as amended and in effect July 1, 1992) (Federal Arbitration Act)

Blue-Ribbon Advisory Panel on Kaiser Permanente Arbitration, *The Kaiser Permanente Arbitration System: A Review and Recommendations for Improvement* 1 (1998) (Kaiser Permanente Review and Recommendations)

Joint Committee (American Arbitration Association, American Bar Association and Society of Professionals in Dispute Resolution) on Standards of Conduct, *Standards of Conduct for Mediators* (1994) (Joint Standards for Mediators)

Society of Professionals in Dispute Resolution (SPIDR) Commission on Qualifications, *Ensuring Competence and Quality in Dispute Resolution Practice* (Draft Report 1994) (SPIDR Report on Qualifications)

Society of Professionals in Dispute Resolution (SPIDR) Law and Public Policy Committee, *Mandated Participation and Settlement Coercion: Dispute Resolution as It Relates to the Courts* (1991) (SPIDR Report on Court-Mandated ADR)

Society of Professionals in Dispute Resolution (SPIDR) Commission on Qualifications, *Principles Concerning Qualifications* (1989) (SPIDR Principles)

Task Force on Alternative Dispute Resolution in Employment, *A Due Process Protocol for Mediation and Arbitration of Statutory Disputes Arising Out of the Employment Relationship* (1995) (Employment Due Process Protocol)

*Uniform Arbitration Act*, 7 U.A.A. 1 (1997) (Uniform Arbitration Act)

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



## Principle 1. Fundamentally-Fair Process

All parties are entitled to a fundamentally-fair ADR process. As embodiments of fundamental fairness, these Principles should be observed in structuring ADR Programs.

### Reporter's Comments

Users of ADR are entitled to a process that is fundamentally fair. Emerging standards governing consensual and court-connected ADR programs reflect pervasive concerns with fair process. *See, e.g.,* III Ian R. Macneil, Richard E. Speidel, & Thomas J. Stipanowich, *Federal Arbitration Law: Agreements, Awards & Remedies Under the Federal Arbitration Act* '32.2.1 (1994) [hereinafter Federal Arbitration Law ] (noting "universal agreement" that arbitrators must provide parties with fundamentally-fair hearing). *See also Kaiser Permanente Review and Recommendations* 1 ("As the sponsor of a mandatory system of arbitration, Kaiser Permanente must assure a fair system to their members, physicians and staff.")

Where conflict resolution processes are defined by a written contract, that writing is often viewed by courts as the primary indicator of the "procedural fairness" for which the parties bargained. As the Advisory Committee recognized, however, ADR agreements in most Consumer contracts are "take-it-or-leave-it" contracts which are not products of negotiation by Consumers. *See* David S. Schwartz, *Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration*, 1997 Wis. L. Rev. 33, 55-60 (discussing adhesion dimension of pre-dispute arbitration agreements in standardized contracts); *Kaiser Permanente Review and Recommendations 28 (noting that many members of a major HMO have no realistic alternative for medical care).* It is possible, therefore, that contracts to which they have generally assented contain ADR Agreements which fall so far short of Consumers' reasonable expectations that they would not have entered into the agreement had they been aware of the provisions. Thus, although these Principles attempt to enhance the likelihood that Consumers will have specific knowledge of ADR provisions at the time of contracting, the Advisory Committee also believed it necessary to describe a baseline of reasonable expectations for ADR in Consumer transactions. These Principles identify specific minimum due process standards which embody the concept of fundamental fairness, including: informed consent; impartial and unbiased Neutrals; independent administration of ADR; qualified Neutrals; access to small claims court; reasonable costs (including, where appropriate, subsidized Provider-mandated procedures); convenient hearing locations; reasonable time limits; adequate representation; fair hearing procedures; access to sufficient information; confidentiality; availability of court remedies; application of legal principle and precedent by arbitrators; and the option to receive a statement of reasons for arbitration awards.

Where provisions in a standardized pre-dispute arbitration agreement fail to meet Consumers' reasonable expectations, there is authority for the principle that courts may properly refuse to enforce the arbitration agreement in whole or in part. *See Restatement (Second) of Contracts* ' 211 (1981); *Broemmer v. Abortion Services of Phoenix, Ltd.,* 173 Ariz. 148, 840 P.2d 1013 (1992) (standardized arbitration agreement was unenforceable where its terms fell beyond patient's reasonable expectations); *Graham v. Scissor-Tail, Inc.,* 623 P.2d 165 (Cal. 1981) (arbitration clauses in adhesion contracts are unenforceable if they are contrary to the reasonable expectations of parties or unconscionable). *Cf. Cole v. Burns International Security Services,* 105 F.3d 1465 (D.C. Cir. 1997) (setting forth minimum due process standards for judicial enforcement of arbitration agreement in the context of a statutory employment discrimination claim where the employee was required to enter into the agreement as a condition of employment). Procedural fairness in Consumer arbitration

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



agreements may also be policed under other principles. *See, e.g., Stirlen v. Supercuts,* 51 Cal. App. 4th Supp. 1519, 60 Cal. Rptr.2d 138 (1997) (finding remedial limits in "adhesive" employment agreement unconscionable); *Engalla v. Permanente Med. Grp.,* 938 P.2d 903 (Cal. 1997) (arbitration agreement was unenforceable if there was substantial delay in arbitrator selection contrary to consumer's reasonable, fraudulently induced, contractual expectations).

Because the Principles in this Protocol represent a fundamental standard of fairness, waiver of any of these Principles in a pre-dispute agreement will naturally be subject to scrutiny as to conformity with the reasonable expectations of the parties and other judicial standards governing the enforceability of such contracts. Assuming they have sufficient specific knowledge and understanding of the rights they are waiving, however, Consumers may waive compliance with these Principles after a dispute has arisen.

## Principle 2. Access to Information Regarding ADR Program

Providers of goods or services should undertake reasonable measures to provide Consumers with full and accurate information regarding Consumer ADR Programs. At the time the Consumer contracts for goods or services, such measures should include (1) clear and adequate notice regarding the ADR provisions, including a statement indicating whether participation in the ADR Program is mandatory or optional, and (2) reasonable means by which Consumers may obtain additional information regarding the ADR Program. After a dispute arises, Consumers should have access to all information necessary for effective participation in ADR.

### Reporter's Comments

*See SPIDR Report on Qualifications* at 9 ("Consumers are entitled to know what tasks the neutral…may perform and what tasks they are expected to perform in the course of a particular dispute resolution service.") *Cf. SPIDR Principles* at 6-7 ("It is the responsibility of…private programs offering dispute resolution services to define clearly the services they provide…[and provide information about the program and Neutrals to the parties.]"); *Kaiser Permanente Review and Recommendations 28* (provider of medical services has duty to provide users with "enough information and facts to allow them to understand the actual operation of the arbitration system"); *Principles for ADR Provider Organizations 2.* At a minimum, Consumers should be provided with (or have prompt access to) written information to explain the process. This should include general information describing each ADR process used and its distinctive features, including:

*   the nature and purpose of the process, including the scope of ADR provisions;

*   an indication of whether or not the Consumer has a choice regarding use of the process;

*   the role of parties and attorneys, if any;

*   procedures for selection of Neutrals;

*   rules of conduct for Neutrals, and complaint procedures;

*   fees and expenses;

*   information regarding ADR Program operation, including locations, times of operation, and case processing procedures;

*   the availability of special services for non-English speakers, and persons with disabilities; and,

*   the availability of alternatives to ADR, including small claims court.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



*See, e.g., BBB Arbitration Rules* (defining arbitration and the roles of various participants; providing "checklist" for Consumers preparing for arbitration; setting forth procedural rules). *Cf. Standards for Court-Connected Programs* ' 3.2.b. (listing information which courts sponsoring mediation should provide to program users). *See also SPIDR Principles* at 6-7 (listing information which private programs should offer to parties regarding the program and participating Neutrals). Consumers should also be able to obtain a copy of pertinent rules and procedures. In the case of binding arbitration provisions, there should also be a straightforward explanation of the differences between arbitration and court process. *See* Principle 11 "Agreements to Arbitrate." Although the Provider of goods or services is charged with the responsibility for making certain that Consumers have access to appropriate information regarding ADR, the Independent ADR Institution has an important role in this area. The Independent ADR Institution must be prepared to communicate to the parties all information necessary for effective use of the ADR process(es), particularly after a dispute arises.

All materials should be prepared in plain straightforward language. As a rule, such information should be in the same language as the principal contract for goods or services. *See, e.g., N.Y. Pers. Prop. Law* ' 427 (McKinney 1997). *See also Standards for Court-Connected Programs* ' 3.2.b., Commentary, at 3-4 (If a significant percentage of the population served is monolingual in a particular language, the material should be available in that language.)

### Practical Suggestions

An example of a creative approach to providing information about Consumer ADR is provided by a major university medical center's Health Care Dispute Resolution Program. The medical center provides prospective patients with a written explanation of mediation and arbitration procedures for resolution of health care-related disputes one month before they visit the center to complete the remaining paperwork. As the written materials explain, the program is voluntary; patients are not required to opt for the procedures as a condition to receiving treatment. Patients may contact the center for additional information regarding the processes.

For purposes of allowing Consumers access to information about dispute resolution programs, the AAA makes available an 800 customer service telephone number. In addition, the AAA, like some other Independent ADR Institutions, also has a World Wide Web site; it posts its rules and an explanation of its mediation and arbitration procedures on the Web site. A panel proposing reforms to a major HMO-sponsored arbitration system recommended the creation of an "ombudsperson program to assist members in navigating the system of dispute resolution." Kaiser Permanente Review and Recommendations 2.43.

### Principle 3. Independent and Impartial Neutral; Independent Administration

1. *Independent and Impartial Neutral.* All parties are entitled to a Neutral who is independent and impartial.

2. *Independent Administration.* If participation in mediation or arbitration is mandatory, the procedure should be administered by an Independent ADR Institution. Administrative services should include the maintenance of a panel of prospective Neutrals, facilitation of Neutral selection, collection and distribution of Neutral's fees and expenses, oversight and implementation of ADR rules and procedures, and monitoring of Neutral qualifications, performance, and adherence to pertinent rules, procedures and ethical standards.

3. *Standards for Neutrals.* The Independent ADR Institution should make reasonable efforts to ensure that Neutrals understand and conform to pertinent ADR rules, procedures and ethical standards.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

4.  *Selection of Neutrals.* The Consumer and Provider should have an equal voice in the selection of Neutrals in connection with a specific dispute.

5.  *Disclosure and Disqualification.* Beginning at the time of appointment, Neutrals should be required to disclose to the Independent ADR Institution any circumstance likely to affect impartiality, including any bias or financial or personal interest which might affect the result of the ADR proceeding, or any past or present relationship or experience with the parties or their representatives, including past ADR experiences. The Independent ADR Institution should communicate any such information to the parties and other Neutrals, if any. Upon objection of a party to continued service of the Neutral, the Independent ADR Institution should determine whether the Neutral should be disqualified and should inform the parties of its decision. The disclosure obligation of the Neutral and procedure for disqualification should continue throughout the period of appointment.

## Reporter's Comments

The concept of a fair, independent and impartial Neutral (or Neutral Panel) is enshrined in leading standards governing arbitration and mediation. *See Federal Arbitration Act* ' 10(a) (2); *Uniform Arbitration Act* ' 12(a) (2); *AAA Commercial Rules* 12, 13, 14, 19; *BBB Arbitration Rules* 6, 8. *The Joint Standards for Mediators* describe mediator impartiality as "central" to the mediation process and require mediators to conduct mediation in an impartial manner. *Joint Standards for Mediators*, Art. II; *Standards for Court-Connected Programs* ' 8.1.a. Similar policies animate standards requiring mediators to disclose conflicts of interest and to conduct the mediation in a fair manner. Joint Standards for Mediators, Arts. III, VI; *SPIDR Principles*, Principles 4.b., c., f.; 6.d., e., i.; *Standards for Court-Connected Programs* ' 8.1.b.

When Neutrals are appointed by a court or other organization, the appointing entity has an important obligation to ensure their impartiality. This obligation entails a reasonable level of oversight of Neutral performance. Comments to the *Joint Standards for Mediators* indicate that "[w]hen mediators are appointed by a court or institution, the appointing agency shall make reasonable efforts to ensure that mediators serve impartially." *Joint Standards for Mediators*, Art. II. *The Standards for Court-Connected Programs* therefore require courts to "adopt a code of ethical standards for mediators [covering, among other things, impartiality and conflict of interest], together with procedures to handle violations of the code." *Standards for Court-Connected Programs* ' 8.1. For these and other reasons, the integrity and impartiality of the administrative organization is also important; the growing use of arbitration and mediation in the Consumer context has also raised issues regarding the administration of such processes. *See, e.g., Engalla v. Permanente Med. Grp.*, 928 P.2d 903 (Cal. 1997). *See generally* Edward Dauer, *Engalla's Legacy to Arbitration,* ADR Currents, Summer 1997, at 1; *Principles for ADR Provider Organizations* (setting forth general principles of responsible practice for ADR Provider Organizations, "entities which hold themselves out as offering, brokering or administering dispute resolution services").

In addition to appointing Neutrals, administering institutions often perform many functions which have a direct impact on the conduct of the dispute resolution process, including functions sometimes performed by Neutrals. The consensus of the Advisory Committee was that the reality and perception of impartiality and fairness was essential in the case of Independent ADR Institutions as it was in the case of individual Neutrals. Thus, the Advisory Committee concluded that when an ADR Agreement mandates that parties resort to mediation or arbitration, the administering Independent ADR Institution should be independent of either party and impartial. *See, e.g., Kaiser Permanente Review and Recommendations 31* (recommending, first and foremost, the "creation of an independent, accountable administrator" for the Kaiser Permanente arbitration system to counter "perception of bias" raised by "self-administration"). *See also Principles for ADR Provider Organizations* (draft standards for organizations providing ADR services). For this and other

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL


AMERICAN ARBITRATION ASSOCIATION®

reasons, this Principle may be the single most significant contribution of the Protocol. In the long term, moreover, the independence of administering institutions may be the greatest challenge of Consumer ADR.

Broad disclosure of actual or potential conflicts of interest on the part of prospective Neutrals is critical to the real and perceived fairness of ADR. Although consenting parties have considerable freedom to choose Neutrals, including those with experience in a particular industry or profession, the key to informed consent is broad disclosure by prospective Neutrals. Therefore, a long line of authority under federal and state arbitration statutes establishes the principle that an arbitrator's failure to disclose certain relationships or other facts which raise issues of partiality may result in reversal of an arbitration award. *See generally* III *Federal Arbitration Law* Ch. 28 (discussing legal and ethical rules governing arbitrator impartiality). The principle of disclosure is embodied in leading arbitration rules and ethical standards. *See AAA Commercial Rule* 19, *NASD Code* ' 10312; *BBB Arbitration Rules* 6, 8.

*The Joint Standards for Mediators* mandate disclosure of "all actual and potential conflicts of interest reasonably known to the mediator" including any "dealing or relationship that might create an impression of possible bias." *Joint Standards for Mediators,* Art. III. Thereafter, the mediator must await the parties' agreement to proceed with mediation. The same concerns require mediators to identify and avoid conflicts during (and even after) mediation. *Id. Cf. Employment Due Process Protocol* ' C.4. (mediators and arbitrators have a duty to disclose any relationship which might reasonably constitute or be perceived as a conflict of interest); *SPIDR Principles*, Principles 4.b., c., f.; 6.d.,e., i.; *Standards for Court-Connected Programs* ' 8.1.b.

Although they did not establish it as a requirement under these Principles, most members of the Advisory Committee endorsed the concept of a "list selection" process similar to that employed by the AAA. *See AAA Commercial Rule* 14. Under this process, the Independent ADR Institution provides each of the parties with lists of prospective Neutrals and invites the parties to identify and rank acceptable individuals. Mutually acceptable Neutrals are thereby identified. The AAA approach served as the model for other ADR standards. *See, e.g., Employment Due Process Protocol* ' C.3.; Securities Industry Conference on Arbitration, *List Selection Rule* (Final Draft, Sept. 18, 1997) (proposed by SICA as modification to Section 8 of the *Uniform Code of Arbitration*); Proposed Rule Change by National Association of Securities Dealers, File No. SR-NASD097 (proposed by NASD as modification to Rules 10310 and 10311 of the NASD Code of Arbitration Procedure). The concern was expressed that the list selection approach may create a financial tie between Neutrals in the pool and Providers, who will be "repeat players" in the ADR Program. Such considerations may mandate, among other things, a larger panel of Neutrals, rotating assignments, or disclosure of past awards rendered by arbitrators.

In the interest of informed selection, the Advisory Committee recommends that parties be provided with or have access to some information regarding recent ADR proceedings conducted by prospective Neutrals. *Cf. Employment Due Process Protocol* ' B.3 (recommending that parties be provided with names, addresses, and phone numbers of party representatives in a prospective arbitrator's six most recent cases to aid in selection).

The dictates of fairness also extend to the conduct of ADR sessions. Thus, for example, arbitrators generally are forbidden from communicating with parties outside of hearings. *See* III *Federal Arbitration Law* ' 32.4. Similarly, standards for mediator conduct demand impartiality. *See, e.g., Standards for Court-Connected Programs* ' 8.1.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL


AMERICAN ARBITRATION ASSOCIATION®

Although the rules and procedures of an ADR Program and oversight by the Independent ADR Institution are important in assuring the impartiality of Neutrals, it is also essential that Neutrals be bound to perform in accordance with recognized ethical standards. In the case of arbitrators, the leading ethical standard is the *Code of Ethics for Arbitrators in Commercial Disputes* (current version). Similarly, ethical standards governing mediator eligibility also require impartiality. *See, e.g., Standards for Court-Connected Programs* ' 8.1. It is the responsibility of the Independent ADR Institution to develop or adopt ethical standards for Neutrals and to ensure that Neutrals understand and conform to applicable standards.

Some arbitration procedures provide for a "tripartite" panel in which each party appoints its own "party-arbitrator," and the two party-arbitrators select a third arbitrator to complete the panel. *See generally* III *Federal Arbitration Law* ' 28.4; see also Alan Scott Rau, *Integrity in Private Judging,* 38 S. Tex. L. Rev. 485, 505-08 (1997) (noting problems with party-arbitrator concept). For a number of reasons, the Advisory Committee believed such practices should be avoided in the Consumer sphere, and that all arbitrators should be neutral. *Cf. Kaiser Permanente Review and Recommendations* 42 (expressing serious concerns regarding tripartite panel approach).

## Practical Suggestions

Independent ADR Institutions should develop procedures which are appropriate to each of the ADR Programs they administer. A helpful model for program administrators is the User Advisory Committee now being utilized by the AAA to establish procedures and policies for ADR in the areas of employment, construction, health care, and other transactional settings. *Cf. Kaiser Permanente Review and Recommendations* 32 (recommending "on-going, volunteer Advisory Committee" comprised of representatives of various interest groups, including "an appropriate consumer advocacy organization" to consult in development of arbitration program). Such entities should provide a forum in which representatives of Consumers and Providers cooperate in the development and implementation of policies and procedures governing an ADR program, including selection of Neutrals.

For selection of Neutrals, the Independent ADR Institution might utilize a list procedure similar to that used by the AAA. The list of prospective Neutrals should include pertinent biographical information, including the names of parties and representatives involved in recent arbitration proceedings handled by the prospective Neutral. *Cf. Employment Due Process Protocol* ' B.3 (recommending that parties be provided with names, addresses, and phone numbers of party representatives in a prospective arbitrator's six most recent cases to aid in selection). Each party should be afforded discretion to reject any candidate with or without cause. Failing agreement on a Neutral or panel of Neutrals in this fashion, the Neutral should be appointed by the Independent ADR Institution, subject to objection for good cause.

## Principle 4. Quality and Competence of Neutrals

All parties are entitled to competent, qualified Neutrals. Independent ADR Institutions are responsible for establishing and maintaining standards for Neutrals in ADR Programs they administer.

## Reporter's Comments

Organizations providing ADR services for Consumer transactions should have a continuing obligation to monitor the quality of the services they provide. This obligation requires that they establish and maintain standards for Neutrals within

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

the program which are appropriate to the issues or disputes being addressed. The SPIDR Commission on Qualifications calls upon private as well as public programs offering ADR services to set and monitor program performance. *See SPIDR Principles,* Principle 6, at 3-4. Likewise, the *Standards for Court-Connected Programs* call upon courts to "ensure that the mediation programs to which they refer cases are monitored adequately…and evaluated [periodically]." *Standards for Court-Connected Programs '* 6.0.

The most critical element in ADR quality control is the establishment and maintenance of standards of competence for Neutrals within the program. "Competence" refers to "the acquisition of skills, knowledge and…other attributes" deemed necessary to assist others in resolving disputes in a particular setting. *See SPIDR Report on Qualifications* at 6. In 1989, the SPIDR Commission on Qualifications published a list of general skills and areas of knowledge that should be considered by groups establishing competency standards. *See SPIDR Principles,* Principle 11, at 4-7.

While ensuring the competence of Neutrals is always important, it is particularly "critical in contexts where party choice over the process, program or neutral is limited" a reality of many Consumer ADR programs. *See SPIDR Report on Qualifications* at 5; *SPIDR Principles,* Principle 3 at 2 (extent to which Neutral qualifications are mandated should vary by degree of choice parties have over dispute resolution process, ADR Program, and Neutral). The SPIDR Commission on Qualifications requires private programs to, among other things, establish clear criteria for the selection and evaluation of Neutrals and conduct periodic performance evaluations. *SPIDR Principles* at 3. See also SPIDR Report on Qualifications at 6 (Neutrals, professional associations, programs and Consumers should all have responsibility for addressing and assessing Neutral performance); American Bar Ass'n Young Lawyers Div. & Special Comm. On Alternative Means of Dispute Resolution, *Resolving Disputes: An Alternative Approach, A Handbook for Establishment of Dispute Settlement Centers* 32 (1983) (noting importance of post-mediation evaluation by administering agency).

The Advisory Committee concluded that it would be inappropriate (and, probably, impossible) to set forth a set of universally applicable qualifications for Neutrals in Consumer disputes. The Advisory Committee's conclusions parallel those of other groups establishing broad standards for the conduct of ADR. *See, e.g., SPIDR Report on Qualifications; SPIDR Principles* at 1, 2. As the SPIDR Commission on Qualifications determined, Neutral qualifications are best established by joint efforts of concerned "stakeholders" in specific contexts. *See, e.g., Kaiser Permanente Review and Recommendations* 35-36 (recommending involvement of advisory committee in development of arbitrator qualifications).

It is important for Consumers to have a voice in establishing and maintaining standards of competence and quality in ADR programs. The SPIDR Commission on Qualifications recently observed that "consumers…share a responsibility with programs, [Neutrals]…and associations to join in evaluating and reporting on the performance of [Neutrals]…and programs and contributing to the development of policies and standards on qualifications." *SPIDR Report on Qualifications, '* G.2. at 9. *See also SPIDR Principles,* Principle 2 at 2 (private entities making judgments about neutral qualifications should be guided by groups that include representatives of consumers of services). Although Neutral expertise is traditionally a hallmark of arbitration, technical or professional experience often carries with it the perception if not the reality of bias. From the Consumer's perspective, therefore, an arbitrator who shares the professional or commercial background of a Provider may not be the ideal judge. *See, e.g., Broemmer v. Abortion Serv. of Phoenix,* 840 P.2d 1013 (Ariz. 1992) (adhesion arbitration agreement provided by abortion clinic which, among other things, required arbitrator to be a licensed obstetrician/gynecologist, was unenforceable as beyond reasonable expectations of patient).

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



An Independent ADR Institution's responsibility for the qualifications of Neutrals in a particular Consumer ADR program dictates the development of an appropriate training program. Ideally, the training should include a mentoring program with experienced Neutrals as well as coverage of applicable principles of Consumer law. *See* Mark E. Budnitz, *Arbitration of Disputes Between Consumers and Financial Institutions: A Serious Threat to Consumer Protection*, 10 Ohio St. J. on Disp. Res. 267, 315 (arbitrators need special legal expertise to address statutory issues respecting consumer claims against financial institutions). Successful completion of such training should be reflected in the information on prospective Neutrals furnished to the parties prior to selection. *Cf. Employment Due Process Protocol* ' C.2.

The Advisory Committee generally supports the concept of broad choice in selection of Neutrals, and recognizes the right of Consumers and Providers to jointly select any Neutral in whom the parties have requisite trust, even one who does not possess all of the qualifications recommended by an ADR Program. *Cf. Employment Due Process Protocol* ' C.1.; *Standards for Court-Connected Programs* ' 13.4 ("Parties should have the widest possible latitude in selecting mediators, consistent with public policy."). This assumes, of course, that both parties have a true choice in the matter, that they are duly informed about the background and qualifications of the Neutrals proposed, and that all such Neutrals have made full disclosure of possible conflicts of interest in accordance with Principle 3.

### Practical Suggestions

Elements of effective quality control include the establishment of standards for Neutrals, the development of a training program, and a program of ongoing performance evaluation and feedback. Because the requirements of parties will vary with the circumstances, it will be necessary to establish standards for Neutrals in an ADR Program with due regard for the specific needs of users of the program. As noted in connection with Principle 3, a helpful model for program administrators is the User Advisory Committee now being utilized by the AAA to establish procedures and policies for ADR in the areas of employment, construction, health care, and other transactional settings. Such entities could bring Consumer and Provider representatives together to assist in the development and implementation of programs to train, qualify and monitor the performance of Neutrals.

### Principle 5. Small Claims

Consumer ADR Agreements should make it clear that all parties retain the right to seek relief in a small claims court for disputes or claims within the scope of its jurisdiction.

### Reporter's Comments

Disputes arising out of Consumer transactions often involve relatively small amounts of money. Such disputes may be well-suited to resolution by informal ADR processes and judicial small claims procedures.

Within the judicial system, the least expensive and most efficient alternative for resolution of claims for minor amounts of money often lies in small claims courts. These courts typically provide a convenient, less formal and relatively expeditious judicial forum for handling such disputes, and afford the benefit, where necessary, of the coercive powers of the judicial

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

system. ==The Advisory Committee concluded that access to small claims tribunals is an important right of Consumers which should not be waived by a pre-dispute ADR Agreement.==

## Practical Suggestions

Because, for cases involving small amounts of money, parties retain the option of an oral hearing in small claims court, it may be reasonable for the ADR Agreement to provide for arbitration of small claims without a face-to-face hearing. Such alternatives may include "desk arbitration," which involves the making of an arbitration award based on written submissions; proceedings conducted by telephone or electronic data transmission; and other options. *See* Principle 12.

Mediation conducted by telephone conference call has also proven effective in resolving Consumer disputes. At least one major auto manufacturer has successfully used this technique to resolve warranty claims.

## Principle 6. Reasonable Cost

1. *Reasonable Cost.* Providers of goods and services should develop ADR programs which entail reasonable cost to Consumers based on the circumstances of the dispute, including, among other things, the size and nature of the claim, the nature of goods or services provided, and the ability of the Consumer to pay. In some cases, this may require the Provider to subsidize the process.

2. *Handling of Payment.* In the interest of ensuring fair and independent Neutrals, the making of fee arrangements and the payment of fees should be administered on a rational, equitable and consistent basis by the Independent ADR Institution.

## Reporter's Comments

A fundamental principle of our civil justice system is that a person should never be denied access to a court due to an inability to pay court costs. The reality is that the public justice system is heavily subsidized, and that users pay only a small fraction of the actual cost of trial and related procedures. Moreover, indigent litigants may be afforded relief from even these small fees. This principle has been extended in many cases to court-connected ADR programs, in which courts defray all or part of the expenses of mediation or court-connected arbitration. *See Standards for Court-Connected Programs,* '' 5.1.a, 13.0 ("[c]ourts should impose mandatory attendance only when the cost of mediation is publicly funded"; "[c]ourts should make mediation available to parties regardless of the parties' ability to pay"). According to data from the National Center for State Courts' ADR database, approximately 60% of programs did not depend upon the parties to pay mediator fees for contract and tort cases; no programs charged user fees for mediation of small claims. *See Standards for Court-Connected Programs* ' 13.2., Commentary, at 13-4.

Similar policies have prompted various private ADR tribunals to institute mechanisms for waiving filing fees and other administrative expenses in appropriate cases. *See, e.g., NASD Code* ' 10332 (permitting Director of Arbitration to waive fees or deposits for parties in securities arbitration); *Nazon v. Shearson Lehman Bros., Inc.,* 832 F. Supp. 1540, 1543 (S.D. Fla. 1993) (employee, although required to bear expenses of pursuing civil rights claim in arbitration, might seek waiver of fees under NASD rules). One federal court of appeals recently concluded that to be enforceable with respect to actions under statutes governing employment discrimination, an arbitration agreement must not "require employees to pay

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum."
*Cole v. Burns Int'l Security Serv.,* 105 F.3d 1465, 1482-84 (D.C. Cir. 1997).

Due to the wide range of transactions and the equally broad spectrum of conflict in the Consumer arena, it is inappropriate to mandate bright-line rules regarding ADR costs. In determining what is reasonable, consideration should be given to the nature of the conflict (including the size of monetary claims, if any), and the nature of goods or services provided. In some cases, it may be possible to fulfill the principle of reasonable cost by the use of the Internet, the telephone, other electronic media, or through written submissions. *See, e.g.,* Michael F. Altschul & Elizabeth S. Stong, *AAA Develops New Arbitration Rules to Resolve Wireless Disputes,* ADR Currents, Fall 1997, at 6. Abbreviated procedures may be particularly appropriate in the context of small monetary claims, where there is always the alternative of a face-to-face hearing in small claims court. *See* Principle 5.

In some cases, the need to ensure reasonable costs for the Consumer will require the Provider of goods or services to subsidize the costs of ADR which is mandated by the agreement. Indeed, many companies today deem it appropriate to pay most or all of the costs of ADR procedures for claims and disputes involving individual employees. *See* Mei L. Bickner, et al, *Developments in Employment Arbitration,* 52 Disp. Res. J. 8 (1997). The consensus of the Committee was that if participation in mediation is mandated by the ADR agreement, the Provider should pay the costs of the procedure, including mediator's fees and expenses. The Committee considered, and ultimately rejected, the alternative of establishing specific requirements for Provider subsidization of the cost of arbitration procedures, other than to conclude that the Provider of goods and services should ensure the consumer a basic minimum arbitration procedure appropriate to the circumstances.

In some cases, an arbitrator may find it appropriate to defray the cost of Consumer participation in arbitration by an award of costs. Some lemon laws provide for such relief. *See, e.g., Chrysler Corp. v. Maiocco,* 209 Conn. 579, 552 A.2d 1207 (1989) (applying Connecticut Lemon Law); *Walker v. General Motors Corp.,* 160 Misc.2d 903, 611 N.Y.S.2d 741 (1994) (applying provision of New York Lemon Law permitting "prevailing consumer" to receive award of attorney's fees); *General Motors Corp. v. Fischer,* 140 Misc.2d 243, 530 N.Y.S.2d 484 (1988) (same). In some cases, it may be appropriate for an arbitrator in a Consumer case to render an award of attorney's fees pursuant to statute or in other cases where a court might do so. Without such an award, however, the Committee does not support the proposition that Providers are required to subsidize Consumers' attorney's fees for ADR.

At the same time, there are legitimate concerns that having the Provider pay all or a substantial portion of neutral's fees and expenses may undermine the latter's impartiality. For this reason, as observed in the *Employment Due Process Protocol,* "[i]mpartiality is best assured by the parties sharing the fees and expenses of the mediator and arbitrator." *Employment Due Process Protocol* ' 6. *See also* Stephen J. Ware, *Arbitration and Unconscionability After* Doctor's Associates, Inc. v. Casarotto, 31 Wake Forest L. Rev. 1001, 1023 (1996). *But see* Alan Scott Rau, *Integrity in Private Judging,* 38 S. Tex. L. Rev. 485, 528 (1997). Therefore, the Advisory Committee concludes that Consumers should have the option to share up to half of the Neutral's fees and expenses. In addition, unless the parties agree otherwise after a dispute arises, the handling of fee arrangements and the payment of fees should be conducted by the Independent ADR Institution. The latter, "by negotiating the parties' share of costs and collecting such fees, might be able to reduce the bias potential

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



of disparate contributions by forwarding payment to the mediator and/or arbitrator without disclosing the parties' share therein." *Employment Due Process Protocol* ' 6.

Some ADR Programs serving Consumers are staffed wholly or partly by unpaid volunteers. *See, e.g., BBB Arbitration Rules* at 2. The use of such programs, including community dispute resolution centers, may be a satisfactory means of addressing cost concerns associated with Consumer ADR, particularly in cases involving low stakes. However, concerns have been expressed by some authorities regarding overdependence on volunteer Neutrals. *See Standards for Court-Connected Programs* ' 13.1, Commentary, at 13-2 (warning of dangers of exclusive reliance on volunteers in ADR programs). Care must be taken by those responsible for overseeing such programs to make certain that lower cost does not come at the expense of adequately qualified Neutrals.

### Practical Suggestions

In the event that an ADR procedure is mandated by the Provider of goods and services and the Consumer demonstrates an inability to pay all or part of the costs of the procedure, the Provider should front such costs subject to allocation in the arbitration award or mediation settlement.

In some cases, it may be possible to fulfill the principle of reasonable cost by the use of the Internet, the telephone, other electronic media, or through written submissions. *See, e.g.,* Michael F. Altschul & Elizabeth S. Stong, *AAA Develops New Arbitration Rules to Resolve Wireless Disputes,* ADR Currents, Fall 1997, at 6.

## Principle 7. Reasonably Convenient Location

In the case of face-to-face proceedings, the proceedings should be conducted at a location which is reasonably convenient to both parties with due consideration of their ability to travel and other pertinent circumstances. If the parties are unable to agree on a location, the determination should be made by the Independent ADR Institution or by the Neutral.

### Reporter's Comments

The Advisory Committee concludes that ADR proceedings should take place at a location that is reasonably convenient to all parties.

Flexibility in choosing a hearing location is a theoretical advantage of consensual conflict resolution, permitting minimal cost and inconvenience to all parties. On the other hand, location terms may put one party at a great disadvantage, significantly increasing the cost and logistical complexity of dispute resolution. This is particularly true with regard to binding arbitration, which may involve the participation of multiple witnesses as well as the parties and their representatives. *See* III *Federal Arbitration Law* ' 32.8.3.

Typically, contractual agreements which provide that arbitration hearings will be conducted in a particular place are honored by the courts. *See, e.g., Management Recruiters Int'l,* Inc. v. Bloor, 129 F.3d 851 (6th Cir. 1997) (under *Federal Arbitration Act,* forum expectations of parties in arbitration agreement are enforceable, and may not be upset by state

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

law); *Bear Stearns & Co. v. Bennett*, 938 F.2d 31, 32 (2nd Cir. 1991) (noting "prima facie validity" of forum-selection clauses, including those in arbitration agreements); *Snyder v. Smith*, 736 F.2d 409, 419 (7th Cir.), cert. denied, 469 U.S. 1037, 105 S. Ct. 513, 83 L. Ed.2d 403 (1984) (courts must give effect to freely-negotiated arbitration clause in commercial agreement). *See* II *Federal Arbitration Law* ' 24.2.3.4 (discussing *Federal Arbitration Act*). *Cf. Carnival Cruise Lines, Inc. v. Shute*, 449 U.S.585,111 S.Ct. 1522, 113 L. Ed. 2d 622 (1991) (judicial forum selection clause in terms on cruise ship passenger ticket enforceable); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 92 S. Ct. 1907. 32 L.Ed.2d (1972) (judicial forum selection clause is prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances).

The same is true of cases where the parties agree to a process for selecting location, such as that provided by the *AAA Rules. See, e.g., AAA Commercial Rule* 11. There is authority for pre-award challenges to location selection mechanisms. *Aerojet-General Corp. v. AAA*, 478 F.2d 248 (9th Cir. 1973) (pre-award judicial review appropriate where choice of arbitration locale not made in good faith and one or more parties are faced with severe irreparable injury). Again, however, such action is likely to be deemed appropriate only in extreme cases. *See Seguro de Servicio de Salud v. McAuto Systems,* 878 F.2d 5, 9 n.6 (1st Cir. 1989); *S.J. Groves & Sons Co. v. AAA*, 452 F. Supp. 121, 124 (D. Minn. 1978).

Some courts, however, have identified limits on locational designations in judicial forum selection provisions. *See* Mark E. Budnitz, *Arbitration of Disputes Between Consumers and Financial Institutions: A Serious Threat to Consumer Protection,* 10 Ohio St. J. on Disp. Res. 267, 292; David S. Schwartz, *Enforcing Small Print to Protect Big Business: Employee and Consumer Rights Claims in an Age of Compelled Arbitration,* 1997 Wis. L. Rev. 36, 121 n.366. Forum selection clauses may be overcome if it can be demonstrated that their incorporation in the contract was the result of fraud, undue influence, or an extreme disparity in bargaining power, or if the selected forum is so inconvenient that it would effectively deprive a party of a day in court. *See, e.g., Kubis & Persyk Assoc., Inc. v. Sun Microsystems, Inc.,* 146 N.J. 176, 188-97, 680 A.2d 618, 624-29 (1996) (reviewing cases and recognizing limits on enforceability of forum selection clauses); *Moses v. Business Card Expr., Inc.,* 929 F.2d 1131, 1136-39 (6th Cir.), cert. denied, 502 U.S. 821, 112 S. Ct. 81, 116 L.Ed.2d 54 (1991) (in considering change of venue motion, forum selection clause must be considered along with convenience of parties and witnesses and overall fairness); *Hoffman v. Minuteman Press Int'l, Inc.,* 747 F. Supp. 552 (W.D. Mo. 1990) (denying venue change in accordance with forum selection agreement on basis of extreme hardship and alleged fraud in the inducement); *Cutter v. Scott & Fetzer Co.,* 510 F. Supp. 905, 908 (E.D. Wis. 1981) (refusing to enforce forum selection clause on basis of state Fair Dealership Law, and observing that clause was not the subject of negotiation). *See also Restatement (Second) of Conflict of Laws* ' 80 (1969) (agreement regarding place of action will be given effect unless it is unfair or unreasonable); Benjamin Levin & Richard Morrison, *Kubis and the Changing Landscape of Forum Selection Clauses*, 16 Franchise. L.J. 97 (1997) (discussing trend to limit enforceability of forum selection clauses in franchise agreements by statute and case law); Donald B. Brenner, *There is a Developing Trend Among Courts of Making Choice of Forum Clauses in Franchise Agreements Presumptively Invalid*, 102 Com. L.J. 94 (1997) (same).

In the course of finding a judicial forum selection provision in a form franchise agreement presumptively invalid, the New Jersey Supreme Court recognized that the following factors may be relevant to enforceability: (1) whether the provision is the product of arm's length negotiations or is effectively imposed by a party with disproportionate bargaining power; and (2) whether the provision provides an "indirect benefit to…[the stronger party by making] litigation more costly and cumbersome for economically weaker…[parties] that often lack the sophistication and resources to litigate effectively

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



a long distance from home." *Kubis,* 146 N.J. at 193-94, 680 A.2d at 626-27. *See also Model Choice of Forum Act ' 3(4) Comment* (1968) ("A significant factor to be considered in determining whether there was an abuse of economic power or other unconscionable means' [sufficient to deny enforcement to a forum selection clause] is whether the choice of forum agreement was contained in an adhesion, or take-it-or-leave-it' contract.").

Such considerations may also affect the enforceability of an agreement to arbitrate. *See Patterson v. ITT Consumer Financial Corp.,* 14 Cal. App. 4th, 1659, 18 Cal. Rptr.2d 563 (1993) (arbitration provisions in loan agreements requiring California consumers to arbitrate in Minnesota were unconscionable).

Similar concerns have led some states to enact laws placing geographical limitations on the situs of arbitration. *See, e.g., Hambell v. Alphagraphics Franchising Inc.,* 779 F. Supp. 910 (E.D. Mich. 1991) (provision in franchise agreement for arbitration to take place outside state is void and unenforceable under Mich. Stat. Ann. ' 19.854(27) (f) (1984)); *Donmoor, Inc. v. Sturtevant,* 449 So.2d 869 (Fla. Ct. App. 1984) (clause in contract providing for arbitration in another state is unenforceable). Of course, such laws may be preempted by federal substantive law within the scope of the *Federal Arbitration Act. See* Levin & Morrison, *supra,* at 115-16.

In light of concerns such as the foregoing which are also relevant in the consumer arena, the Advisory Committee concluded that contractual ADR provisions should include a commitment to conduct ADR at a "reasonably convenient location." Some members of the Advisory Committee favored setting an arbitrary mileage limit (i.e. "no more than 50 miles from the place where the transaction occurred") while others advocated the nearest large city. Others pointed out that parties sometimes relocate. There was general agreement, however, that an agreed-upon process for independent determination of the locale if the parties fail to agree would be fair and equitable to both parties. *See, e.g., AAA Rule* 11; *Uniform Code of Arbitration ' 9; NASD Code of Arbitration Procedure '* 10315. A similar function may be performed by the arbitrator or other duly appointed Neutral. (The AAA Rules already accord arbitrators the authority to set specific sites for arbitration hearings. See AAA Rule 21.)

In many cases, it may be possible to minimize the need for long distance travel and attendant expenses through the use of telephonic communications and submission of documents. An example of the application of such devices is the Expedited Procedures of the *AAA Rules,* which are generally applied to claims of $50,000 or less. *See AAA Rules* 9, 53-57. *See also Uniform Code of Arbitration '* 2. Telephonic mediation has long been a feature of some lemon law programs, and is currently being used in Consumer ADR by the National Futures Association (NFA). The National Association of Securities Dealers (NASD) is currently conducting a pilot program utilizing telephonic mediation.

Recent projects sponsored by the Better Business Bureau, the American Arbitration Association, and other organizations suggest the possibilities of online conflict resolution for online transactions as well as other kinds of disputes. *See generally* George H. Friedman, *Alternative Dispute Resolution and Emerging Online Technologies: Challenges and Opportunities,* 19 Hastings Comm. & Ent. L.J. 695 (1997).

<mark>If, as proposed, Consumers have the alternative of pursuing relief in a small claims court of competent jurisdiction, many concerns associated with long distance travel will be obviated with regard to small claims.</mark>

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

### Practical Suggestions

Unless a convenient location can be specifically identified in the ADR agreement, the location should be left to the agreement of the parties after a dispute has arisen. The rules governing ADR under the agreement should establish a process for determination of the location by an independent party (such as a Neutral or the Independent ADR Institution) if the parties cannot agree on a location.

In some cases, it may be reasonable to conduct proceedings by telephone or electronic data transmission, with or without submission of documents. *See, e.g.,* Principle 12. Such options may be particularly desirable in the case of arbitration of small claims, since the parties have the choice of going to small claims court. See Principle 5.

## Principle 8. Reasonable Time Limits

ADR proceedings should occur within a reasonable time, without undue delay. The rules governing ADR should establish specific reasonable time periods for each step in the ADR process and, where necessary, set forth default procedures in the event a party fails to participate in the process after reasonable notice.

### Reporter's Comments

A primary impetus for conflict resolution outside the court system is the potential for relatively speedy and efficient resolution of disputes. From the Consumer's perspective, moreover, the expectation of a reasonably prompt conclusion is likely to be, along with cost savings, the leading perceived advantage of consensual mediation or arbitration. *See Madden v. Kaiser Foundation Hospitals,* 17 Cal.3d 699, 711, 131 Cal. Rptr. 882, 552 P.2d 1178 (1976) (speed and economy of arbitration, in contrast to the expense and delay of jury trial, could prove helpful to all parties).

The principle of relatively prompt, efficient conflict resolution underlies standards governing the conduct of Neutrals. Mediators are admonished that "[a] quality process requires a commitment by the mediator to diligence…" *Joint Standards for Mediators*, Art. VI. *The Joint Standards for Mediators* also comment that "[m]ediators should only accept cases when they can satisfy the reasonable expectations of the parties concerning the timing of the process." Id.

A basic requirement is that the rules governing ADR establish and further the basic principle of conflict resolution within a reasonable time. This means not only that the rules should set forth specific time periods for various steps in the ADR process, but that default rules come into play if a party fails to participate in the manner required by the rules after due notice. This principle is embodied in leading ADR standards, including the *AAA Commercial Rules. See, e.g.,* Rules 6, 8, 11, 13, 14, 15, 21, 35, 36, 41. *See also BBB Arbitration Rule* 27 ("BBB shall make every effort to obtain a final resolution of your complaint within 60 days, unless state or federal law provides otherwise. This time period may be extended at the request of the customer.").

Of course, it is not enough that the agreement places strict time limitations on procedural steps if these limitations are not effectively enforced a likely occurrence when an ADR Program is not independent of the Provider. Extreme disparity between stipulated time limits and actual practice under arbitration rules may render an arbitration agreement

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

unenforceable, as discussed at length in a recent California Supreme Court decision. *See generally Engalla v. Permanente Med. Grp., Inc.,* 938 P.2d 903 (Cal. 1997). The court pointedly observed,

[M]any large institutional users of arbitration, including most health maintenance organizations (HMO's), avoid the potential problems of delay in the selection of arbitrators by contracting with neutral third party organizations, such as the American Arbitration Association (AAA). These organizations will then assume responsibility for administering the claim from the time the arbitration demand is filed, and will ensure the arbitrator or arbitrators are chosen in a timely manner.

*Id.* at 975-76. In response to this decision, Kaiser appointed an advisory panel to propose reforms to its arbitration program. *See Kaiser Permanente Review and Recommendations* 33-34 (recommending establishment of and adherence to stated arbitration process deadlines).

Similarly, courts interpreting state lemon laws have acknowledged the right of Consumers to forgo arbitration and sue in court when the statutory period for the lemon law remedy elapsed without a remedy through no fault of their own. *See, e.g., Harrison v. Nissan Motor Corp.,* 111 F.3d 343 (3rd Cir. 1997) (court suit permissible where BBB failed to conduct arbitration within stipulated period); *Ford Motor Co. v. Ward,* 577 So.2d 641 (1991) (Consumer not required to exhaust arbitration procedures before bringing suit where dealer made it impossible for Consumer to arbitrate).

Practical Suggestions

When a Consumer dispute involves a small amount of money and relatively straightforward issues, it is reasonable to assume that an out-of-court resolution of such issues should be relatively quick. In such cases, it may be appropriate to develop expedited procedures and to set outside time limits on ADR Processes. Thus, for example, "Fast Track" arbitration procedures for construction disputes provide that "[t]he arbitration shall be completed by settlement or award within sixty (60) days of confirmation of the arbitrator's appointment, unless all parties agree otherwise or the arbitrator extends this time in extraordinary cases…" *AAA Construction Procedures,* ' F-12. The rules also require the award to be rendered within seven days from the closing of the hearing. *See id.,* ' F-11.

Similarly, the *AAA Wireless Rules* set forth Fast Track procedures for matters involving less than $2,000 in claims or counterclaims. The Fast Track contemplates a "desk" arbitration procedure involving a hearing on documents; a limit of one seven-day extension on the time to respond to a claim or counterclaim; notice by telephone, electronic mail and other forms of electronic communication and by overnight mail, shortened time limits to select an arbitrator; no discovery except in extraordinary cases; a shortened time limit for rendition of award; and a time standard which sets a goal of 45 days from appointment of the arbitrator to award.

Principle 9. Right to Representation

All parties participating in processes in ADR Programs have the right, at their own expense, to be represented by a spokesperson of their own choosing. The ADR rules and procedures should so specify.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

#### Reporter's Comments

==The right to be counseled by an attorney or other representative is an important one that is frequently reflected in standard rules governing ADR proceedings. *See, e.g., AAA Commercial Rule* 22; *NASD Code* ' 10316; *BBB Arbitration Rule* 9.==

The Advisory Committee adapted pertinent provisions of the *Employment Due Process Protocol. See Employment Due Process Protocol* ' B.1.

In the interest of full disclosure of potential conflicts of interest on the part of Neutrals, the Advisory Committee recommends that the names and affiliations of lawyers and other representatives of each party be communicated to prospective Neutrals and to all parties prior to selection of Neutrals.

As previously noted, the Advisory Committee recognizes that the cost of legal services should be borne by the parties who are receiving the services, and Providers should not be expected to subsidize the cost of legal representation for Consumers. There may, however, be situations where an arbitrator awards attorney's fees in circumstances where they would be available in court. See Commentary to Principle 6.

The Advisory Committee recognizes that the involvement of non-attorney representatives in some forms of binding arbitration has raised issues respecting the unauthorized practice of law. The Committee takes no position regarding these issues.

#### Practical Suggestions

Although the cost of legal services should be borne by the parties who are receiving the services, Independent ADR Institutions should provide Consumers with information regarding referral services and other institutions which might offer assistance in locating and securing competent spokespersons, such as bar associations, legal service associations, and Consumer organizations.

## Principle 10. Mediation

The use of mediation is strongly encouraged as an informal means of assisting parties in resolving their own disputes.

#### Reporter's Comments

The increasing popularity of mediation has been a primary impetus for the revolution in conflict resolution approaches. Mediation describes a range of processes in which an impartial person helps disputing parties to communicate and to make voluntary, informed choices in an effort to resolve their dispute. The rapid growth of mediation may be attributed to its informality, flexibility, and emphasis on the particular needs of disputing parties. For this reason, mediation is uniquely adaptable to a wide spectrum of controversies.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



The widespread use of mediation in court-connected programs inspired the development of a set of national standards for such endeavors. *See generally Standards for Court-Connected Programs.*

Parallel developments are occurring in the private sphere. Recently, the leading standard construction industry contract was modified to require mediation as an element in project conflict resolution, necessitating modification of related AAA rules. *See AAA Construction Procedures.*

Advisory Committee members agreed that mediation should be encouraged as a valuable intervention strategy, but differed as to the propriety and reasonableness of Provider-drafted ADR Agreements in Consumer contracts which require Consumers to participate in mediation. Those unopposed to such provisions, a majority of Advisory Committee members, noted that mediation offers significant potential advantages and relatively few risks to participants. Particularly where the Provider subsidizes mediation, they reasoned, the prospective benefits to Consumers far outweigh the costs. Those expressing concerns regarding "mandatory" mediation adhere to the view that the choice to participate in settlement discussions should be made voluntarily, and only after conflict arises. Other concerns relate to the cost of mediation, the quality of mediators, the likelihood that not all disputes will be appropriate for mediation, and the lack of understanding of mediation processes (including an understanding of the role of the neutral intervener) on the part of many Consumers. *Cf. Standards for Court-Connected Programs '* 5.0 (courts should impose mandatory attendance in court-connected mediation only when the cost of mediation is publicly funded, the mediation program is of high quality, and other requirements are met); *SPIDR Report on Court-Mandated ADR* at 2-3.

Encouragement of the use of mediation involves, among other things, educating Consumers and their attorneys about the process. *See* Principle 2 "Access to Information Regarding ADR Program." *See also SPIDR Principles* at 6 ("It is the responsibility of…private programs offering dispute resolution services to define clearly the services they provide…[and provide information about the program and neutrals to the parties.]"). At a minimum, Consumers should be provided with (or have immediate access to) written information to explain mediation. As a rule, such information should be in the same language as the principal contract for goods or services. *Cf. Standards for Court-Connected Programs '* 3.2.b., Commentary, at 3-4 (If a significant percentage of the population served is non-English-speaking, the material should be available in other languages as well.) *See* Principle 2.

Education of users should also include some treatment of the distinctive styles and strategies employed by mediators. Today, mediators handling commercial disputes sometimes employ a facilitative, non-directive approach to problem-solving; in other situations, a more directive approach may be employed. *See generally* Leonard L. Riskin, *Understanding Mediators' Orientations, Strategies, and Techniques: A Grid for the Perplexed,* 1 Harv. Negotiation L. Rev. 7 (1996) (providing a graphic tool for analyzing mediator approaches). Participants need to decide in advance of selection the approach they want a mediator to adopt. The Independent ADR Institution should advise the parties regarding the possibility of interviewing prospective mediators regarding qualifications and style, and help to arrange such interviews.

Practical Suggestions

As referenced in Principle 5, mediation conducted by telephone conference call has proven to be an effective, economical method of resolving Consumer disputes where in-person mediation may not be feasible.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL


AMERICAN ARBITRATION ASSOCIATION®

## Special Provisions Relating to Binding Arbitration

## Principle 11. Agreements to Arbitrate

Consumers should be given:

**a.** clear and adequate notice of the arbitration provision and its consequences, including a statement of its mandatory or optional character;

**b.** reasonable access to information regarding the arbitration process, including basic distinctions between arbitration and court proceedings, related costs, and advice as to where they may obtain more complete information regarding arbitration procedures and arbitrator rosters;

**c.** notice of the option to make use of applicable small claims court procedures as an alternative to binding arbitration in appropriate cases; and,

**d.** a clear statement of the means by which the Consumer may exercise the option (if any) to submit disputes to arbitration or to court process.

### Reporter's Comments

In convening the Advisory Committee which developed this Protocol, the AAA requested that the Committee focus its attention upon due process standards for the conduct of Consumer ADR processes and not directly address the process of forming an agreement to mediate or to arbitrate. Committee deliberations revealed a range of opinions regarding the use of pre-dispute binding arbitration agreements in Consumer contracts. Without taking a position on the appropriateness of such agreements, the Committee developed Principle 11 with the intended purpose of providing guidance to the AAA and similar Independent ADR Institutions in the development of specific arbitration programs within the context of existing law enforcing pre-dispute arbitration agreements. Within this context, Principle 11 emphasizes the importance of knowing, informed assent to arbitration agreements.

### Practical Suggestions

Consumers should have clear and adequate notice of the arbitration provision and basic information regarding the process at the time of assent. The appropriate method of giving notice and providing essential information will vary with the circumstances. For example, electronic transactions involving software licensure agreements require different notice procedures than face-to-face negotiations or paper transactions. In all cases, however, there should be some form of conspicuous notice of the agreement to arbitrate and its basic consequences (including comparison to court process, cost information, etc.). In addition, the Consumer should be given the opportunity to acquire additional information regarding the arbitration process. The latter might be obtainable through a mail or Web site address, an 800 number or other means for Consumers to obtain additional information regarding arbitration rules and procedures (such as a brochure available on request).

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



The following is an example of a possible notice. Ideally, the "notice box" would be sufficiently prominent in the contract document or electronic record so that a Consumer would readily notice it.

| NOTICE OF ARBITRATION AGREEMENT: |
|---|
| This agreement provides that all disputes between you and [PROVIDER] will be resolved by <u>BINDING ARBITRATION</u>.<br><br>You thus GIVE UP YOUR RIGHT TO GO TO COURT to assert or defend your rights under this contract (EXCEPT for matters that may be taken to SMALL CLAIMS COURT).<br><br>* Your rights will be determined by a NEUTRAL ARBITRATOR and NOT a judge or jury.<br><br>* You are entitled to a <u>FAIR HEARING</u>, BUT the arbitration procedures are <u>SIMPLER AND MORE LIMITED</u> THAN RULES APPLICABLE IN COURT.<br><br>* Arbitrator decisions are as enforceable as any court order and are subject to <u>VERY LIMITED REVIEW</u> BY A COURT.<br><br>**For More Details**,<br><br>*Review Section 6.2 above, OR<br><br>* Check our Arbitration Web Site @ ACMEADR.COM, OR<br><br>* Call 1-800-000-0000 |

Among other things, Consumers should have access to information regarding the initiation of the arbitration process. This may be accomplished, for example, by providing customers with a brochure outlining relevant arbitration procedures. If the Consumer has the option of choosing between arbitration or court process, either at the time of contracting or after disputes have arisen, the timing and means of electing the option should also be clearly stated in the notice.

## Principle 12. Arbitration Hearings

1.  *Fundamentally-Fair Hearing.* All parties are entitled to a fundamentally-fair arbitration hearing. This requires adequate notice of hearings and an opportunity to be heard and to present relevant evidence to impartial decision- makers. In some cases, such as some small claims, the requirement of fundamental fairness may be met by hearings conducted by electronic or telephonic means or by a submission of documents. However, the Neutral should have discretionary authority to require a face-to-face hearing upon the request of a party.

2.  *Confidentiality in Arbitration.* Consistent with general expectations of privacy in arbitration hearings, the arbitrator should make reasonable efforts to maintain the privacy of the hearing to the extent permitted by applicable law. The arbitrator should also carefully consider claims of privilege and confidentiality when addressing evidentiary issues.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

## Reporter's Comments

There is universal agreement that parties to arbitration are entitled to a "fundamentally-fair hearing." *See* III *Federal Arbitration Law* ' 32.3.1.1. The language of subsection 1 closely follows the definition of a "fundamentally-fair hearing" set forth in *Bowles Financial Grp., Inc. v. Stifel, Nicolaus & Co.,* 22 F.3d 1010, 1013 (10th Cir. 1994) (applying the *Federal Arbitration Act*). Beyond these basic requirements, of course, "[a]rbitration need not follow all the niceties of…courts." *Grovner v. Georgia-Pacific Corp.,* 625 F.2d 1289, 1290 (5th Cir. 1980). Moreover, the arbitrators have great leeway in conducting hearings, within the bounds of the parties' agreement. See Federal Arbitration Law, supra, '' 32.1., 32.3.1.1.

Although authority is split on whether or not parties are guaranteed a face-to-face hearing before the arbitrators, *see id.,* the Advisory Committee concluded that while in some circumstances fundamental fairness may require a face-to-face hearing, in other cases the requirement may be satisfied by telephonic or electronic communications or submissions of documents. *See, e.g., Construction Arbitration Procedures* ' F-9. *See, e.g.,* Michael F. Altschul & Elizabeth S. Stong, *AAA Develops New Arbitration Rules to Resolve Wireless Disputes,* ADR Currents, Fall 1997, at 6. In small claims cases, the requirement of these Principles that parties retain the option of going to small claims court may make it reasonable for the ADR agreement to provide alternatives to a face-to-face hearing.

Although confidentiality of hearings may be considered an advantage of arbitration, there is no absolute guarantee of confidentiality. *See id.,* ' 32.6.1. Unlike court proceedings, however, the general public has no right to attend arbitration proceedings; if the parties agree, moreover, attendance at hearings may be severely restricted. *See, e.g., AAA Commercial Rule* 25 (directing arbitrators to "maintain the privacy of the hearings unless the law provides to the contrary"). Likewise, arbitrators should be mindful of evidentiary privileges and confidentiality rights available to its parties under applicable law and have discretion to issue protective orders respecting such rights.

The Advisory Committee recognized the dilemma posed by the tension between the desire for confidentiality in arbitration and the need to provide Consumers access to information regarding arbitrators and sponsoring Independent ADR Institutions, including case statistics, data on recent arbitrations and other pertinent information. *See, e.g.,* Alan Scott Rau, *Integrity in Private Judging,* 38 S. Tex. L. Rev. 485, 524-26 (1997) (discussing concerns with "asymmetry of information" regarding arbitrators when one party is an institutional "repeat player," and suggesting need for increased disclosure of information regarding past decisions by an arbitrator); Mark E. Budnitz, *Arbitration of Disputes Between Consumers and Financial Institutions: A Serious Threat to Consumer Protection,* 10 Ohio St. J. on Disp. Res. 267, 293 (discussing disparity between "repeat players" and consumers with regard to knowledge of prospective arbitrators). Although the Advisory Committee did not address this issue, it recommends that the matter be the focus of serious study by the Committee or a similar advisory group, supported by appropriate independent research efforts.

## Practical Suggestions

Because these Principles provide that parties should retain the option of an oral hearing in small claims court (Principle 5), it may be reasonable for the ADR agreement to provide other means for small claims arbitration. Such alternatives may include a "desk arbitration" involving a decision on written submissions, participation in proceedings by telephone or electronic data transmission, and other options.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



AMERICAN ARBITRATION ASSOCIATION®

As is generally the case in commercial arbitration, arbitrators may undertake reasonable means to protect the privacy of the hearing.

## Principle 13. Access to Information

No party should ever be denied the right to a fundamentally-fair process due to an inability to obtain information material to a dispute. Consumer ADR agreements which provide for binding arbitration should establish procedures for arbitrator-supervised exchange of information prior to arbitration, bearing in mind the expedited nature of arbitration.

### Reporter's Comments

It is understood that ADR sometimes represents a tradeoff between the concept of full discovery associated with court procedures and the efficiencies associated with minimal pretrial process. A hallmark of binding arbitration is the avoidance of the cost and delay associated with extensive pre-hearing discovery. *See* III *Federal Arbitration Law* ¶ 34.1. In recent years, however, the notion that arbitration means little or no discovery has moderated due to the widening range of cases submitted to arbitration and the increasing recognition that at least some pre-hearing exchange of information may be necessary and appropriate to meet the due process rights of participants and may in some cases reduce the overall length of the process. *See id.*, Ch. 34. *See also* Mark E. Budnitz, *Arbitration of Disputes Between Consumers and Financial Institutions: A Serious Threat to Consumer Protection*, 10 Ohio St. J. on Disp. Res. 267, 283-84, 311, 314 (arguing that limits on discovery in arbitration hamper consumer claimants).

Addressing statutory disputes arising out of employment relationships, the *Employment Due Process Protocol* states that "[a]dequate but limited pre-trial discovery is to be encouraged and employees [and their representatives] should have access to all information reasonably relevant to mediation and/or arbitration of their claims." *Employment Due Process Protocol* ¶ B.3. The Committee supports the concept of limiting the exchange of information as much as possible while ensuring that Consumers and Providers each have access to information that is legally obtainable and relevant to their case. In most cases, this means that pre-hearing information exchange will consist of an exchange of documents as directed by the arbitrator, identification of witnesses and a summary of their expected testimony. Arbitrators should have the authority to require additional discovery when necessary, such as requiring the deposition of witnesses unable to appear at the hearing in order to preserve their testimony.

Although information exchange issues which cannot be handled by the agreement of the parties should generally be left to the discretion of the arbitrator, it may be appropriate for advisory groups (including adequate consumer representation) to develop guidelines for information exchange in specific kinds of cases. *See, e.g.,* National Association of Securities Dealers, National Arbitration and Mediation Committee, *Report of the Drafting Subcommittee on The Discovery Guide,* Dec. 3, 1997 Draft.

Some Advisory Committee members also expressed concern about the forced production of privileged documents, and argued that arbitrators should be required to observe established privileges such as the attorney-client privilege and work-product privilege. *See* James H. Carter, *The Attorney-Client Privilege and Arbitration,* ADR Currents, Winter 1996-97, 1. As stated in Principle 12, arbitrators should "carefully consider claims of privilege and confidentiality when addressing

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



**American Arbitration Association**®

evidentiary issues." Such protections may be addressed in the arbitration agreement (including incorporated arbitration procedures), and should be thoroughly treated, along with information exchange issues, in arbitrator training programs.

*Practical Suggestions*

In many cases, issues relating to information exchange may be addressed by the arbitrator(s) at a preliminary conference. *See, e.g., AAA Wireless Rules* '' R-9, R-10. Some rules require that all exhibits be exchanged a certain number of days prior to hearings. *See id.,* R-10.

## Principle 14. Arbitral Remedies

The arbitrator should be empowered to grant whatever relief would be available in court under law or in equity.

*Reporter's Comments*

As a general rule, arbitrators have broad authority to fashion relief appropriate to the circumstances. *See* III *Federal Arbitration Law* ' 36.1.1. Their discretion is limited only by the agreement of the parties and the scope of the submission to arbitration. *See id.,* ' 36.1.2.

There are, however, a number of issues respecting the ability of arbitrators to award certain remedies which would be available in court. For example, although the trend under federal and state law is to acknowledge the authority of arbitrators to award punitive damages, a few state courts still take the opposing view. *See generally Federal Arbitration Law, supra,* ' 36.3; Thomas J. Stipanowich, *Punitive Damages and the Consumerization of Arbitration,* 92 Nw. U. L. Rev. 1 (1998). And although courts may award attorney's fees where permitted by statute or by agreement of the parties, or where a party acts vexatiously or in bad faith, there is conflicting authority regarding the ability of arbitrators to take similar action. *See generally Federal Arbitration Law, supra,* ' 36.8.

This provision incorporates language similar to that contained in the *Employment Due Process Protocol,* ' C.5. The intent is to make clear that arbitrators deriving their authority from Consumer contracts should enjoy the same authority courts have to fashion relief, including awarding attorney's fees and punitive damages in appropriate cases.

Contractual limitations of damages may limit the authority of arbitrators in the same fashion that they limit judicial remedies. It is possible that an award of damages in excess of a contractual limit would be vacated under pertinent statutory standards or common law principles. *See, e.g., FAA* ' 10(a) (4). *But see* Stipanowich, *Punitive Damages, supra,* at 33-36 (discussing public policy limitations on pre-dispute caps on punitive damages).

## Principle 15. Arbitration Awards

1. *Final and Binding Award; Limited Scope of Review.* If provided in the agreement to arbitrate, the arbitrator's award should be final and binding, but subject to review in accordance with applicable statutes governing arbitration awards.

2. *Standards to Guide Arbitrator Decision-Making.* In making the award, the arbitrator should apply any identified, pertinent contract terms, statutes and legal precedents.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



**AMERICAN ARBITRATION ASSOCIATION®**

**3.** *Explanation of Award.* At the timely request of either party, the arbitrator should provide a brief written explanation of the basis for the award. To facilitate such requests, the arbitrator should discuss the matter with the parties prior to the arbitration hearing.

Reporter's Comments

Review of arbitration awards is very limited under modern arbitration statutes. Courts are very reluctant to vacate awards, or to second-guess the decisions of arbitrators on matters of procedure or substance. *See generally* IV *Federal Arbitration Law,* ch. 40. "Arbitrators can misconstrue contracts, make erroneous decisions of fact, and misapply law, all without having their awards vacated." *See id.,* ' 40.6.1. While some members of the Advisory Committee expressed concerns regarding the current state of the law, it was generally agreed that finality was a primary objective of arbitration and that it would be inappropriate to recommend more rigorous judicial review for Consumer arbitration awards than for other arbitration awards. At the same time, however, the Advisory Committee concluded that the rules should specifically direct arbitrators to follow pertinent contract terms and legal principles. This requirement may have implications for qualifications and training of Neutrals pursuant to Principle 4.

Leading modern arbitration statutes do not require arbitrators to provide a written explanation or give reasons for their awards. *See generally* III *Federal Arbitration Law* ' 37.4.1. Similarly, some leading commercial arbitration rules do not require findings of fact or conclusions of law. *See, e.g., AAA Commercial Rules.* Those supporting "bare" awards argue that a written rationale will make it more likely that courts will inquire into the merits of the award, contrary to policies of finality underlying modern statutes. They also observe that not being required to write an opinion simplifies the arbitral task and permits multi-member arbitration panels, like juries, to agree on a decision without concurring on a rationale. *See id.*

On the other hand, some other commercial arbitration rules call for a statement of the underlying rationale. *See, e.g., CPR Rules for Non-administered Arbitration of Business Disputes, Rule* 13.2. Those supporting awards with written rationales argue that a written rationale encourages more disciplined decision-making and enhances party satisfaction with the result. *See* Alan Scott Rau, *Integrity in Private Judging,* 38 S. Tex. L. Rev. 485, 529-39 (1997) (offering arguments in favor of "reasoned" awards). After considering the pros and cons of "reasoned " awards, the Advisory Committee concluded that arbitrators of Consumer disputes should provide at least a brief written explanation if requested to do so by any party.

As noted in the Comments accompanying Principle 12, the Advisory Committee recognized the dilemma posed by the tension between the desire for confidentiality in arbitration (including information regarding arbitration awards) and the need to provide Consumers access to information regarding arbitrators and sponsoring Independent ADR Institutions, including case statistics, data on recent arbitrations and other pertinent information. Although the Advisory Committee did not address this issue, it recommends that the matter be the focus of serious study by the Advisory Committee or a similar advisory group, supported by appropriate independent research efforts.

Practical Suggestions

To facilitate requests for reasoned awards, the arbitrator should raise the issue with the parties prior to the arbitration hearing. The matter should be addressed at the preliminary conference if one is conducted.

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



# A Due Process Protocol for Mediation and Arbitration of Consumer Disputes

Dated: April 17, 1998

Some of the signatories to this Protocol were designated by their respective organizations, but the Protocol reflects their personal views and should not be construed as representing the policy of the designating organizations.

**The Honorable Winslow Christian**
*Co-chair*
Justice (Retired)
California Court of Appeal

**William N. Miller**
*Co-chair*
Director of the ADR Unit
Office of Consumer Affairs
Virginia Division of Consumer Protection
Designated by National Association of Consumer
Agency Administrators

**David B. Adcock**
Office of the University Counsel
Duke University

**Steven G. Gallagher**
Senior Vice President
American Arbitration Association

**Michael F. Hoellering**
General Counsel
American Arbitration Association

**J. Clark Kelso**
Director
Institute for Legislative Practice
University of the Pacific
McGeorge School of Law

**Elaine Kolish**
Associate Director
Division of Enforcement
Bureau of Consumer Protection
Federal Trade Commission

**Robert Marotta**
Wolcott, Rivers, Wheary, Basnight & Kelly, P.C.
Formerly Office of the General Counsel
General Motors Corporation

**Robert E. Meade**
Senior Vice President
American Arbitration Association

**Ken McEldowney**
Executive Director
Consumer Action

**Michelle Meier**
Former Counsel for Government Affairs
Consumers Union

**Anita B. Metzen**
Executive Director
American Council on Consumer Interests

**James A. Newell**
Associate General Counsel
Freddie Mac

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL



**Shirley F. Sarna**
Assistant Attorney General-In-Charge
Consumer Frauds and Protection Bureau
Office of the Attorney General State of New York
Designated by National Association of
Attorneys General

**Daniel C. Smith**
Vice President and Deputy General Counsel
Fannie Mae

**Terry L. Trantina**
Member
Ravin, Sarasohn, Cook, Baumgarten, Fisch & Rosen, P.C.
Formerly General Attorney
AT&T Corp.

**Deborah M. Zuckerman**
Staff Attorney
Litigation Unit
American Association of Retired Persons

**Thomas Stipanowich**
Academic Reporter
W.L. Matthews Professor of Law
University of Kentucky College of Law

EXHIBIT 5: AAA CONSUMER DUE PROCESS  PROTOCOL

ARBITRATOR:    Mr. John W. Garman, Esq., 4112 Ocean Drive, Manhattan Beach, CA 90266, SERVED BY EMAIL TO: jwg@garmanlaw.com

American Arbitration Association, 6795 North Palm Avenue, 2nd Floor, Fresno, CA 93704, SERVED BY EMAIL TO: McDermottJ@adr.org

PARTY SERVED:    FSST Financial Services, LLC, dba VIP Loan Shop, VIP PDL SERVICES, LLC dba VIP Loan Shop, SCS PROCESSING, LLC aka Everest Cash Advance, ACTION PDL SERVICES, LLC, BD PDL SERVICES, LLC aka Bottom Dollar Payday, INTEGRITY PDL SERVICES, LLC aka Integrity Payday Loans aka IPL Today, MY QUICK FUNDS a dba of Sierra Financial, LLC., FAST EFUNDS aka FastEfunds.com, RARE MOON MEDIA, LLC, ENCOMPASS CONSULTING GROUP, LLC, E-FINANCE CALL CENTER SUPPORT, LLC, TOTAL RECOVERY SOLUTIONS, LLC, JEREMY D. SHAFFER, JOSHUA L. MITCHEM, STEVEN MITCHEM, DUSTIN DERNIER, through their attorneys of record BUSBY & ZAPPALA, LLP, Mr. Ralph A. Zappala, Esq., 251 Lafayette Circle, Suite 350, Lafayette, CA 94549 and ARMSTRONG TEASDALE LLP, Mr. Paul Croker, Esq., 2345 Grand Boulevard, Suite 1500, Kansas City, Missouri 64108-2617.  SERVED BY EMAIL TO: rzappala@bzlawllp.com pcroker@armstrongteasdale.com mwelther@ArmstrongTeasdale.com

DOCUMENT SERVED:    Claimants Delbert Daily, Sharanjeet Paul and Retha P. Walker's Opposition to Respondents' Motion to Close Arbitration Cases in the following cases: DELBERT DAILY CLAIM #2 v. FSST Financial Services, LLC, Case No. 01-16-0000-4222; SHARANJEET PAUL CLAIM #2 v. FSST Financial Services, LLC, Case No. 01-16-0000-4991; RETHA P. WALKER CLAIM #1 v. v. FSST Financial Services, LLC, Case No. 01-16-000-3815.

<u>DECLARATION OF ELECTRONIC SERVICE</u>

I am a citizen of the United States and a resident of Orange County, State of California.  I am over the age of 18 years and not a party to this action within.  My business address is 18340 Yorba Linda Blvd., Suite 107-610, Yorba Linda, CA 92886.

On June 3, 2016, I served the foregoing document described by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.

I declare under penalty of perjury and under the laws of the State of California, that the foregoing is true and correct.  Executed this 3rd day of June 2016 at Yorba Linda, California.

Jeffrey Wilens